Jason M. Venditti (#022073)
**PETRIE & VENDITTI, PLC**
20860 N. Tatum Blvd. Suite 300
Phoenix, Arizona 85050
Ph: (480) 771-3986
Fax: (480) 771-7101
Email:  jvenditti@pvlawgroup.com

Attorneys for Defendants Ugly Pools Arizona, Inc. and Brian Morris

### THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SELLPOOLSUPPLIESONLINE.COM, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>UGLY POOLS ARIZONA, INC. an Arizona corporation; and BRIAN MORRIS, an individual,<br><br>Defendants. | CASE NO.: 2:15-CV-01856-PHX-PGR<br><br><br>**DEFENDANTS' MOTION TO ORDER CANCELLATION OR AMENDMENT OF PLAINTIFF'S COPYRIGHT REGISTRATION**<br><br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendants hereby respectfully move this Court to Order Plaintiff to Cancel or Amend its Copyright Registration for the reasons set forth herein.

After the parties filed their respective motions for summary judgment in this case, and after Defendants had already responded to Plaintiff's motion for summary judgment, Defendants discovered that Plaintiff had engaged in ongoing correspondence with the Copyright Office during litigation.  Plaintiff kept this correspondence hidden from Defendants.

Upon reviewing the Copyright Office correspondence, Defendants discovered Plaintiff had submitted a false declaration to the Copyright Office in order to obtain the July 3, 2014 publication date for its Copyright Registration and avoid Defendants' Motion for Summary Judgment.

Defendants immediately warned Plaintiff that its declaration to the Copyright Office was false and resulted in an inaccurate registration.    Plaintiff has refused to withdraw or amend its inaccurate Copyright Registration, and has gone so far as to double down and re-submit the false declaration in its response to Defendants' Motion for Summary Judgment.

The Court should not allow Plaintiff to proceed with a copyright registration that is based upon a false declaration.  Defendants therefore request that the Court order Plaintiff to either cancel or amend its Copyright Registration.  *See Syntek Semiconductor Co., Ltd., v. Microchip Technology Incorporated*, 307 F.3d 775, 780 n.1 (9th Cir. 2002) (Noting a copyright application may be declared invalid for fraud on the Copyright Office); *See also Urantia Found., v. Maaherra,* 114 F. 3d 955, 963 (9th Cir. 1997) (noting that knowing errors on the registration application that might have caused the Copyright Office to reject the application may affect the validity of the registration).

I.    BACKGROUND

On September 13, 2015, four days before filing this lawsuit, Plaintiff filed a copyright application (the "Copyright Application") for its work titled "SPSO Website www.poolandspapartsnow.com" (the "Work"). ***See* Exhibit A.**  The Copyright Application states the Work's Year of Completion is 2015 and the Date of 1st Publication is August 26,

2

2015.  *Id.*

The Copyright Office received Plaintiff's full Copyright Application, including deposit (the "Deposit") representing the Work, on September 16, 2015.  *See* **Exhibit B.**  The Deposit represents the web pages on www.poolandspapartsnow.com.  *See* **Exhibit A.**  The web pages in the Deposit can be navigated in the same manner as the web pages on the live www.poolandspapartsnow.com website.  The copyright notices in the Deposit web pages state "Copyright 2015 Pool and Spa Parts Now."  *See***, e.g., Exhibit C, p.3.**  (The web page Exhibits from Plaintiff's web sites found in the Internet Archive, in the Deposit, and in the live version, as well as the Defendants' web pages, are supported by the **Declaration of Kenneth Spafford, attached as Exhibit FF**).

Defendants did not receive a copy of Plaintiff's Copyright Application until November 30, 2015, after Defendants had already filed an Answer to the Complaint.  However, Defendants' Answer to Plaintiff's *Amended* Complaint, filed on June 29, 2016, included the affirmative defense that Plaintiff's copyright identifies a work that was created (in 2015) **after** Defendants' alleged copying (in 2014), first published **after** Defendants' alleged infringement, and refers to no work from which it was derived.  *See* **Answer to Amended Complaint, p.6, para. 8. (Doc. #41).**

Plaintiff's deposition was taken on August 8, 2016.  *See* **Exhibit D.**  Plaintiff was questioned repeatedly why its Copyright Application had a completion and first publication date of 2015. *See id.,* pp. 120-122 and 126-130, 204. On September 20, 2016, the Copyright Office began a lengthy back-and-forth correspondence with Plaintiff's counsel regarding

3

numerous "problems" with Plaintiff's Application.  ***See* sample correspondence in Exhibit E.**  Plaintiff kept all of this correspondence with the Copyright Office hidden from Defendants.

