**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| SellPoolSuppliesOnline.com LLC, | No. CV-15-01856-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Ugly Pools Arizona Incorporated, et al., | |
| Defendants. | |

This matter involves copyright and related disputes over websites for selling pool supplies.   Plaintiff's First Amended Complaint (FAC) includes three counts: (1) copyright infringement under the United States Copyright Act, 17 U.S.C. § 501(a) (Count One); (2) unfair competition under Arizona law (Count Two); and (3) violation of the Digital Millennium Copyright Act, integrity of copyright management information under 17 U.S.C. § 1202 (Count Three).  (Doc. 39.)

Plaintiff and Defendants have filed cross motions seeking summary judgment on all three counts.   (Docs. 43, 45.)   Defendants have also filed a motion for an order directing Plaintiff to cancel or amend its copyright registration, which the United States Copyright Office (copyright office) issued after the parties filed their motions for summary judgment.   (Doc. 53.)   For the reasons below, the Court grants the summary judgment motions, in part, and denies them, in part, and denies Defendants' motion for an order directing Plaintiff to cancel or amend its copyright registration.

1    I.    **Factual and Procedural Background**

2         A.    **General Background Regarding the Parties' Dispute**

3         Plaintiff SellPoolSuppliesOnline.com, LLC (SPSO or Plaintiff) describes its

4    business as licensing pre-made websites that it refers to as "the Platform." (PSSOF ¶ 1.)[1]

5    Plaintiff alleges that the Platform consists of "a compilation of programs, representations,

6    originally authored works, writings, hundreds of photos taken by the principals of SPSO,

7    and computer architecture and design, which provide SPSO licensees the infrastructure to

8    configure, implement, and maintain fully functional and attractive websites based on the

9    Platform that are personalized to each customer's business." (PSSOF ¶ 2.)  Plaintiff

10   asserts that the Platform, as delivered to customers, incorporates and effectively uses

11   search engine optimization (SEO) and provides "drop-ship" delivery that dispenses with

12   the need for customers to maintain inventory. (PSSOF ¶ 2.)  Plaintiff alleges that it spent

13   three years and "hundreds of thousands of dollars developing the Platform." (PSSOF

14   ¶ 3.)  However, Plaintiff admits that "much of the website code" is licensed from

15   BigCommerce, a non-party entity that provides "backend electronic storefront" services.

16   (Doc. 53, Ex. Q.)

17        In July 2014, SPSO employed Mark Kesler as a salesperson to sell licenses to use

18   the Platform; the licenses sold for an average of $15,000. (PSSOF ¶¶ 5, 6; DCSSOF at

19   ¶¶ 5,6.)[2]  Plaintiff alleges that it charged monthly maintenance fees and required licensees

20   to host their websites on SPSO's servers. (PSSOF ¶ 7, Ex. 6.)  Defendants dispute that

21   Plaintiff charged monthly fees, and assert that the evidence indicates that Plaintiff only

22   charged an annual subscription fee of $1.00. (DCSSOF ¶ 7 (citing Doc. 44-1 at 42).)

23

24   _____

25        [1] PSSOF refers to Plaintiff's Separate Statement of Facts in Support of Plaintiff's
     Motion for Summary Judgment. (Doc. 44.)  Plaintiff's exhibits are identified by letters
26   A-I, but Plaintiff's briefing refers to them by numbers, which presumably correspond to
     the attachment number associated with the exhibits on CM/ECF (ie., Ex. A is attachment
27   1).  The Court refers to the exhibits by number for consistency.

28        [2] DCSSOF refers to Defendants' Controverting and Supplemental Statement of
     Facts in Response to Plaintiff's Motion for Summary Judgment. (Doc. 48.)

1    Kesler was paid a commission for each license he sold and he purchased a license for use

2    on his own site, "allpoolandspaparts.com" (Kesler's site).  (PSSOF ¶ 8; DCSSOF ¶ 8.)

3            During 2014, Kesler introduced Brian Morris, owner of Ugly Pools Arizona, Inc.,

4    and the trade name "We Fix Ugly Pools" (WFUP) (collectively "Defendants"), to

5    Plaintiff as a potential licensee.  (PSSOF ¶ 13; DCSSOF ¶ 13.)  Defendants build and

6    remodel swimming pools, and sell pool supplies and accessories in Maricopa County,

7    Arizona and surrounding areas.  (PSSOF ¶ 14; DCSSOF ¶ 14.)  Defendants represented

8    themselves to Plaintiff as prospective customers who were considering purchasing a

9    license of SPSO's Platform to create a website for their business.  (PSSOF ¶ 15;

10   DCSSOF ¶ 15.)

11           Plaintiff provided Defendants access to Kesler's copy of the Platform to assist

12   them in making a purchasing decision.  (PSSOF ¶ 16; DCSSOF ¶ 16.)  Plaintiff alleges

13   that "Defendants were aware that they would have to purchase a license to be authorized

14   to have further access to the Platform — that is, to use it commercially — and that the

15   SPSO license governed the nature of their use of the Platform."  (PSSOF ¶ 16; Ex. 5.)

16   Defendants dispute this assertion and argue that Morris did not see Kesler's license "until

17   much later."  (DCSSOF ¶ 16.)

18           Unbeknownst to Plaintiff, Defendants and Kesler were working together and had

19   formed a partnership for Morris to manage and redesign Kesler's site.  (PSSOF ¶ 19,

20   Ex. 2 at 37; DCSSOF ¶ 18.).  Defendants admit to downloading "Kesler's version of the

21   Platform" on September 16, 2014.  (DCSSOF ¶ 19; Doc. 46 at ¶ 27.)  Plaintiff alleges

22   that Defendants "downloaded a complete copy of SPSO's platform."  (PSSOF ¶ 19.)

23   Plaintiff alleges that after the download, Defendants stopped communicating with

24   Plaintiff.  (PSSOF ¶ 20, Ex. 1 at 8.)  Defendants dispute that they stopped communicating

25   with Plaintiff and assert that they continued to communicate with Plaintiff "through

26   Kesler."  (DCSSOF ¶ 20 (citing Doc. 39, Ex. B).)

27           Plaintiff alleges that nearly a year later, Defendants published a website located at

28   allpoolsupplies.com (APS), which was nearly identical to the Platform.  (PSSOF ¶ 22

(citing Ex. 7); Doc. 39, Exs. C, D, E, F.)[3]  Plaintiff asserts that Defendants admitted to copying the Platform and creating APS, a derivative site.  (PSSOF ¶ 22; Doc. 44, Ex. 4 (response to request for admissions No. 7 and 8; Doc. 44, Ex. 3 at 19).)  Defendants deny that they copied the Platform and created APS as a derivative site.  (DCSSOF ¶ 22.)  Instead, Defendants state that they "made a duplicate copy of Kesler's site as a test site, in furtherance of their partnership with Kesler to improve Kesler's site."  (DCSSOF ¶ 22.)  Defendants admit "to going live with APS" as a test site.  (PSSOF ¶ 23; DCSSOF ¶ 23.)  The site was "launched live on the internet as a fully functioning site through which customers could, and did place orders."  (PSSOF ¶ 24; DCSSOF ¶ 24.)  This site was live concurrently with Kesler's site, was independently hosted by Defendants, and had a separate license through BigCommerce for backend services.  (PSSOF ¶ 25; DCSSOF ¶ 25.)

Plaintiff alleges that Defendants' site "wholly incorporated the original photos and content from the Platform into APS and then attached a WFUP copyright notice." (PSSOF ¶ 28.)   Plaintiff alleges that Defendants "intentionally altered the copyright management information (CMI) from Plaintiff's demo site, 'Copyright 2015 Pool and Spa Parts Now,' to 'Copyright 2015 We Fix Ugly Pools' in order to further conceal the infringement."  (PSSOF ¶ 28.)   Defendants dispute that they altered Plaintiff's CMI. (DCSSOF ¶ 28.)   Defendants state that Kesler's licensed site had the following CMI, "Copyright 2014 All Pool and Spa Parts."  (DCSSOF ¶ 28.)

Plaintiff discovered Defendants' allegedly infringing website on July 15, 2015 and notified Defendants of the alleged infringement that same day.  (PSSOF ¶ 36; DCSSOF ¶ 35.)   Defendants took the website down after receiving a takedown notice from Plaintiff.  (DCSSOF ¶ 40.)  On September 17, 2015, Plaintiff filed its original complaint

---

[3]  Defendants dispute this assertion on the ground that Plaintiff did not submit the correct Exhibit 7 with its motion for summary judgment.  (DCSSOF ¶ 21.)  Plaintiff's statement of facts describes Exhibit 7 as an "email," but the Exhibit 7 (or G) is Plaintiff's responses to discovery requests.  (Doc. 46, Ex. 7.)  However, Plaintiff submitted other evidence to support this assertion (PSSOF ¶ 22 (citing Doc. 39, Exs. C, D, E, F)), therefore, the Court rejects this objection.

alleging copyright infringement under the United States Copyright Act and unfair competition under Arizona law.  (Doc. 1.)  On June 17, 2016, Plaintiff filed the FAC adding a claim for violation of the Digital Millennium Copyright Act.  (Doc. 39.)

### B.    Plaintiff's Copyright Registration

On September 13, 2015, four days before filings its original complaint, Plaintiff filed a copyright registration application with the copyright office for a work titled "SPSO Website www.poolandspapartsnow.com" (the Work).  (Doc. 53, Ex. A.)  The application stated that "the website will be sent on a thumb drive [that] contain[s] the complete website in a ZIP file as well as the complete site in a set of folders unzipped" (the Deposit).  (*Id.*)  The registration application identified the Work's year of completion as 2015, and the date of first publication as August 26, 2015.  (*Id.*)  The application identified the copyright claim in the Work as including "new material" identified as "text, photograph(s), computer program" and excluding "text, photograph(s), computer program, artwork."  (Doc. 50, Ex. 9.)

On September 20, 2016, the copyright office contacted Plaintiff's counsel regarding "problems" with information in the application related to the identity of the original copyright owner.  (Doc. 53, Ex. E; Doc. 53-5 at 2.)  Plaintiff responded that SPSO was the owner of the text, photographs, and computer programs claimed in the application.  (Doc. 53, Ex. E; Doc. 53-5 at 3-5.)

On October 6, 2016, the copyright office again contacted Plaintiff and asked "[s]ince this application is to register the website as it appeared (published) on 8/26/2015, was any of the computer code or were any of the photographs from an earlier version of the website?"  (Doc. 53, Ex. F.)  The copyright office explained that any photographs or code that appeared in earlier website versions "must be excluded from this claim since the extent of claim for a revised, or derivative, work is based only on the new and revised material contained in the later version of the work."  *Id.*  Plaintiff's counsel responded that some of the Deposit's content "may have been from an earlier version of the website

- 5 -

BUT we need special dispensation because this is the first time registration of the website and no copy (i.e., mirror or backup) of the prior website exists." (Doc. 53, Ex. H.)