On October 6, 2016, the Copyright Office asked Plaintiff's counsel "Since this application is to register the website as it appeared (published) on 08/26/2015, was any of the computer code or were any of the photographs from earlier versions of the website?" ***See* Exhibit F.**  The Copyright Office informed Plaintiff's counsel that **any photographs or code that appeared in earlier website versions "must be excluded from this claim since the extent of claim for a revised, or derivative, work is based only on the new and revised material contained in the later version of the work."** *Id.*  (emphasis added).  This statement by the Copyright Office representative to Plaintiff's counsel was correct.   The Copyright Office policy for websites is that "[m]any works transmitted online, such as websites, are revised or updated frequently." ***See* Copyright Circular 66, p.2, para 1., attached hereto as Exhibit G.**   "Generally, copyrightable revisions to online works that are published on separate days must each be registered individually[.]" *Id.*  **"Registration of a revised version covers only the new or revised material added."** *Id* (emphasis added).  **"The version of the work that is deposited should be the same version described on the application; thus, the title and dates on the application should correspond with those on the deposit copy."** *Id.*

Plaintiff's counsel responded on the same day by stating some of the Deposit's content "may have been from an earlier version of the website BUT we need special dispensation because this is the first time registration of the website and no copy (i.e., mirror or backup) of a prior website exists." ***See* Exhibit H.**

Significantly, on October 14, 2016, the Copyright Office informed Plaintiff's counsel that the exception to the deposit material was denied.  *See* **Exhibit I.**  "We can **only** register the website as it appeared **on the date on which it was printed**, not for any past or future versions."  *Id.* (emphasis added).  The Copyright Office also stated "if any of the content of the website **ever appeared online** or **in any other form** previous to the version submitted, please authorize me to **exclude all of the preexisting material and to limit the claim to the new and revised material in this version of the website."**  *Id* (emphasis added).

Plaintiff's counsel responded the same day, asking, "[o]n what grounds is special dispensation denied? Websites aren't copyrighted usually until they are mature. Therefore, this policy excludes almost every conceivable website that is nontrivial from being copyrighted." *See* **Exhibit J.**  Counsel continued, "[h]ow do we appeal this decision? This policy makes absolutely no sense vis-à-vis how the marketplace works for websites. Clients don't hire lawyers usually until they believe they have a viable site. By that time, according to this rule, it would be impossible to copyright the site as it existed a year earlier (i.e. without excluding all previously published material)."  *Id.*

On November 9, 2016, Defendants filed a Motion for Summary Judgment.  (Doc. #45). The Motion correctly pointed out that Plaintiff's copyright for the recent version of the Work, which (according to the Application) was completed and first published in 2015, could not be enforced against Defendants who allegedly downloaded a version of the Work as it existed a year earlier on September 16, 2014.  In order to cure this fatal defect, Plaintiff attempted to change the completion and publication dates in its Application to July 2014.  There was just

one problem – Plaintiff had been told by the Copyright Office that it could not register any earlier versions of the Work if the Deposit included updates that were not in the earlier versions.

To get around this, on November 16, 2016, Plaintiff's counsel submitted to the Copyright Office an Affidavit from  Aaron Hagen, who is one of Plaintiff's principals.[1]  *See* **Exhibit K.**  The Hagen Affidavit falsely stated that  "The sample of the Platform provided to the United States Copyright Office with SPSO's Copyright application in 2015 is the same as the website first appeared when published on July 3, 2014."  *Id.*  Plaintiff's counsel affirmed the Hagen Affidavit in the accompanying email, stating, falsely, "The Deposit that was submitted correctly represents the copy that was first published on July 3, 2014."  ***See*** **Exhibit L.**

The Hagen Affidavit and the statement of Plaintiff's counsel were false because the Deposit included new material that was added after July 2014.  The Deposit was merely a revised version of Plaintiff's original published website.

In fact, the revised website in the Deposit includes new material that was added after Defendants' alleged copying.  This new material, which is the **only** material Plaintiff could have rightfully claimed in the Deposit, was created after Defendants' alleged infringement, and therefore Defendants could not have copied this material.