On October 14, 2016, the copyright office denied the requested exception. (Doc. 53, Ex. I.)  The copyright office explained that "[w]e can only register the website as it appeared on the date on which it was printed, not for any past or future versions." (*Id*.)  The copyright office also stated "if any of the content of the website ever appeared online or in any other form previous to the version submitted, please authorize me to exclude all of the preexisting material and to limit the claim to the new and revised material in this version of the website."  (*Id.*)  In response, Plaintiff's counsel inquired "[o]n what grounds is special dispensation denied?  Websites aren't copyrighted usually until they are mature.  Therefore, this policy excludes almost every conceivable website that is nontrivial from being copyrighted." (Doc. 53, Ex. J.)  The record before the Court does not indicate whether the copyright office responded to this inquiry.

On November 16, 2016, Plaintiff submitted to the copyright office an affidavit from Aaron Hagen, one of Plaintiff's principals.  (Doc. 53, Exs. K, L.)  The Hagen affidavit states that "SPSO first published the Platform on or about July 3, 2014.  It was completed on or about June 25, 2014."  (Doc. 53, Ex. K at ¶ 4.)  The Hagen affidavit further states that "[t]he sample of the Platform provided to the United States Copyright Office with SPSO's Copyright application in 2015 is the same as the website first appeared when published on July 3, 2014."  (*Id.* at ¶ 5.)  In an accompanying email, Plaintiff's counsel confirmed that "[t]he Deposit that was submitted correctly represents the copy that was first published on July 3, 2014.  Counsel did not have sufficient facts at the time of application."  (Doc. 53, Ex. L.)

On November 17, 2016, a supervisor at the copyright office contacted Plaintiff's counsel, stating "[t]he signed affidavit that you provided states that the website was completed on June 25, 2014 and published on July 3, 2014.  The original application lists the Year of Completion as 2015 and the date of first publication as August 36 [sic], 2015.  Please confirm that we should update the information on your original application with

that which is provided in the [affidavit].  Please do note that the copyright notice on the bottom of each webpage submitted as deposit material bears the year 2015."  (Doc. 53, Ex. Q at 1-2.)  Plaintiff's counsel responded, "[y]es the information should be updated as per the affidavit."  (*Id.* at 2.)

On November 29, 2016, the copyright office issued a certificate of registration. (Doc. 50, Ex. 1.)  The certificate of registration identifies the year of completion as 2014, the date of first publication as July 3, 2014, and the authors of the text and photographs as Aaron Hagen and David Hagen.  (*Id.*)  It identifies the title of the Work as the SPSO Website  www.poolandspapartsnow.com.  (*Id.*)  Under the heading "limitation of copyright claim," the certificate of registration lists "new material included in the claim," as "text, photographs."[4]  (*Id.*)  The certificate of registration indicates that there is related "correspondence."  (*Id.*)

## II. Summary Judgment Standard

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmoving party may not rely on the mere allegations in the pleadings, but must set forth by affidavit, or other appropriate evidence, specific facts showing there is a genuine issue for trial.  *Liberty Lobby*, 477 U.S. at 249.  The nonmoving party must

---

[4] A copyright claim is an assertion of copyright ownership in a work.  *See* 17 U.S.C. § 101.

produce at least some "significant probative evidence tending to support" its position. *Smolen v. Deloitte, Haskins, & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  The issue is not whether the "'evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented.'" *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 252.  This requires more than the "mere existence of a scintilla of evidence in support of the [nonmoving party's] position[;]" there must be "evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.  "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  The Court considers the motions for summary judgment under this standard.

**III.   Count One — Copyright Infringement**

Plaintiff alleges that Defendants committed copyright infringement by "willfully and unlawfully reproduc[ing], publicly display[ing], and creat[ing] derivative versions of copyrighted elements of the Platform verbatim."  (Doc. 39 at ¶ 38.)  In its pending motion, Plaintiff argues that it is entitled to summary judgment on this claim because Defendants admitted to reproducing and distributing SPSO's Platform.  (Doc. 42 at 4.)  Plaintiff further argues that the Court must reject Defendants' defense that, based on their relationship with Kesler, they had a license to use the Platform.  (*Id.*)  Plaintiff asserts that this defense fails because Kesler had a non-exclusive license and could not grant rights that had not been expressly granted to him.  (*Id.*)

Defendants also seek summary judgment on Plaintiff's copyright infringement claim.  Defendants argue that (1) Plaintiff did not allege or prove that the copyright office received its complete copyright application before Plaintiff filed its original complaint, (2) the copyright application identifies a work that was completed and published after Defendants' alleged infringement, (3) the copyright application identifies a work that was

"made for hire," which would have been impossible for the allegedly infringed work, (4) the copyright application identifies a work with fewer authors and owners than the allegedly infringing work, and (5) Plaintiff was not assigned the right to sue for the time period of Defendants' alleged infringement. (Doc. 45 at 3.)

The Court considers the parties' arguments on Count One in the context of the requirements of the Copyright Act, and with its analysis of Defendants' motion for an order directing Plaintiff to cancel or amend its copyright registration. (Doc. 53.) As set forth below, the Court finds that the mandatory referral procedures of 17 U.S.C. § 411(b)(2) apply to determine whether Plaintiff properly registered its copyright and met the preconditions of a copyright infringement suit and, therefore, denies the parties' cross motions for summary judgment on Plaintiff's copyright infringement claim. The Court does not address the parties' remaining arguments on Count One.

## A.    The Copyright Act

Copyright protection applies to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). A copyright, as a right, "subsists from its creation . . . ." *See* 17 U.S.C. § 302(a). "A website in and of itself is not explicitly recognized as copyrightable subject matter." COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES, Glossary, §1006 (3d ed. 2014) (*Compendium III*). Rather "[a] website is merely a medium of fixation for works of original authorship . . . it is a vehicle for the dissemination of content, which may or may not be copyrightable." *Id.* "[I]t is the content of the website — not the medium of expression — that comprises the copyrightable authorship that may be registered with the U.S. Copyright Office." *Id.*

"Under the Copyright Act, copyright protection provides an owner with exclusive rights to reproduce the copyrighted work, to prepare derivative works from the copyrighted work, to distribute copies of the copyrighted work, and to perform or display the copyrighted work." 17 U.S.C. § 106. Anyone who violates any of those exclusive rights is an infringer of the copyright of the author, and the legal or beneficial owner of the exclusive right is entitled to sue for infringement under 17 U.S.C. § 501(a)-(b).

1    To establish a prima facie case of copyright infringement, a plaintiff must prove

2    (1) ownership of a valid copyright, and (2) that the alleged infringer violated at least one

3    of the exclusive rights granted under § 106.  *See A & M Records, Inc. v. Napster, Inc.*,

4    239 F.3d 1004, 1013 (9th Cir. 2001).  "In any judicial proceeding the certificate of

5    registration made before or within five years after first publication of the work shall

6    constitute prima facie evidence of the validity of the copyright and of the facts stated in

7    the certificate." 17 U.S.C. § 410(c).

8    **B.      Precondition to bringing a Copyright Infringement Claim**

9    Registration of a copyrighted work is not required for copyright protection.  17

10   U.S.C. § 408(a).  However, registration is a precondition for bringing a civil action for

11   copyright infringement.  17 U.S.C. § 411(a) (providing that "no action for infringement

12   of the copyright in any United States work may be instituted until registration of the

13   copyright has been made in accordance with this title.").  The registration requirement

14   does not restrict a court's subject matter jurisdiction.  *Cosmetic Ideas, Inc., v.*

15   *IAC/Interactivecorp*, 606 F.3d 612, 614-15 (9th Cir. 2010) (citing *Reed Elsevier, Inc., v.*

16   *Muchnick*, 559 U.S. 154, 130 S. Ct. 1237, 1241 (2010)).

17   The Ninth Circuit has held that the copyright office's receipt of a completed

18   application is sufficient for purposes of initiating copyright infringement litigation, and

19   that the processes of copyright registration and an infringement case can proceed

20   concurrently.  *Cosmetic Ideas, Inc.*, 606 F.3d at 619-21.  Even rejection of a registration

21   application does not bar a civil suit, if the copyright office has been notified of the

22   litigation and served with a copy of the complaint.  *Id.* at 619 (citing 17 U.S.C. § 411(a)

23   (permitting an applicant to bring an infringement action after the register has rejected the

24   applicant's registration, so long as the register is notified of the suit and served with the

25   complaint)).  The copyright office may become party to the suit, but it is the court's

26   responsibility to determine the validity of a plaintiff's copyright claim.   17 U.S.C.

27   § 411(a).  After a copyright registration certificate is issued, it dates back to the date of

28

1    the application and the certificate includes the effective date of the registration.

2    17 U.S.C. § 401(a), (d).

3                    **1.    The Allegedly Infringed Material**

4        Because Plaintiff must register its copyright before bringing a copyright

5    infringement suit, *see Cosmetic Ideas, Inc.*, 606 F.3d at 619-21, the Court must first

6    determine what constitutes the allegedly infringed copyrighted material and whether

7    Plaintiff registered its copyright in that material.  Unfortunately, the FAC and the briefing

8    on the motions for summary judgment do not clearly identify the copyrighted material.

9        The FAC alleges that SPSO's Platform "consists of, inter alia, a compilation of

10   programs, representations, originally authored works and writings, computer architecture

11   and design . . . ."  (Doc. 39 at ¶ 10.)  The FAC identifies the "protectable elements" of the

12   Platform as "the original written content, photos, graphics, selection and arrangement of

13   both individually protectable and unprotectable elements, and other unique expressions

14   set forth in the Platform."  (*Id.* at ¶ 27.)  Plaintiff alleges that Defendants infringed the

15   "copyrighted elements" in the Platform.  (*Id.* at ¶ 30.)  However, Plaintiff's motion for

16   summary judgment, filed on October 23, 2016, asserts that the copyrighted content on its

17   Platform "is made up primarily of over six hundred (600) photographs and the software

18   required to show them in a 360-degree view — both photos and software are

19   presumptively copyrightable material and Defendants have no evidence to refute same."

20   (Doc. 43 at 5, 10.)

21       On November 29, 2016, the Register of Copyrights issued Plaintiff a certificate of

22   registration.  (Doc. 50, Ex. 1.)  Although Plaintiff applied for a copyright registration in

23   "text, photograph(s), computer program" (Doc. 50, Ex. 9), Plaintiff later advised the

24   copyright office that it was "no longer interested in registering the code[,] thereby

25   reducing the scope of the claim to the product pictures (not the 360 version) and the text

26   description of those pictures."   (Doc. 55 at 14; Doc. 53, Ex. GG.)  The certificate of

27   registration is for "text, photographs."  (Doc. 50, Ex. 1.)