The Internet website archive.org took snapshots of web pages on Plaintiff's website as they existed in July and August of 2014.  ***See*** **Exhibits M-1, M-2, and M-3.**  The Deposit

contains the same web pages, but with additional content that was added after August 2014, including content that was added in October 2014.  ***See* Exhibits N-1, N-2, and N-3.**

First, the Deposit adds a whole new brand of products, Nemo, that <u>did</u> <u>not</u> exist in the August 14, 2014 version of the website.  ***Compare* Exhibits M-1, p.4 and N-1, p.4.**  Significantly, the Nemo products do not appear on the home page of the July 14, 2014 version, but they appear as new products in the home page of the Deposit.  ***Compare* Exhibits M-2, p.4 and N-2, p.4.**  The Nemo products do not appear in the RSS feed for new products in the July 14, 2014 version; the RSS feed in the Deposit does not translate as a functioning web page but clearly lists the Nemo products as being added to the website in October 2014.  ***Compare* Exhibit M-3 and N-3.**  The RSS feed for the current live website confirms that that the Nemo products were added in October 2014.  ***See* Exhibit O.**

The Deposit also contains an entire new webpage, the Contact Us webpage, that did not even exist before July 14, 2014.  ***Compare* Exhibits M-2, p.1 and N-2, p.1.**  In fact, the Contact Us version of the webpage as it exists in the Deposit was updated some time after January 14, 2015.  **Compare Exhibit N-4 (Deposit Contact Us web page) with Exhibit P (January 14, 2015 Contact Us web page).**

Upon receiving the false Hagen Affidavit, the Copyright Office followed up with Plaintiff's counsel, stating "[t]he signed affidavit that you provided states that the website was completed on June 25, 2014 and published on July 3, 2014.  The original application lists the Year of Completion as 2015 and the date of first publication as August 36 [sic], 2015.  Please

---

[1] The document is actually a declaration, but for ease of reference it will be referred to

confirm that we should update the information on your original application with that which is provided in the affidavit.  Please do note that the copyright notice on the bottom of each webpage submitted as deposit material bears the year 2015."  *See* **Exhibit Q, pp. 1-2.** Plaintiff's counsel responded, "[y]es the information should be updated as per the affidavit." *Id.*, p.2

On November 29, 2016, after Defendants had already filed their Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, Plaintiff's counsel forwarded to undersigned counsel just the first page of the newly-issued two page Copyright Registration.  *See* **Exhibit B.**  This was the first time Defendants became aware that Plaintiff had changed any information in Plaintiff's copyright application.  The majority of the information in the Copyright Registration was different from the Application, including the Author(s); the means of Ownership; the Year of Completion; the Date of 1st Publication; the Material Excluded from Claim; and the New Material Included in Claim, all of which were relevant to various arguments presented in Defendants' Motion for Summary Judgment. *Compare* **Exhibits A and B.**

On December 1, 2016, undersigned counsel requested page 2 of the Copyright Registration, which Plaintiff's counsel forwarded.  *See* **Exhibit R.**  Upon receipt, undersigned counsel noticed that page 2 of the Copyright Registration stated there was correspondence related to the registration, and requested from Plaintiff's counsel the correspondence with the Copyright Office.  *Id.*  Plaintiff's counsel denied being aware of any correspondence with the

as the Hagen Affidavit.

8

Copyright Office.  *Id.*  Undersigned counsel then pointed out the "Correspondence: Yes" notation on the second page of the Copyright Registration.  *Id.*

Plaintiff's counsel then reacted to Defendants' request by refusing to disclose the correspondence with the Copyright Office under the Work Product Doctrine, even though the correspondence is public record.  ***See*** **Exhibit S.**  After undersigned counsel threatened a motion to compel and had a telephonic discovery discussion as required the Local Rules, Plaintiff's counsel released the correspondence to Defendants on December 4, 2016.  ***See*** **Exhibit T.**

After reviewing the Copyright Office correspondence, undersigned counsel wrote a letter to Plaintiff's counsel, explaining why the Hagen Affidavit that Plaintiff submitted to the Copyright Office was false.  ***See*** **Exhibit U.**  Undersigned counsel warned Plaintiff's counsel not to file any briefing with the Court that relied upon the Copyright Registration, which was obtained with a false Affidavit.  *Id.*  Plaintiff's counsel did not contest that the Hagen Affidavit was false, but instead denied that his client committed "fraud" on the Copyright Office (and fraud, of course, requires intent.).  ***See*** **Exhibit V.**

Plaintiff then proceeded to rely upon the false Copyright Registration in its Response to Defendants' Motion for Summary Judgment by claiming that many of the arguments contained therein about the defects in Plaintiff's Copyright Registration were now moot.  Notably, the Response did not address the principal argument in undersigned counsel's letter, namely, that the Deposit included updates from October 2014 (after the alleged infringement), if not later, and therefore only these new updates were entitled to registration.  Yet, because of the false

Affidavit, the Plaintiff's Copyright Registration contains materially incorrect information, namely, the completion and publication dates of Plaintiff's Work.