28

1    On January 9, 2017, in its response to Defendants' motion for an order directing

2    Plaintiff to cancel or amend its copyright registration, Plaintiff further limited its

3    description of the copyrighted content to a "collection of photos."   (Doc. 56 at 6

4    (referring to "the collection of photos at issue in this case").)   Based on Plaintiff's

5    January 9, 2017 limitation of the copyrighted material, and the certificate of registration,

6    the Court concludes that for purposes of its infringement claim, Plaintiff's reference to

7    "copyrighted content" refers to the copyrighted photos that appear on its website

8    www.poolandspapartsnow.com. (*See* Doc. 50, Ex. 1; Doc. 50 ¶ 4 (citing Exs. 1, 5, 6).)[5]

9    ## 2.       Whether Plaintiff Satisfied the Registration Precondition

10    In their motion for summary judgment, filed November 9, 2016, Defendants argue

11    that Plaintiff's copyright infringement claim fails because it did not satisfy the

12    registration precondition for filing a claim for copyright infringement.   (Doc. 45 at 7.)

13    Plaintiff responds that it filed an application for copyright registration on September 13,

14    2015, before it filed this lawsuit on September 17, 2015, and the copyright office

15    subsequently issued a certificate of registration with an effective registration date of

16    September 16, 2015.  (Doc. 49 at 2.)

17    The record reflects that Plaintiff's application for registration of copyright was

18    dated September 13, 2015, and that the copyright office received the application on

19    September 15, 2015.  (Doc. 50, Ex. 9; Doc. 53, Ex. B.)  The copyright office issued a

20    certificate of registration for "text, photographs," with September 16, 2015 as the

21    effective date of registration.   (Doc. 50, Ex. 1.)   After a certificate of registration of

22    copyright is issued, the registration dates back to the date of application.  *Cosmetic Ideas*,

23    606 F.3d at 616 (citing 17 U.S.C. § 410(d) (concluding that plaintiff satisfied the

24    registration requirement when plaintiff submitted an application for registration of

---

25    [5]   To the extent that Plaintiff claims Defendants infringed other copyrightable

26    content on the website (or its Platform), its claim fails because during the registration
     process Plaintiff limited its copyright claim to product pictures and text descriptions of

27    those pictures (Doc. 53, Ex. GG), and the copyright registration is only for text and
     photographs that are content on the website www.poolandspapartsnow.com.  (Doc. 50,

28    Ex. 1)  Therefore, Plaintiff does not satisfy the precondition for bringing an infringement
     action for any additional copyrighted material.  *See* 17 U.S.C. § 411(a).

1  copyright before it filed suit and the copyright office subsequently issued a registration

2  certificate)).

3        The registration was effective September 16, 2015, before Plaintiff filed the

4  original complaint and, therefore, Plaintiff may have satisfied the precondition for

5  bringing a copyright infringement action.  However, Defendants argue that the copyright

6  registration is invalid and does not satisfy the registration precondition because Plaintiff

7  committed fraud on the copyright office during the registration process by knowingly

8  providing false information to the copyright office about the date of first publication and

9  the contents of the Deposit.

10        As set forth below, these arguments raised in the cross motions for summary

11  judgment on Plaintiff's copyright infringement claims — that Plaintiff committed fraud

12  on the copyright office and, thus, has not met the registration precondition to filing suit

13  — are intertwined with the arguments in Defendants' motion for an order directing

14  Plaintiff to cancel or amend its copyright registration.  (Doc. 53.) Therefore, the Court

15  considers Defendants' motion as part of its analysis of the cross motions for summary

16  judgment on Plaintiff's copyright infringement claim.

17        **C.    Motion to Direct Plaintiff to Cancel or Amend its Registration**

18        After the briefing on the motions for summary judgment closed, Defendants filed

19  a motion for an order directing Plaintiff to cancel or amend its copyright registration

20  based on alleged fraud during the registration process.[6]  (Doc. 53.)  This motion is fully

21  briefed.  (Docs. 53, 56, 58.)  The motion appears to seek two forms of relief: (1) a

22  declaratory judgment that Plaintiff's copyright registration is invalid; and (2) a mandatory

23

24  _____

25        [6]  "Cancellation is an action taken by the Copyright Office whereby . . . the
   registration is eliminated on the ground that the registration is invalid under the
26  applicable law and regulations . . . ."  37 C.F.R. § 201.7(a) (cancellation of completed
   registrations).  The copyright office has stated that it "does not invite, and will generally
27  not respond favorably to, requests to cancel a completed registration by a party other than
   the owner of the copyright."  Cancellation of Completed Registrations, 50 Fed. Reg.
28  33065, 33067.  Thus, there does not appear to be a mechanism for Defendants to
   challenge the copyright registration certificate directly with the copyright office.

injunction directing Plaintiff to take steps with the copyright office to cancel or amend its registration.

Defendants do not cite any authority indicating that filing a motion in the district court is the proper procedure to obtain their requested relief, and they do not identify or apply the legal standards applicable to declaratory and injunctive relief.[7]   Additionally, the cases that Defendants rely upon to support their motion, *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 n.1 (9th Cir. 2002), and *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997), were decided before Congress enacted the Prioritizing Resources and Organization for Intellectual Property Act of 2008 (the PRO-IP Act amendments), which established a procedure for challenging inaccuracies in copyright registrations.[8]   *See* 17 U.S.C. § 411(b)(1), (b)(2).   Therefore, the Court denies Defendants' motion for an order directing Plaintiff to cancel or amend its copyright registration.   (Doc. 53.)   However, as discussed in Section III.D.1 and 2, the Court considers Defendants' allegations of fraud during the registration process under the standards established by the 2008 PRO-IP Act amendments.

D.      **Court Referral to Register of Copyrights**

1.      **Procedures under §§ 411(b)(1) and (b)(2)**

As noted above, in 2008 Congress enacted the PRO-IP Act amendments.   Under the revised statute, a certificate of registration is sufficient to bring a copyright infringement suit "regardless of whether [it] contains any inaccurate information," unless (1) the registrant included the inaccurate information "with knowledge that it was

---

[7] *See* 28 U.S.C. § 2201 (declaratory judgment act); *Kam–Ko Bio–Pharm Trading Co., Ltd. v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (recognizing that "a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment.") (citation omitted); *see also Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (elements for injunctive relief).

[8] Additionally, *Syntek* is procedurally distinguishable from the relief Defendants request in their motion because it was an action for a declaratory judgment and the court did not declare the registration invalid, but referred the matter to the copyright office. *Syntek*, 307 F.3d at 781-82.   Similarly, in *Urantia Found.*, 114 F.3d at 963, the court did not consider the procedure Defendants request in their motion.   Rather, the court considered whether an inadvertent mistake on plaintiff's copyright application for copyright renewal "destroyed the validity of its renewal copyright." *Id.* at 961.

inaccurate," and (2) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."   17 U.S.C. § 411(b)(1).   Thus, a registration error may bar an infringement action if "the inaccurate information was included on the application . . . with knowledge that it was inaccurate" and the inaccuracy, "if known, would have caused the Register of Copyrights to refuse registration."   (*Id.*)   Section 411(b)(2) provides that "[i]n any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."   17 U.S.C. § 411(b)(2).

Congress enacted § 411(b) "to ensure that no court holds that a certificate is invalid due to what it considers to be a misstatement on an application without first obtaining the input of the Register as to whether the application was properly filed or, in the words of § 411(b)(2), whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."   *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623-24 (7th Cir. 2013).   The parties have not cited, and the Court has not found, Ninth Circuit case law interpreting § 411(b).

However, courts that have considered § 411(b) agree that when there is a question regarding the accuracy of the information contained in a registration, the court's referral of the matter to the Register of Copyrights under § 411(b)(2) is mandatory.   *See DeliverMed*, 734 F.3d at 624 (finding that referral under section 411(b)(2) is mandatory); *Palmer/Kane LLC v. Rosen Book Works LLC*, 2016 WL 3042895, at *1 (S.D.N.Y. May 27, 2016) ("[C]ourts are in agreement that the provision is mandatory in nature . . . ."); *Roberts v. Gordy*, 181 F. Supp. 3d 997, 1008 (S.D. Fla. 2016) ("When there is a question regarding the accuracy of the information contained on a registration, the Court's referral of the matter to the Register of Copyrights under § 411(b)(2) is mandatory."); *Schenck v. Orosz*, 2015 WL 2402436, at *6 (M.D. Tenn. May 20, 2015) ("By its terms, § 411(b)(2) requires the court to seek an advisory opinion from the Register in any case that 'alleges' inaccurate information."); *Lennar Homes of Texas Sales & Mktg., Ltd. v. Perry Homes,*

*LLC*, 117 F. Supp. 3d 913, 926-27 (S.D. Tex. 2015) (noting that referral of the issue does not appear to be discretionary); *Olem Shoe Corp. v. Wash. Shoe Co.*, 2010 WL 3505100, at *2 (S.D. Fla. Sept. 3, 2010) ("[T]he statutory language — 'shall request' — is mandatory."). In *DeliverMed*, the Seventh Circuit found that the district court's invalidation of a copyright registration without complying with the procedure provided in § 411(b)(2) was reversible error, even though the parties had not asked the district court to invoke that procedure. *DeliverMed*, 734 F.3d at 624 (stating that "ignoring a clear statutory directive due to the inadvertence of the parties would defeat the purpose of 17 U.S.C. § 411(b)(2) and deprive the Register of its right to weigh in on precisely this issue.").

Although the PRO-IP Act amendments to the Copyright Act state that a request from a court to the Register of Copyrights is triggered when inaccurate information in a copyright application is "alleged," the Register of Copyrights has stated that "before asking the Register of Copyrights whether she would have refused to register a copyright . . . a court should feel free to determine whether there is in fact a misstatement of fact." *DeliverMed*, 734 F.3d at 625 (citing Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) in *Olem Shoe Corp*, 2010 WL 3505100, at *3 n.4). The Seventh Circuit cautioned "both courts and litigants to be wary of using this device [in § 411(b)(2)]" because of the delay it may cause to the case. *Id.* The Seventh Circuit advises district courts to first determine whether a party has demonstrated the elements of § 411(b)(1), specifically, "that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office." *Id.* Other courts have followed the Seventh Circuit's approach. *See Schenck*, 2015 WL 2402436, at *6-*7; *Lennar Homes, Ltd*, 117 F. Supp. 3d at 926-27; *Palmer/Kane LLC*, 2016 WL 3042895, at *1-*2.