## II.   THE   COURT   SHOULD   ORDER   PLAINTIFF   TO   CANCEL   ITS REGISTRATION.

The Certificate of Registration should be declared invalid and cancelled because there is clear and convincing evidence of fraud.  In all of its early correspondence with the Copyright Office, not once did Plaintiff's counsel suggest that the publication date for the Work should be changed from August 26, 2015 to July 3, 2014.  It was only four days after Defendants filed their Motion for Summary Judgment that Plaintiff's story to the Copyright Office changed, with a false Affidavit that the Deposit was the same as the Work existed on July 3, 2014.  Yet, Plaintiff was the one who controlled the Work, and Plaintiff updated the Work multiple times after July 3, 2014.  (Another red flag indicating fraud is that Plaintiff's counsel hid all of its Copyright Office correspondence from Defendants and denied that the correspondence existed when questioned by undersigned counsel.)

Even if one were to believe that Plaintiff and Plaintiff's counsel did not know that the Affidavit was false at the time it was submitted to the Copyright Office, Plaintiff's counsel had an ethical obligation to inform the Copyright Office that the Affidavit was false once Plaintiff's counsel became aware that it was false.  *See* **Arizona Ethical Rules 3.3(a) and 3.9, and Florida Ethical Rules 4-3.3(a) and 4-3.9.**  To the best of Defendants' knowledge, Plaintiff's counsel has not informed the Copyright Office that the Affidavit is false.  In fact, Plaintiff has doubled down and resubmitted the Affidavit in its Response to Defendants' Motion for Summary Judgment.

Plaintiff was able to use a false declaration to obtain a registration certificate because the Copyright Office does not conduct its own fact investigation to determine whether a claimant is telling the truth.  "In examining claims for copyright registration, the Copyright Office does not resolve factual disputes and does not conduct adversarial proceedings.  In general, the Copyright Office accepts the facts given by the copyright claimant."  Patry on Copyright § 17:108 (quoting Copyright 50 Fed. Reg. 33056 n.5 (Aug. 16, 1985)).  ***See* Exhibit DD.**  Plaintiff was able to game the system and obtain a false Certificate of Registration because the Copyright Office took Plaintiff at its word.  The Court should not do the same in the face of incontrovertible evidence to the contrary.

The Court should order Plaintiff to take affirmative steps to cancel Plaintiff's registration.  "[W]hen a court is convinced that a registration should be canceled, it should hold the registration invalid, and order the holder of the certificate to request the Copyright Office to cancel the registration."  **Patry on Copyright § 17:108, Exhibit DD.**  "If the holder of the certificate fails to request cancellation by the Copyright Office, that party may be held in contempt."  *Id.*

## III.   ALTERNATIVELY, THE COURT SHOULD ORDER PLAINTIFF TO AMEND ITS REGISTRATION.

Even if there were no fraudulent intent, the Registration Certificate needs to be amended because it is simply wrong.  The publication date for the Deposit is not July 3, 2014, because the Deposit contains revisions and updates added beyond that date.  Nemo products were added to Work in October 2014; Contact Us text was added to the Work in January 2015.  These updates are part of the Deposit.  The Registration Certificate publication date should be

updated to January 2015, or October 2014 at the very earliest.

## IV.   CONCLUSION

For the reasons set forth herein, Defendants respectfully request that Plaintiff's Registration be declared invalid and Plaintiff be ordered to cancel or amend its Registration.

Alternatively, insofar as justice requires, Defendants hereby request the following relief based on newly discovered evidence and Plaintiff's bad faith: this Court's Order barring enforcement of the fraudulently obtained Registration; this Court's Order striking the Plaintiff's false declaration and Registration on which it is based as evidence in this case; permitting Defendants leave to amend their Answer to assert additional defenses and/or counterclaims; or permitting Defendants leave to file supplemental briefing on their motion for summary judgment or in response to Plaintiff's motion for summary judgment.

RESPECTFULLY SUBMITTED this 30th day of December, 2016.

**PETRIE & VENDITTI, PLC**

By:

*/s/ Jason M. Venditti*

_____
Jason M. Venditti
20860 N. Tatum Blvd., Suite 300
Phoenix, Arizona 85050
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2016, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

A courtesy copy of the Notice of Electronic Filing was also mailed on this same date to the following address:

Carlos Leyva
Digital Business Law Group PA
1001 Starkey Rd., Ste. 18
Largo FL 51017
cleyva@digitialbusinesslawgroup.com
Attorney for Plaintiff

Linda S. McAleer
Digital Business Law Group
530 B St., Ste. 1550
San Diego CA 92101
lsmnotices@gmail.com
Attorney for Plaintiff

By: *&#47;s&#47; Jason M. Venditti*
_____
Jason M. Venditti, Esq.