In their motion for an order directing Plaintiff to cancel or amend its copyright registration, Defendants argue that during the copyright registration process Plaintiff knowingly provided false information to the copyright office in response to its inquiries

about Plaintiff's application.   Those responses modified the application and were incorporated into the certificate of registration.   (*See* Doc. 53, Ex. CC (referring to modifications to copyright application).)  Defendants assert that the copyright registration is inaccurate and cite § 411(b), but do not discuss that statute in detail.  (Doc. 53 at 2; Doc. 58 at 6.)  However, the parties have fully briefed the issues that arose during the registration process and that are relevant to § 411(b).  *See DeliverMed*, 734 F.3d at 624. Therefore, the Court considers the application of § 411(b) to this case without requiring additional briefing.

### 2.      Section 411(b)(1) Requires Referral to the Register of Copyrights

Copyright protects original authorship fixed in tangible form.  17 U.S.C  § 102(a). For works transmitted online, such as a website, "the copyrightable authorship may consist of text, artwork, music, audiovisual material (including any sounds), sound recordings, etc."  17 U.S.C. § 102(b).  Plaintiff's copyright registration application was based on an online work, the SPSO website www.poolandspapartsnow.com, and the Deposit was a "copy" of that website.  (Doc. 50, Ex. 9; Doc. 53, Exs. N-1, N-2, N-3.)  In its September 2015 copyright application, Plaintiff described its claim as "text, photograph(s), [and] computer program."  (*Id.*)  The copyright application identified the date of first publication as August 26, 2015.  (Doc. 50, Ex. 9.)

On October 6, 2016, the copyright office asked Plaintiff "[s]ince this application is to register the website as it appeared (published) on 8/26/2015, was any of the computer code or were any of the photographs from an earlier version of the website?"  (Doc. 53, Ex. F.)  The copyright office explained that any photographs or code that appeared in earlier website versions "must be excluded from this claim since the extent of claim for a revised, or derivative, work is based only on the new and revised material contained in the later version of the work."  *Id.*   Plaintiff's counsel responded that some of the Deposit's content "may have been from an earlier version of the website BUT we need

1    special dispensation because this is the first time registration of the website and no copy

2    (i.e., mirror or backup) of the prior website exists." (Doc. 53, Ex. H.)

3         On October 14, 2016, the copyright office denied Plaintiff's request for an

4    exception. (Doc. 53, Ex. I.) The copyright office stated that "[w]e can only register the

5    website as it appeared on the date on which it was *printed*, not for any past or future

6    versions."[9] (*Id.*, Ex. I (emphasis added).) The copyright office also stated "if any of the

7    content of the website ever appeared online or in any other form previous to the version

8    submitted, please authorize me to exclude all of the preexisting material and to limit the

9    claim to the new and revised material in this version of the website."[10] (*Id.*) In response,

10   Plaintiff's counsel inquired "[o]n what grounds is special dispensation denied? Websites

11   aren't copyrighted usually until they are mature. Therefore, this policy excludes almost

12   every conceivable website that is nontrivial from being copyrighted." (Doc. 53, Ex. J.)

13        On November 9, 2016, while Plaintiff's copyright application was pending,

14   Defendants filed a motion for summary judgment arguing that, based on the information

15   in the copyright application, Plaintiff's copyright for the Work completed and published

16   in 2015 could not be enforced against Defendants who allegedly downloaded a version of

17   the Work on September 16, 2014. (Doc. 45 at 8.) Within a week, on November 16,

18   2016, Plaintiff submitted to the copyright office an affidavit from Aaron Hagen stating

19   that "SPSO first published the Platform on or about July 3, 2014. It was completed on or

20   about June 25, 2014." (Doc. 51, Ex. K at ¶ 4.) The Hagen affidavit further stated that

21   "[t]he sample of the Platform provided to the United States Copyright Office with

22   SPSO's Copyright application in 2015 is the same as the website first appeared when

23   _____

24        [9]   In this reference to the date the website was "printed," it appears that the copyright office was referring to publication. *See Compendium III,* § 1008.6(A).

25        [10]   "For all online works other than computer programs and databases, the registration will extend only to the copyrightable content of the work *as received in the*

26   *Copyright Office and identified as the subject of the claim.* The application for registration should exclude any material that has been previously registered or published

27   or that is in the public domain. For published works, the registration should be limited to the content of the work asserted to be published on the date given on the application."

28   Copyright Circular 66 (Copyright Registration for Online Works), reviewed July 2012. (available online at www.copyright.gov.) (emphasis added); (Doc. 53, Ex. G.)

- 18 -

published on July 3, 2014." (*Id.* at ¶ 5.)  In an accompanying email, Plaintiff's counsel confirmed that "[t]he Deposit that was submitted correctly represents the copy that was first published on July 3, 2014.  Counsel did not have sufficient facts at the time of application." (Doc. 53, Ex. L.)

On November 17, 2016, a supervisor at the copyright office contacted Plaintiff's counsel, stating "[t]he signed affidavit that you provided states that the website was completed on June 25, 2014 and published on July 3, 2014.  The original application lists the Year of Completion as 2015 and the date of first publication as August 36 [sic], 2015.  Please confirm that we should update the information on your original application with that which is provided in the [affidavit].  Please do note that the copyright notice on the bottom of each webpage submitted as deposit material bears the year 2015." (Doc. 53, Ex. Q at 1-2.)  Plaintiff's counsel responded, "[y]es the information should be updated as per the affidavit." (*Id.* at 2.)

On November 17, 2016, Plaintiff also informed the copyright office that its copyright claim was for "the photographs and computer code related to the photographs that enabled the latter to present a 360 degree view of the product to a prospective customer.  The Hagens also provided text descriptions of the products.  That is the extent of the claim." (Doc. 53, Ex. Q.)  Plaintiff explained that "[m]uch of the website code is licensed from a third party (i.e. BigCommerce) and SPSO obviously makes no claims with respect to that." *Id.*

A few days later, Plaintiff advised the copyright office that it was "no longer interested in registering the code . . . ." (*Id.* at Ex. CC (Nov. 21, 2016 email).)  Plaintiff specified that it was "interested in registering the website as is with the current deposit and the modifications to the application already agreed to." (*Id.*)  On November 29, 2016, the copyright office issued a certificate of registration.  (Doc. 50, Ex. 1.)  The certificate of registration identifies the work as "SPSO website www.poolandspapartsnow.com," the year of completion as 2014, and the date of first publication as July 3, 2014.  (*Id.*)  The copyright claim is limited to "text [and]

photographs" in the Deposit, which is the SPSO website www.poolandspaparts.now. (Doc. 50, Ex. 1.)

Defendants argue the certificate of registration is inaccurate because it is based on a Deposit that does not represent the website as it existed on July 3, 2014, which is the modified date of publication that Plaintiff provided to the copyright office during the registration process. (Doc. 53 at 6); *see Compendium III*, § 1010.5 (the deposit material must match the material claimed in the application). In other words, Defendants argue that the Deposit does not match the claim in the application (as it was modified by Plaintiff's correspondence with the copyright office), as required for copyright registration. *See id.* (noting that applicants sometimes provide the date the website was first published, "but instead of depositing the content that appeared on the website as of that date the applicant deposits the content that appeared on the website on the date that the application was filed."). Therefore, Defendants argue that the date of first publication on the certificate of registration is inaccurate because it is based on a Deposit that contains a revised version of Plaintiff's website, which was not published on July 3, 2014. (Doc. 53 at 6.)

In arguing that the Deposit is a revised version of the website, Defendants argue that the Deposit includes material that was added to the website after July 3, 2014. Defendants assert that the Deposit includes new material, specifically Nemo products, which were added to the website in October 2014. (Doc. 53 at 6-7 (*comparing* Ex. M-3 *with* Ex. N-3, and citing Ex. O).) Defendants also assert that the Deposit includes a new webpage, a "Contact Us" page, which was added to the website sometime after January 14, 2015. (Doc. 53 at 7 (*comparing* Ex. M-2 at 1 *with* Ex. N-2 at 1, and *comparing* Ex. N-4 *with* Ex. P).)

Defendants assert that the certificate of registration lists an inaccurate date of first publication because Plaintiff submitted false information to the copyright office in Hagen's affidavit. (Doc. 53 at 7.) Defendants assert this affidavit falsely stated that the website was first published on July 3, 2014, and that the Deposit (the version of the

website submitted to the copyright office) was the same as it appeared on the date of first publication, July 3, 2014.  (*Id.*)  Defendants argue that the timing of Hagen's affidavit supports a finding a fraud because it was submitted (1) after the copyright office, in email correspondence with Plaintiff's counsel regarding the date of publication included on the written application, advised Plaintiff that material published on the website before the August 26, 2015 date of first publication would be excluded from the claim, and (2) after Defendants filed a motion for summary judgment arguing that if the copyrightable material was completed and published on August 26, 2015, then Plaintiff's infringement claim would fail because Defendants' allegedly infringing conduct occurred in 2014.  (*Id.* at 4-6.)  Defendants assert that once Plaintiff recognized this "fatal defect," it submitted Hagen's affidavit, which falsely stated that the date of first publication was July 3, 2014, and that the Deposit submitted to the copyright office was the same as the website appeared on July 3, 2014.  (*Id.* at 5.)

Plaintiff does not dispute that "there is additional information contained in the Deposit."  (Doc. 56 at 6.)  However, it asserts that the presence of new material is "of no moment" because with respect to the "photographs that form the gravamen of this dispute, the Deposit copy submitted to the USCO was the same as the one that existed on July 3, 2014."  (*Id.* at 7.)  Plaintiff's argument disregards the registration requirement that the Deposit — not just the copyrighted material contained in a deposit that is at issue in an infringement action — must be the same as it appeared on the date of first publication identified on the application.  *See Compendium III*, § 1008.6(A) (stating that "the deposit should contain a copy of the content as it existed on the date specified in the application.")  The copyright office raised this issue during the registration process when it explained that it could only register the website as it appeared on the date it was first published.  (Doc. 53, Ex. I.)

Plaintiff does not sufficiently explain the apparent discrepancy between its statements to the copyright office and its statements to this Court.  In Hagen's November 16, 2016 affidavit, and an email from its counsel, Plaintiff advised the copyright office

that "[t]he sample of the Platform provided to the United States Copyright Office with SPSO's Copyright application in 2015 is the same as the website first appeared when published on July 3, 2014."  (Doc. 51, Ex. K at ¶ 5; Doc. 53, Ex. L.)  However, in its briefing on the pending motions, Plaintiff admits that it was not.   (Doc. 56 at 6.)  Additionally, evidence in the record shows that Plaintiff changed its website after July 3, 2014.  (Doc. 53, Exs. M-1, M-2, M-3, N-1, N-2, N-3; Doc. 53, Ex. O.)

Plaintiff asserts that the Deposit is *essentially* the same as the website as it existed on July 3, 2014.  (Doc. 56 at 9.)  Plaintiff, however, does not cite any authority to support its position that "essentially the same" satisfies the registration requirement that the deposit match the material claimed in the application.   In the *Compendium III*, the copyright office describes as a "frequent" issue an applicant's failure to deposit the content of a website as it existed on the date of publication:

> Frequently applicants seek to register published website content, but fail to deposit the content that existed on the website as of the date of publication specified in the application.  In some cases, the applicant provides the date that the website was first published, but instead of depositing the content that appeared on the site as of that date the applicant deposits the content the appeared on the website on the date that the application was filed.

*Compendium III,* § 1010.5.  The *Compendium III* provides that the "applicant must deposit an acceptable copy or phonorecord of the specific version that the applicant intends to register and the applicant must provide the correct date of first publication for that version." *Id.*

Here, Plaintiff did not submit to the copyright office a copy of the version of its website it intended to register.  Based on Plaintiff's correspondence with the copyright office during the registration process, it intended to register the version of its website as it existed on July 3, 2014 (Doc. 53, Ex. Q), but it did not submit a copy of that version of the website.  Plaintiff's correspondence with the copyright office, including the Hagen affidavit, incorrectly represented that the Deposit was "the same as the website first

appeared when published on July 3, 2014."[11]   But in its filings in this Court, Plaintiff admits that the Deposit includes material that was added after July 3, 2014.  (Doc. 56 at 6.)

Because the Deposit Plaintiff submitted to the copyright office included material that was added after the July 3, 2014 publication date alleged during the registration process, the Deposit that Plaintiff submitted did not depict the website as it appeared on the date of publication.[12]   Rather, Plaintiff submitted a Deposit that included a revised version of its website and, under the relevant provisions in *Compendium III*, registration is limited to the new material, and the publication date is the date the new material was added to the website.[13]  *Compendium III*, §§ 1008.5 (Identifying the Specific Version that May be Included in the Claim) and 1008.6(A) (Published Website Content).   When a copyright applicant registers a revised version of a published website, the applicant should provide, as the date of first publication, the "month, day, and year that the revised content was first posted on that site."    *Id.* at § 1009.4(A)(2).   In such a case, the registration "does not cover any material that has been previously published or previously registered with the U.S. Copyright Office" and the applicant should exclude such material

_____

[11]   In this Court, Plaintiff states that the Deposit was essentially the same (Doc. 56 at 9), or that it was the "best available copy" of the website as it existed on July 3, 2014. (Doc. 56 at 6.)  Plaintiff, however, did not make these assertions to the copyright office. Rather, it represented to the copyright office that "[t]he sample of the Platform provided to the United States Copyright Office with SPSO's Copyright application in 2015 is the same as the website first appeared when published on July 3, 2014."  (Doc. 53, Ex. K.)

[12]   As Plaintiff argues, the Copyright Act defines publication as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.  A public performance or display of a work does not of itself constitute publication."  17 U.S.C. § 101.  However, based on the sections of the *Compendium III* related to the registration of websites, the date of publication that should be used on an application to register a copyright is not fixed, but depends on the version of a website that the applicant seeks to register.  *See Compendium III*, §§ 1010.6(B), 1008.4(A).

[13]   Under this scenario, Defendants assert that the publication date for Plaintiff's website is October 15, 2014, when the Nemo products were added to the website. (Doc. 58 at 4.)  Defendants had asserted that the publication date could also be sometime in January 2015 when the Contact Us "text" was added to the website.  (Doc. 53 at 11-12.)  However, in a later filing, they appear to abandon that argument.  (Doc. 58 at 4.)

1    from the claim.  *Id.* at § 1009.8.  To register subsequent versions of a published website,

2    "the applicant should submit the relevant webpages as they existed on the date that the

3    *subsequent version was first published*."  *Id.* at § 1010.6(B) (emphasis added); *see also*

4    *id.* at § 1009.4(A) ("the applicant should only provide a date of first publication for the

5    specific version that will be submitted for registration.  The application should not

6    provide a date of publication for any other version of the work that will not be submitted

7    to the Office.").

8          The copyright office's correspondence with Plaintiff, when read with the

9    *Compendium III*, suggests that the copyright office may have rejected the application

10   (with the modified July 3, 2014 date of first publication) had it known that the Deposit

11   was not for the July 3, 2014 version of the website, but was for a version of the website

12   that had been revised by the addition of new product photographs and a new webpage.  It

13   does not appear that Plaintiff could register the original version of the website with a

14   Deposit that was for a subsequent version of the website.  *See id.* at §§ 1010.5.0 (The

15   Deposit Material Must Match the Material Claimed in the Application) and 1008.6(A)

16   (stating that "[i]f the applicant subsequently submits an application to register subsequent

17   versions of the website, the registration will cover the new or revised material . . . .");

18   (*see also* Doc. 53, Ex. Q at 1-2.)

19         The Court concludes that the statutory criteria for mandatory referral have been

20   satisfied.  It is undisputed that the Deposit material did not match the material claimed in

21   the application.  The application was to register content (photographs and text) on the

22   website as of the date of publication specified during the registration process, July 3,

23   2014, but Plaintiff deposited the content that appeared on the website on a later date.

24   Plaintiff, however, represented to the copyright office that the Deposit was the same as

25   the website appeared on July 3, 2014.  Plaintiff does not argue that it unknowingly

26   provided false information to the copyright office.  Instead, Plaintiff argues that its

27   inclusion of additional material in the Deposit is "of no moment."  (Doc. 56 at 7.)

28   "Whether this inaccurate information is material to the Copyright Office is precisely what

1   the procedure codified at § 411(b)(2) is designed to clarify." *Palmer/Kane*, 188
2   F. Supp. 3d at 352.

3          Therefore, the Court will issue a request to the Register of Copyrights to advise
4   the Court whether knowledge that the Deposit underlying Certificate of Registration TX
5   8-268-803 does not depict the content that existed on the SPSO website
6   www.poolandspaparts.now on the date of publication identified on the certificate of
7   registration, July 3, 2014, but instead depicts content that existed on the SPSO website on
8   a later date, would have caused the Register of Copyrights to refuse registration based on
9   the July 3, 2014 publication date.  The Court, however, will grant each party leave to file
10  a notice with the Court proposing up to three questions to submit to the copyright office.
11  The parties should explain the basis for the questions, with citations to the record and
12  legal authority.  The Court will consider those proposals in formulating its request to the
13  Register of Copyrights.  Considering the issues surrounding the certificate of registration,
14  the Court denies the parties' cross motions for summary judgment on the copyright
15  infringement claim without prejudice.

16  **IV.    Count Two — Unfair Competition**

17         Count Two of the FAC alleges a claim for unfair competition under Arizona law.
18  The FAC alleges that "Defendants have engaged in unlawful business acts or practices by
19  committing acts including computer fraud, trespass, and other illegal acts or practices."
20  (Doc. 39 at ¶¶ 41-47.)   Plaintiff and Defendants move for summary judgment on this
21  claim.  (Docs. 43, 45.)

22         In Arizona, the common law doctrine of unfair competition "encompasses several
23  tort theories, such as trademark infringement, false advertising, 'palming off,' and
24  misappropriation."  *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct.
25  App. 1998) (internal citations omitted).  "[A]n unfair competition claim is preempted
26  unless it alleges elements that make it qualitatively different from a copyright
27  infringement claim."  *Id.*    Under Arizona law, "[t]he universal test [for unfair
28  competition] is whether the public is likely to be confused."  *Doe v. Ariz. Hosp. &*

1  *Healthcare Ass'n*, 2009 WL 1423378, at *11 (D. Ariz. Mar. 19, 2009) (quoting *Boice v.*

2  *Stevenson*, 187 P.2d 648, 653 (Ariz. 1947)).  The FAC alleges misappropriation, but does

3  not allege palming off.  (Doc. 39 at ¶¶ 41-45.)  However, Plaintiff's motion for summary

4  judgment asserts that "Defendants attempted to 'palm off' Plaintiff's goods as their own."

5  (Doc. 43 at 16.)  Defendants argue that Plaintiff's motion for summary judgment on this

6  theory of unfair competition should be denied, and that the Court should enter summary

7  judgment for Defendants on Plaintiff's claims of unfair competition.  (Doc. 47 at 10;

8  Doc. 46 at 16-17.)

9        **A.**    **Palming Off**

10       "'[P]alming off,' or 'passing off,'. . . consists of a false representation tending to

11  induce buyers to believe that the defendant's product is that of the plaintiff."  *Fairway*

12  *Constructors*, 970 P.2d at 956.  Typically, "palming off" consists of "an attempt to make

13  the purchaser believe that the product of the subsequent entrant is that of his better known

14  competitor."  *Kaibab Shop v. Desert Son, Inc.*, 662 P.2d 452, 454 (Ariz. Ct. App. 1982).

15  Confusion or deception is a necessary element of palming off.  *Fairway Constructors*,

16  970 P.2d at 956; *see also, Boice*, 187 P.2d at 653 (same); *Doe*, 2009 WL 1423378, at *11

17  (same).

18       Here, however, Plaintiff has not alleged any deception or confusion of Plaintiff's

19  or Defendants' customers.  *C.f.*, *Taylor v. Quebedeaux*, 617 P.2d 23, 24 (Ariz. 1980)

20  (finding unfair competition when two similarly-named rental companies operated in close

21  proximity to each other and plaintiff produced evidence of confusion); *Liniger v. Desert*

22  *Lodge*, 160 P.2d 761, 764 (Ariz. 1945) (finding no unfair competition when similarly-

23  named and closely-located tourist lodgings competed, but there was no evidence of

24  customer confusion).  Plaintiff admits that it does not know of any instances of consumer

25  confusion.  (Doc. 46 at ¶ 49; Ex. A at 163 (Deposition of SPSO through Aaron Hagen)

26  (Hagen stated that he did not "know of" any confusion caused by the duplicate website).)

27  Therefore, Plaintiff has not stated a claim for unfair competition based on Defendants'

28  alleged 'palming off' of Plaintiff's goods.  Accordingly, to the extent that Plaintiff alleges

1  unfair competition based on palming off, the Court denies Plaintiff's motion for summary

2  judgment on that claim and grants summary judgment in Defendants' favor.[14]

3  ### B.   Misappropriation

4  The FAC alleges that Defendants misappropriated Plaintiff's confidential

5  information, including information about its business model, operating procedures, and

6  techniques to gain a competitive advantage in the marketplace.  (Doc. 39 at ¶¶ 32, 44-45.)

7  Plaintiff moves for summary judgment on this claim arguing that, by downloading the

8  Platform, Defendants acquired its "know-how as to its business operations of Plaintiff's

9  electronic storefront," including how Plaintiff interacted with BigCommerce's software.

10  (Doc. 43 at 15.)   In its reply, Plaintiff further explains this claim asserting that by

11  downloading the "Platform stored in files," Defendants "acquired the necessary

12  information and coding for interaction with BigCommerce (i.e. shopping cart)."  (Doc. 49

13  at 14.)   Defendants move for summary judgment on this claim, arguing that it is

14  preempted and lacks merit.  (Doc. 45 at 17; Doc. 47 at 10.)

15  The Arizona Court of Appeals has held that the common law doctrine of unfair

16  competition "encompasses several tort theories including misappropriation."  *Fairway*

17  *Constructors*, 970 P.2d at 956; *see also Sutter Home Winery, Inc. v. Vintage Selections,*

18  *Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (explaining that, under Arizona law, an action for

19  unfair competition requires the plaintiff to show either "that it was engaged in

20  competitive business" with the defendant or that the defendant's actions "were likely to

21  produce public confusion.") (citations omitted).

22  "Misappropriation involves the unfair taking for profit, at little or no cost, of

23  property acquired by another through investment of substantial time and money."

24  *Fairway Constructors*, 970 P.2d at 957 (internal citations omitted).  Under Arizona law,

25  misappropriation of confidential information consists of either:

26  > (a) Acquisition . . . by a person who knows or has reason to
27  > know that the [information] was acquired by improper means.

---

28  [14]   Because the Court determines that Plaintiff fails to state a claim for palming
off, it does not determine whether that claim is also preempted.

(b) Disclosure or use of [information] of another without express or implied consent by a person who either:

(i) Used improper means to acquire knowledge of the [information].

(ii) At the time of disclosure or use, knew or had reason to know that his knowledge of the [information] was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

Ariz. Rev. Stat. § 44–401(2); *see also ACT Group Inc. v. Hamlin*, 2012 WL 2976724, at *7 (D. Ariz. Jul. 20, 2012) (relying on § 44-401(2) for elements of claim of misappropriation of confidential information that is not a trade secret).

However, misappropriation claims based on copyright are preempted by federal copyright law.  *Fairway Constructors*, 970 P.2d at 957 (citing *Warner Bros. Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 247 (2d Cir. 1983)); *see also Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys. Inc.*, 7 F.3d 1434, 1442 (9th Cir. 1993) (holding that an unfair copying claim is preempted by federal law).  Plaintiff does not dispute that state law causes of action falling within the scope of the federal Copyright Act are subject to preemption.  (Doc. 43 at 15); *see Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).  Plaintiff, however, argues that functional aspects of its Platform fall outside the scope of the Copyright Act.  (Doc. 43 at 15.)

Section 301 of the Copyright Act provides that it exclusively governs all legal or equitable rights that are equivalent to any rights within the general scope of copyright and, therefore, preempts state common law and statutory claims:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 and, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

- 28 -

17 U.S.C. § 301. Under this section, "[c]opyright preemption is both explicit and broad [.]" *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992). The Ninth Circuit uses a two-part test to determine whether the Copyright Act preempts particular state law claims. A claim is preempted if: (1) the work at issue comes within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under the state law are equivalent to the rights contained in 17 U.S.C. § 106. *See See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998); *Law*, 448 F.3d at 1137-38.

Under the first part of the test, a work, or parts of a work, may be unprotected by copyright under § 102(b) and yet be within copyright's subject matter for preemption purposes. *See Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124-25 (N.D. Cal. 2001) (stating that "even if a particular piece of software is not copyrightable because it represents an idea itself rather than the expression of an idea, it is clear that computer programs in general come within the subject matter of copyright."). The scope of preemption is broader than the scope of protection. "[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *U.S. ex rel. Berge v. Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997).

Under the second part of the test, to avoid preemption, "an unfair competition action for misappropriation of time and effort" must "contain[ ] an extra element which changes its nature" to something qualitatively different from a copyright claim. *Summit*, 7 F.3d at 1439-40; *see also Kodadek*, 152 F.3d at 1212 (noting test for Copyright Act preemption). For this reason, "[t]he common law doctrine of 'misappropriation' is normally invoked in an effort to protect something of value that is not covered either by patent or copyright law." *Fairway Constructors*, 970 P.2d at 957.

Plaintiff argues that its misappropriation claim is not preempted because the Platform that Defendants allegedly copied included elements that are not within the scope of the Copyright Act, including "know-how" related to the operations of Plaintiff's electronic storefront, how Plaintiff "operationally dealt with 'drop shipments,' and how it

interacted with BigCommerce's software."  (Doc. 43 at 15; Doc. 44, Ex. 1.)  Plaintiff, however, does not address the second part of the preemption test.  (Docs. 43, 49, 51.)

### 1.    Subject Matter of Copyright

Under the first part of the preemption test, the Court must determine whether the "know-how" related to the operations of Plaintiff's electronic storefront, how Plaintiff "operationally dealt with 'drop shipments,' and how it interacted with BigCommerce's software" are within the subject matter of copyright.  However, Plaintiff's briefing does not provide specific descriptions of these elements of the Platform and does not refer to any portions of the record describing these elements.  Instead, Plaintiff appears to refer to elements of the computer software or computer programs underlying the Platform.

Plaintiff argues that its unfair competition claim is not preempted because Defendants copied the entire Platform, which includes elements that fall outside of the scope of the Copyright Act.  (Doc. 43 at 15.)  Plaintiff's assertion, however, contradicts its allegations of its unfair competition claim in the FAC, which expressly "incorporates by reference all the allegations set forth in 1-40 as if they were fully set forth herein." (Doc. 39 at ¶ 41.)  These paragraphs of the FAC include the allegations of copyright infringement.  (*Id*.)  "Plaintiff cannot both expressly rely on the copyright allegations in . . . its state law claim[] and assert that the state law claim[ is] outside copyright's subject matter for purposes of avoiding preemption."  *Blue Nile, Inc. v. Ice.Com, Inc*., 478 F. Supp. 2d 1240, 1247 (W.D. Wash. 2007).

Plaintiff cites to 17 U.S.C. § 102(b) and appears to argue that its unfair competition claim is not preempted because the "functional" aspects of the Platform are excluded from copyright protection.  (Doc. 43 at 15.)  Section 102(b) provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such a work."  17 U.S.C. § 102(b).  Even if, as Plaintiff asserts, elements of its Platform are excluded from copyright protection under § 102(b), "this does not mean that [the

Platform] is outside copyright's subject matter for the preemption purposes under § 301." *See Blue Nile, Inc.*, 478 F. Supp. 2d at 1248.  Therefore, Plaintiff's reliance on § 102(b) is misplaced because that section of the Copyright Act does not establish that Plaintiff's state law unfair competition claim based on misappropriation is exempt from preemption.

Plaintiff cites *Poe v. Missing Persons*, 745 F.2d 1238, 1240 (9th Cir. 1984), to support its claim that the functional aspects of expression are not copyrightable and are outside the scope of the Copyright Act.   (Doc. 43 at 15.)   In that case, the court considered whether the plaintiff could establish a claim of copyright infringement based on the copying of an alleged sculptural work.  *Poe,* 745 F.2d at 1241.  The court found that a disputed issue of material fact existed as to whether the plaintiff's sculptural work, which portrayed an article of clothing, could also function as a swimming suit and, therefore, was a useful article that was not copyrightable.  *Id.* at 1242; *see also* 17 U.S.C. § 101 (defining a useful article as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article.").   The court noted that if the functional aspects of the swimming suit were independent of the sculptural or artistic aspects of the swimming suit, it may be copyrightable.  *Poe*, 745 F.2d at 1241 (citing 17 U.S.C. § 101).   In *Poe*, the court did not consider whether "functional" aspects of websites or computer programs are copyrightable and did not address whether such "functional" aspects fall outside the scope of the Copyright Act for purposes of preemption.

Plaintiff also cites *Tomaydo-Tomahhdo, LLC v. Vozary*, 629 Fed. App'x 658, (6th Cir. Oct. 20, 2015) (unpublished).  In that case, the Sixth Circuit concluded that a recipe book was not original and was not copyrightable.  *Id.* at 662.  The court specifically noted that "a recipe's instructions, as functional directions, are statutorily excluded from copyright protection." *Id.* (citing 17 U.S.C. § 102(b).)  *Tomaydo-Tomahhdo* supports the proposition that functional aspects, such as directions, are not copyrightable.  However, in that case, the court did not consider the preemption of state law claims and therefore did not provide any analysis that can be applied to support the conclusion that the

"functional" aspects of the Platform are outside the scope of copyright for preemption purposes.

Plaintiff also cites *Lotus Dev. Corp. v. Borland Intern., Inc.*, 49 F.3d 807, 818 (1st Cir. 1994), for the proposition that methods of operation are functional aspects of expression that are not copyrightable and therefore cannot be preempted by the Copyright Act. (Doc. 43 at 15; Doc. 49 at 15; Doc. 51 at 11.) Plaintiff's reliance on this case is misplaced because it is inconsistent with Ninth Circuit law. *See Oracle Am., Inc. v. Google, Inc.*, 750 F.3d 1339, 1365 (Fed. Cir. 2014). In *Oracle,* the Federal Circuit noted that the Ninth Circuit has not adopted the "method of operation" reasoning in *Lotus*. *Id.* The court found that *Lotus* was "inconsistent with Ninth Circuit case law recognizing that the structure, sequence, and organization of a computer program is eligible for copyright protection where it qualifies as an expression of an idea, rather than the idea itself." *Id.* In *Oracle,* the court further noted that "while the court in *Lotus* held that 'expression that is part of a method of operation cannot be copyrighted,' 49 F.3d at 818, this court — applying Ninth Circuit law — reached the exact opposite conclusion, finding that copyright protects 'the expression of [a] process or method.'" *Oracle*, 750 F.3d at 1366 (quoting *Atari Games Corp. v. Nintendo of Am Inc.*, 975 F.2d 832, 839 (Fed. Cir. 1992)).

In its reply in support of its motion, Plaintiff cites the district court's decision in *Oracle Am., Inc. v. Google, Inc.*, 872 F. Supp. 2d 974, 994 (N.D. Cal. 2012), *rev'd and remanded*, 750 F.3d 1339 (Fed. Cir. 2014), for the proposition that "coding and the know-how to make the site functional with an ecommerce application is not exempted and is actionable under" unfair competition law. (Doc. 49 at 14-15.) The district court's decision in *Oracle* does not support that conclusion. In *Oracle*, the district court held that declaring code and the structure, sequence, and organization of thirty-seven packages of computer source code (referred to as application programming interfaces) were not subject to copyright protection. *Oracle Am. Inc.*, 872 F. Supp. 2d 974. The court did not consider whether those particular elements, while not copyrightable, were still within the Copyright Act's subject matter for preemption purposes.

1          Additionally, the Federal Circuit reversed the district court's decision in *Oracle*

2   *Am., Inc. v. Google, Inc.*, 750 F.3d 1339 (Fed. Cir. 2014).  The Federal Circuit concluded

3   that the declaring code and the structure, sequence, and organization of the application

4   programming interfaces were entitled to copyright protection.  *Id.* at 1348.  The court

5   noted that computer programs can be subject to copyright protection as literary works.

6   *Id.* at 1354 (citing 17 U.S.C. § 101).  The court further noted that copyright protection

7   can extend to "literal (source and object code) and non-literal elements of a computer

8   program."  *Id.*  The court noted that source code ("the spelled-out program commands

9   that humans can read") and object code ("the binary language comprised of zeros and

10  ones through which the computer directly receives its instructions") are consistently

11  protected by copyright.  *Id.* at 1355 (internal citations omitted.)  Literal elements include,

12  "among other things, the program's sequence, structure, and organization, as well as the

13  program user's interface."  *Id.*  The court explained that "'whether the non-literal

14  elements of a program are protected depends on whether, on the particular facts of each

15  case, the component in question qualifies as an expression of an idea, or an idea itself.'"

16  *Id.* at 1355-56 (quoting *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d

17  1173, 1175 (9th Cir. 1989)).  The court, referring to Ninth Circuit law, also rejected the

18  argument that elements that perform a function can never be copyrightable.  *Oracle*, 750

19  F.3d at 1366 (referring to the Ninth Circuit's endorsement of the abstraction-filtration-

20  comparison).

21          The Federal Circuit's decision in *Oracle* indicates that coding is copyrightable

22  and, thus, Plaintiff's claim based on the misappropriation of "coding" is within the

23  subject matter of copyright.  *See Oracle*, 750 F.3d at 1355.  The *Oracle* decision also

24  illustrates the complexities of copyright law in the context of computer programs and

25  related matters, and indicates that whether computer programs and their components are

26  entitled to copyright protection varies based on the facts.  *Id.* at 1354-71.  Based on the

27  intricacies of copyright law in this realm, the Court concludes that although aspects of

28  computer programs may not be eligible for copyright protection, computer programs,

including "coding" and information about the "file structure" of a website (Doc. 49 at 14), are within the subject matter of the Copyright Act. *See Johnson Controls, Inc.,* 886 F.2d at 1175. Thus, the Court concludes that the aspects of the Platform, as described in Plaintiff's motion for summary judgment (Doc. 43 at 15), and its reply (Doc. 49 at 14), are within the subject matter of copyright.

### 2.  Extra Element Not Included in Copyright Claim

Plaintiff does not address the second part of the Ninth Circuit's two-part test for preemption and, therefore, does not explain how its state law unfair competition claim includes an "extra element" that is not included in its copyright infringement claim. (Doc. 43 at 15-16); *see Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (discussing the equivalent rights part of the preemption test). As alleged in the FAC, Plaintiff's unfair competition claim, including allegations of misappropriation, incorporates and relies on the same allegations as its copyright claims. (Doc. 39 at ¶ 41 (incorporat[ing] by reference all the allegations set forth in 1-40 as if fully set forth herein.").)  Thus, "plaintiff's unfair competition claim is . . . preempted because by incorporating the copyright claims by reference, the unfair competition claim is based on rights equivalent to those protected by copyright." *See Blue Nile, Inc.,* 478 F. Supp. 2d at 1250 (citing *Litchfield v. Spielberg,* 736 F.2d 1352, 1358 (9th Cir. 1984)).

Furthermore, the gravamen of Plaintiff's claims is that Defendants copied Plaintiff's copyrighted website. Under § 106 of the Copyright Act, the copyright owner has the exclusive right "to reproduce the copyrighted work." 17 U.S.C. § 106. Plaintiff's allegation that Defendants misappropriated Plaintiff's confidential information to gain a competitive edge in the marketplace (Doc. 39 at ¶¶ 32, 44-45) does not change the underlying nature of the action. *See Blue Nile, Inc.*, 478 F. Supp. 2d at 1250 (citations omitted); *see also Act Group, Inc*, 2012 WL 2976724 at *8 (explaining that claim for misappropriation of information did not contain extra element changing its nature to something qualitatively different from a copyright claim, and noting that claims that courts have found not pre-empted, such as trade secret, negligent misrepresentation, or

breach of contract, include an extra element).  "The underlying nature of Plaintiff's unfair competition claim 'is part and parcel of a copyright claim.'"  *Blue Nile, Inc.*, 478 F. .Supp. 2d at 1250 (quoting *Laws,* 448 F.3d at 1144).)  Thus, Plaintiff has not shown that its allegations that Defendants copied its Platform are based on rights that are not equivalent to those protected by federal copyright law.

Therefore, the Court concludes that both parts of the preemption test are met and that Plaintiff's unfair competition claim based on a theory of misappropriation is preempted by the Copyright Act.  The Court denies Plaintiff's motion for summary judgment on the misappropriation claim included in its unfair competition claim (Count Two), and grants Defendants' motion for summary judgment on that claim.

## V.   Count Three — Integrity of Copyright Management Information

Count Three of the FAC alleges that Defendants violated the Digital Millennium Copyright Act (DMCA).  (Doc. 39 at ¶¶ 20, 48-50.)  Specifically, Plaintiff brings two sub-causes of action under 17 U.S.C. §§ 1202(a) and (b).  Under § 1202(a), Plaintiff asserts a falsification claim, which requires Plaintiff to establish that Defendants "knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . . provide[d] copyright management information that is false."  *See* 17 U.S.C. § 1202(a).  Under § 1202(b), Plaintiff asserts a removal claim, which requires Plaintiff to establish that Defendants "intentionally remove[d] or alter[ed] any copyright management information" with the intent to conceal Defendants' infringing conduct.  *See* 17 U.S.C. § 1202(b).

The DMCA defines "copyright management information" (CMI), with a list including, but not limited to: (1) the title or other information identifying the work, (2) the name of or other information identifying the author of the work, and (3) the name of, and other identifying information, about the copyright owner of the work.  17 U.S.C.

§ 1202(c).   Plaintiff and Defendants seek summary judgment on Plaintiff's DMCA claim.[15]  (Docs. 43, 45.)

## A.   Section 1202(b) Removal Claim

To state a claim for removal of CMI under 17 U.S.C. § 1202(b), a plaintiff must allege that a defendant: (1) without authority of the copyright owner or the law; (2) intentionally removed or altered CMI; (3) knowing or having reasonable grounds to know that the removal would induce, enable, facilitate, or conceal an infringement of the federal copyright laws.[16]  17 U.S.C. § 1202(b)(1).  Information constitutes CMI if, among other criteria, it includes "(1) [t]he title or other information identifying the work, including the information set forth on a notice of copyright, (2) [t]he name of, and other identifying information about, the author of the work, [or] (3) [t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in the notice of copyright."  17 U.S.C. § 1202(c).

Plaintiff alleges Defendants violated § 1202(b) by removing "from the webpage" the following CMI: "Copyright 2015 Pool and Spa Parts Now."   (Doc. 39 at ¶ 19; Doc. 43 at 13.)  Defendants claim that they did not remove Plaintiff's CMI because they copied Kesler's licensed version of the website that did not include Plaintiff's CMI.[17]  (Doc. 45 at 14.); *see* 17 U.S.C. § 1202(b)(2).  The parties agree that "Defendants copied

---

[15]  In their motion, Defendants argue, among other things, that they are entitled to summary judgment because Plaintiff "never sought the benefit of 17 U.S.C. § 1202." (Doc. 45 at 15.)  Defendants do not clearly articulate this argument and do not cite any legal authority indicating that a plaintiff must "seek the benefit" of § 1202 to state a claim under that section.   (*Id.* at 15-16.)   The Court, therefore, does not consider this unsupported argument.

[16]  Defendants suggest that distribution is a necessary element of Plaintiff's § 1202 claims.   (Doc. 47 at 9.)   Distribution may violate §§ 1202(a)(2) or 1202(b)(2) and (3).  Plaintiff, however, does not allege that Defendants violated those subsections.  (Doc. 39 at ¶¶ 48-51.)  The Court, therefore, does not consider Defendants' distribution arguments.

[17]  Defendants assert that the Kesler website contained information listing as user/licensee "Mark Kesler d/b/a All Pool and Spa Parts," which Defendants claim is excluded from the definition of CMI.   (Doc. 45 at 15 (citing 17 U.S.C. § 1202).)  However, Defendants also assert that the Kesler website included a "copyright notice" stating "Copyright 2014 All Pool and Spa Parts."   (Doc. 46 at ¶ 28.)   Thus, the Court rejects Defendants' assertion that the Kesler website did not include any CMI.

the Platform from Kesler's website" and then created a derivative website.  (Doc. 51 at 8; *see also* Doc. 45 at 14; Doc. 46 at ¶ 27; Doc. 46, Ex. A at 74-75; Doc. 51 at 8.)  Kesler's website included the following statement: "Copyright 2014 All Pool and Spa Parts." (Doc. 46 at ¶ 28; Doc. 46, Ex. E at 5.)  Defendants argue that "Copyright 2014 All Pool and Spa Parts" was not Plaintiff's CMI, which Plaintiff identified as "Copyright 2015 Pool and Spa Parts Now" in the FAC.  (Doc. 39 at ¶ 19.)  The record reflects that Defendants did not remove that particular CMI.  (Doc. 46, Ex. 6.)  Rather, the information that was removed from Kesler's version of the website was "Copyright 2014 All Pool and Spa Parts."  (*Id.*)

Defendants argue that, whether this information is attributed to Plaintiff or Kesler, it is not CMI because it does not identify the title, author, or owner of the work.  (Doc. 54 at 8 and 10, n.5 (stating that "the issue is that Kesler's copyright notice does not contain [CMI] regardless of whether Plaintiff's Platform was on Kesler's website.")  Courts in the Ninth Circuit recognize that § 1202(b) removal claims do not require "literal removal from the plaintiff's original work." *Tierny v. Moschino S.P.A.*, 2016 WL 4942033, at *4 (C.D. Cal. Jan. 13, 2016).  Rather, § 1202(c) defines CMI as information "conveyed in connection with copies" of a work.[18]  17 U.S.C. § 1202(c).  Thus, if Defendants removed Plaintiff's CMI from Kesler's licensed version of Plaintiff's website, without Plaintiff's authorization, they violated § 1202(b).

Plaintiff alleges that it is the owner of the copyrighted material on Kesler's licensed version of the website.   (Doc. 48 at 14; Doc. 49 at 12.)   However, the information on that website, "Copyright 2014 All Pool and Spa Parts," which the parties refer to as a copyright notice,[19] does not identify Plaintiff as the copyright owner or the

---

[18]  Additionally, the parties agree that Plaintiff created and controlled the copyright notice on Kesler's website.  (Doc. 54 at 10, n.5.)

[19]  Title 17 U.S.C. § 401(b) provides that a copyright notice shall consist of three elements (1) "the symbol © . . . or the word 'Copyright', or the abbreviation 'Copr.'; and (2) the year of first publication of the work . . . ; and (3) the name of the owner of copyright in the work, or an abbreviation by which the name can be recognized, or a generally know alternative designation of the owner."

author of the work.  (Doc. 46 at ¶ 28; Doc. 46, Ex. E at 5.)  In correspondence with the copyright office, Plaintiff's counsel explained that Plaintiff's standard practice was to create "a series of fictitious names" for the copyright notices on its licensed websites.[20] (Doc. 55 at ¶ 27; Doc. 53, Ex. E.)  Thus, the copyright notice on Kesler's licensed website includes "a fictitious name," not the name of the owner or author of the work. (Doc. 53, Ex. E.)  Additionally, that information does not identify the title of the work at issue, which Plaintiff has identified as content on its website, www.poolandspapartsnow.com.  (Doc. 50, Exs. 1, 9.)

Therefore, the Court finds that the copyright notice on Kesler's version of the website is not Plaintiff's CMI, under the criteria of the DMCA.  *See* 17 U.S.C. § 1202(c). Thus, Defendants' removal of the copyright notice "Copyright 2014 All Pool and Spa Parts" from Kesler's website did not result in the removal of Plaintiff's CMI.  Therefore, the Court grants Defendants' motion for summary judgment on Plaintiff's § 1202(b) removal claim, and denies Plaintiff's motion for summary judgment on that claim.

## B.    Section 1202(a) Falsification Claim

Section 1202(a) is violated if a person "knowingly and with the intent to induce, enable, facilitate, or conceal infringement — (1) provide[s] copyright management

---

[20] In an email to the copyright office, Plaintiff explained that

> As non-lawyers, the Hagens did not recognize the fact that the copyright notice should have contained SPSO's name instead of what amounts to a fictitious name.  Every time SPSO sold an instance of its Platform, it would assign the new licensee a Domain Name that it owned and hosted on its Platform.  It adopted the same convention with respect to the copyright notice that it had used for the Demo Site (i.e. the copyright notice contained the new Domain Name instead of SPSO's name). . . .

> SPSO hosted the sites of all its licensees and also owned all of the Domain Names that were assigned to same.  So as a practical matter, SPSO created a series of fictitious names adding a new one every time a license was sold.  Although this may not have been technically correct with respect to the copyright notice, the U.S. abandoned technical requirements with the Berne Convention Implementation Act of 1988.

(Doc. 53, Ex. E.)

information that is false, or (2) distribute[s] or import for distribution copyright management information that is false."   17 U.S.C. § 1202(a).   Plaintiff argues that Defendants violated § 1202(a)(1) by placing false CMI, their copyright notice "Copyright 2015 We Fix Ugly Pools," on their derivative website, allpoolsupplies.com.   (Doc. 39 ¶ 20; Doc. 43 at 14; Doc. 49 at 12.)   Defendants do not dispute that they placed the copyright notice "Copyright 2015 We Fix Ugly Pools" on their website.   (Doc. 54 at 10.) However, they argue that they were authorized to create a derivative website and that the CMI they placed on their website was not false because they added new, copyrightable, creative content to the website.   (*Id.*)   As set forth below, the Court finds that there are disputed issues of fact regarding the first element of Plaintiff's falsification claim ▬ Defendants' intent in placing their copyright notice on their website ▬ and, therefore, summary judgment is precluded.

To support its CMI falsification claim, Plaintiff asserts that Kesler's licensed website and Defendants' unauthorized derivative site contained the same photographs, which Plaintiff asserts are its copyrighted photographs.[21]   (Doc. 50 at ¶ 30; Doc. 52 at ¶ 29.)   Plaintiff asserts that Defendants knew they did not have a copyright for the content they posted on allpoolsupplies.com, and knew that the "photos and other content originated with Plaintiff."   (Doc. 51 at 10.)   Plaintiff further argues that Defendants "admit" that they never reviewed Kesler's licensing agreement with SPSO for the Platform, and they did not "bother[] to read the license" that purportedly authorized them to copy the Platform, through Kesler's website.   (Doc. 43 at 3.)   Thus, Plaintiff argues that any defense to its copyright infringement claim based on Defendants' relationship with Kesler must fail.   (*Id.* at 4, 7-9.)

Plaintiff's apparently rely on this argument, that its licensing agreement with Kesler did not authorize Defendants to copy Kesler's website or create a derivative work, to argue that Defendants acted intentionally when they placed their copyright notice on

---

[21]   Under the Copyright Act, a copyright owner has exclusive rights to authorize or prepare derivative works based upon their copyrighted work.  17 U.S.C. § 106(2).

their derivative website in an effort to disguise their "brazen theft" of Plaintiff's copyrighted work.  (*Id.*; *see also* Doc. 43 at 10 (Plaintiff argues that Defendants intended to reproduce and distribute SPSO's Platform without the latter's consent and, therefore, the Court can "infer" that for Defendants' "theft to be complete," they had to "mangle" SPSO's CMI); Doc. 49 at 13 (Plaintiff argues that Defendants knew that using their copyright notice would conceal that the "content actually belonged to someone else.").)  Therefore, Plaintiff argues that Defendants acted with the intent to provide false CMI.

In contrast, Defendants argue that they were authorized to create a derivative website from the SPSO website licensed to Kesler, who was also their business partner. (Doc. 45 at 14.)  Defendants argue that the CMI they added to their derivative website was not false because they added new creative content to that website, including heading pictures for the home page, and blog entries.  (Doc. 54 at 10.)  Defendants argue that because their website was derivative and they created some of the content on that website, they had a copyright in the work they created and, therefore, the CMI is not false because it identifies Defendants as author of the content.[22]  Defendants argue that creators of a derivative work may add their own copyright notice but are "not required by law" to add a copyright notice about the creator of the original material upon which the derivative work was based.  (*Id.* (citing Doc. 53, Ex. EE, United States Copyright Office Circular 41 (reviewed 10/2013), *Copyright in Derivative Works and Compilations*).)

Plaintiff and Defendants refer to Defendants' website as derivative.  (*See* Doc. 43 at 13-14; Doc. 49 at 12; Doc. 51 at 8-9.)  Plaintiff argues that Defendants' derivative website was not authorized and infringed Plaintiff's copyrighted material.  *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012) ("if a third party uses preexisting work in violation of the Copyright Act, . . . , the resulting derivative work is not entitled to copyright protection. . . . . [A] derivative author may

---

[22]  Defendants are identified in this action as Ugly Pools Arizona, Inc., and Brian Morris.  The purported CMI on the Defendants' website is "Copyright 2015 We Fix Ugly Pools."  (Doc. 39, Ex. F.)  Neither Plaintiff nor Defendants argue that this difference renders the CMI false or has any significance for purposes of § 1202(a).

own the copyright in material the author contributed to a preexisting work, but not in infringing material or material the author did not create.")  Defendants argue that they were authorized to create a derivative website and to copyright the work they created on the website.  *See id.* (a derivative work may be independently copyrightable); *see also*, *Faulkner Press, LLC v. Class Notes, Inc.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) (concluding that defendant did not add false CMI to product packages because the defendants' product was different from the plaintiff's product even if it included materials from the plaintiff's work).

The parties' arguments present disputed issues of fact regarding Defendants' intent in placing a copyright notice on its website and whether Defendants believed they were authorized to do so.  Because the Court determined that it must apply the referral process of 17 U.S.C. § 411(b), it did not reach Plaintiff's arguments about the scope of its licensing agreement with Kesler in the context of the parties' cross motions for summary judgment on Plaintiff's copyright infringement claim.  However, even if Plaintiff were to prevail on its argument that as a matter of law Defendants cannot rely on the licensing agreement as a defense to the copyright infringement claim, Defendants could still establish that they believed they were authorized to copy Kesler's website, create a derivative site, and place their copyright notice on that site and, thus, defeat Plaintiff's § 1202(a) falsification claim for lack of intent.  The issue of Defendants' intent presents a credibility issue that may depend on resolving disputes in Kesler's and Morris's testimony.[23]   Therefore, the Court denies Plaintiff's and Defendants' motions for summary judgment on Plaintiff's  17 U.S.C. § 1202(a) falsification claim.

**VI.    Conclusion**

For the reasons set forth in this order, the Court grants the motions for summary judgment in part and denies them in part, as set forth below.  The Court also denies

---

[23]   *See* PSSOF ¶ 33, Exs. 2-3 (Defendants assert that they copied Kesler's website with his consent, but Kesler denied granting consent for Defendants to make a live copy of his site) (Kesler's and Morris's depositions); DCSSOF ¶ 33, Ex. A (Kesler gave Morris full authority to improve the Kesler site and was aware of Defendants' test site) (Kesler Deposition).

1  Defendants' motion for an order directing Plaintiff to cancel or amend its copyright

2  registration.

3          Accordingly,

4          **IT IS ORDERED** that Plaintiff's and Defendants' motions for summary judgment

5  (Docs. 43 and 45) on Plaintiff's copyright infringement claim, asserted in Count One, are

6  **DENIED** without prejudice.

7          **IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment

8  (Doc. 43) on Count Two (unfair competition) and Count Three (violation of DMCA) is

9  **DENIED**.

10         **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment

11 (Doc. 45) on Count Two (unfair competition) is **GRANTED**.

12         **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment

13 (Doc. 45) on Plaintiff's removal claim under 17 U.S.C. § 1202(b), asserted in Count

14 Three, is **GRANTED,** and that Plaintiff's and Defendants' motions for summary

15 judgment (Docs. 43, 45) on Plaintiff's falsification claim under 17 U.S.C. § 1202(a),

16 asserted in Count Three, are **DENIED**.

17         **IT IS FURTHER ORDERED** that within **fourteen days** of this Order, Plaintiff

18 and Defendants may submit to the Court three proposed questions each for the Court to

19 present to the Register of Copyrights consistent with the Court's discussion in Section

20 III.D of this Order.

21         **IT IS FURTHER ORDERED** that Defendants' motion for on order directing

22 Plaintiff to cancel or amend its copyright registration (Doc. 53) is **DENIED**.

23         Dated this 9th day of June, 2017.

24

25

26

27                                                    Bridget S. Bade
                                               United States Magistrate Judge
28