# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SellPoolSuppliesOnline.com, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Ugly Pools Arizona Incorporated, et al.<br><br>　　　　　　Defendants. | No. CV-15-01856-PHX-BSB<br><br>**RESPONSE OF THE ACTING REGISTER OF COPYRIGHTS TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)** |

On June 27, 2017, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Acting Register of Copyrights (the "Acting Register")[1] on the following question (the "Request"):

> If the Register of Copyrights had known that the Deposit underlying Registration Number TX 8-268-803 does not depict the content that existed on the SPSO website www.poolsandspaparts.now on July 3, 2014, which is the date of publication identified on the certificate of registration, but instead depicts a version of the website that includes copyrightable content that was added to the website at a later date, would the Register of Copyrights have refused to issue a registration with a July 3, 2014 publication date?[2]

The Court originally gave the Acting Register thirty days from the date of the Request to respond, but because the Office did not receive word of the Request until August 4, 2017,[3] the Court granted an extension of time until September 5, 2017.[4] The Acting Register hereby submits her response.

## BACKGROUND

### I. Examination History

A review of the Copyright Office's records shows the following:

On September 13, 2015, the Office received an application to register the "text, photographs and computer program" for a website titled "SPSO Website www.poolandsparpartsnow.com." The

---

[1] The Librarian of Congress appointed Karyn Temple Claggett to the position of Acting Register of Copyrights on October 21, 2016. *See* Copyright.gov, About Us, https://www.copyright.gov/about/leadership/ (last visited August 26, 2017).

[2] Request at 1. The Request also refers the Acting Register to a June 9, 2017 Order for "relevant background information." Request at 1.

[3] *See* U.S. Register of Copyrights Mot. to Extend Deadline to Comply with this Court's June 27, 2017 Order, 2 (Aug. 4, 2017).

[4] Order at 1 (Aug. 7, 2017).

application originally identified SELLPOOLSUPPLIESONLINE.COM, LLC, as the author and claimant of the website. The application originally stated that the website was created in 2015, and gave August 26, 2015 as the date of first publication. But following receipt of the original application and prior to registration, the Office had several follow up questions regarding the authorship, ownership, year of completion, date of first publication, and the scope of the claim, and as such corresponded with the applicant on numerous occasions to clarify several discrepancies between the application and deposit materials, as well as statements made during the course of correspondence:

The Office wrote to Plaintiff to clarify "who created the content contained on the website that is part of the claim" and to ask for the name of the copyright claimant and, if different from the author, "a transfer statement that explains how the claimant came to be the copyright owner."[5] After some back and forth, Plaintiff replied that Aaron and David Hagen were the authors of the work, and that they transferred their ownership in the work to SellPoolSuppliesOnline.com.[6]

The Office then wrote to Plaintiff to clarify the scope of the copyright claim, *i.e.*, "whether either of the authors actually created the computer program code that formats the website,"[7] and again to ask whether, given the original date of publication of August 26, 2015, the code or photographs were "from earlier versions of the website."[8] The Office explained that if the deposit contained material that existed in an earlier version of the website, "they must be excluded from this claim since the extent of claim for a revised, or derivative, work is based only on the new and revised material contained in the later version of the work."[9] Plaintiff confirmed that the authors created the photographs as well as "the code . . . that allows the photos to rotate 360 degrees so that a potential buyer can see the part from all sides."[10] Plaintiff also responded that the deposit "may have been from an earlier version of the website BUT we need special dispensation because this is the first time registration of the website and no copy (i.e. mirror or backup) or a prior website exists."[11]

The Office informed Plaintiff that its request for "special dispensation" was denied and that the Office could "only register the website as it appeared on the date on which it was printed."[12]

---

[5] Email from Janet E. Alger, Registration Specialist, to Carlos Levya, Esq. (Sept. 20, 2016).

[6] Email from Carlos Levya, Esq., to Janet E. Alger (Oct. 4, 2016).

[7] Email from Janet E. Alger, to Carlos Levya, Esq. (Oct. 5, 2016).

[8] Email from Janet E. Alger, to Carlos Levya, Esq. (Oct. 6, 2016).

[9] Email from Janet E. Alger, to Carlos Levya, Esq. (Oct. 6, 2016).

[10] Email from Carlos Levya, Esq., to Janet E. Alger (Oct. 6, 2016 07:37:21).

[11] Email from Carlos Levya, Esq., to Janet E. Alger (Oct. 6, 2016 08:58:56).

[12] Email from Janet E. Alger, to Carlos Levya, Esq. (Oct. 14, 2016). The principles that govern how the Office examines registration applications are found in the *Compendium of U.S. Copyright Office Practices, Third Edition*, which is "an administrative manual" that "explains many of the practices and procedures concerning the Office's mandate and statutory duties under title 17 of the United States Code." 37 C.F.R. § 201.2(b)(7). The Compendium explains that if a website contains an appreciable amount of material published before the date of publication provided on a registration application, that material must be excluded from the claim. *See* COMPENDIUM (THIRD) §§ 1008.2 ("If the deposit contains an appreciable amount of previously published . . . material, the applicant must expressly exclude that material from the claim."); 621.4 ("If the work described in the application contains an

Plaintiff then asked why its request for special dispensation had been denied,[13] but before the Office responded, Plaintiff submitted an affidavit from one of its co-founders, Aaron Hagen, giving, *inter alia*, a new year of completion (2014), a new date of first publication (July 3, 2014), and swearing that "[t]he sample of the [deposit] provided to the United States Copyright Office with [Plaintiff's] [c]opyright application in 2015 is the same as the website first appeared when published on July 3, 2014."[14]

The Office informed Plaintiff that it had updated the original application per the affidavit and asked Plaintiff to confirm the details one last time.[15] Regarding the deposit material, the Office noted that if Plaintiff wanted to register a claim in HTML, it would have to provide additional deposit material. Also regarding a copyright notice that appeared on the deposit and the year of completion and date of first publication in the affidavit, the Office wrote:

> The signed affidavit that you provided states that the website was completed on June 25, 2014 and published on July 3, 2014. The original application lists the Year of Completion as 2015 and the date of first publication as August [2]6, 2015. Please confirm that we should update the information on your original application with that which is provided in the affidavit. Please do note that the copyright notice on the bottom of each webpage submitted as deposit material bears the year 2015.[16]

Plaintiff responded affirmatively, stating, *inter alia*, that the original application "should be updated as per the affidavit"[17] and later, on November 21, 2016, to remove "computer code" from the scope of the copyright claim.[18]

Following that correspondence with the applicant, the Office registered a claim in "text, photographs" with a year of completion date of 2014, and a date of first publication of July 3, 2014 for a website with an effective date of registration ("EDR")[19] of September 16, 2015, and assigned registration number TX 8-268-803. Based on the information provided in the application and subsequent correspondence with the applicant, including the affidavit, the Office

---

appreciable amount of copyrightable material that has been previously published, the previously published material should be excluded from the claim."). There is no procedure that would allow the Office to waive the disclaimer requirements set forth in COMPENDIUM (THIRD) §§ 621.4 and 1008.2.

[13] Email from Carlos Levya, Esq., to Janet E. Alger (Oct. 14, 2016).

[14] Aaron Hagen Aff. 2 (Nov. 14, 2016).

[15] Email from Heather Domencic, Literary Division Supervisor, to Carlos Levya, Esq. (Nov. 17, 2016).

[16] Email from Heather Domencic, to Carlos Levya, Esq. (Nov. 17, 2016).

[17] Email from Carlos Levya, Esq., to Heather Domencic (Nov. 17, 2016).

[18] Email from Carlos Levya, Esq., to Heather Domencic (Nov. 21, 2016).

[19] The EDR is the date that the Office received a completed application, the correct deposit copy, and the proper filing fee.

had no further reason to question the applicant's representations, and accepted them as true and accurate.[20]

## II. The Court's Order

In the Order accompanying the Request, the Court found "[i]t is undisputed that the Deposit material did not match the material claimed in the application" because "[t]he application was to register content . . . on the website as of the date of publication specified during the registration process, July 3, 2014, but Plaintiff deposited the content that appeared on the website on a later date."[21] The Court also stated that "Plaintiff does not argue that it unknowingly provided false information to the [C]opyright [O]ffice" but "[i]instead, Plaintiff argues that its inclusion of additional material in the Deposit is 'of no moment.'"[22]

The Court requests the Acting Register to consider whether, given this information, the Office would have refused to register the claim.

## ANALYSIS

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410. Regulations governing applications for registration are codified in title 37 of the Code of Federal Regulations at 37 C.F.R. §§ 202.1 to 202.21(2016). The principles that govern how the Office examines registration applications are found in the *Compendium of U.S. Copyright Office Practices, Third Edition ("Compendium")*. The statutory requirements, regulations, and *Compendium* practices most relevant to the Court's request are as follows:

### I.     Relevant Statutes, Regulations and, Agency Practices

#### A. Year of completion

Under the Copyright Act, an application must include "the year in which creation of the work was completed."[23] For website registrations, "[t]he applicant should only provide a year of completion for the specific version that will be submitted for registration."[24]

#### B. Date of first publication

In pertinent part, the Copyright Act defines "publication" as

---

[20] The Office generally "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records." COMPENDIUM (THIRD) § 602.4(D). Additionally, "the Office does not conduct investigations or make findings of fact to confirm the truth of any statement made in an application." *Id.*
[21] Order at 24 (June 9, 2017) (describing that new material as "new product photographs and a new webpage.").
[22] Order at 24 (citation omitted) (June 9, 2017). From this statement, the Office assumes, for the purposes of providing this response, that the court found that "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A)
[23] 17 U.S.C. § 409(7).
[24] COMPENDIUM (THIRD) § 1009.3.

> [T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.[25]

As the Compendium explains, under the first sentence of this definition (the "distribution" prong), "publication occurs when one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work."[26]

An application to register a published work must include "the date and nation of its first publication."[27] For website registrations, "the applicant should only provide a date of first publication for the specific version that will be submitted for registration."[28] For registration of websites that have been revised subsequent to the date of first publication, the application should include "the month, day, and year that the revised content was first posted on that site."[29]

### C. Derivative authorship for websites

The Copyright Act defines a derivative work as "a work based upon one or more preexisting works . . . any [] form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as whole, represent an original work of authorship, is a 'derivative work.'"[30] Once a website "contains a sufficient amount of new, copyrightable authorship" different from a previous version of that website, that new copyrightable authorship constitutes a derivative work and should be registered as a work separate from any previous version.[31]

### D. Deposit requirements for websites

An accurate deposit is a required element of copyright registration. For works published after January 1, 1978, two copies of the best edition of the work are required.[32] Deposit material for a website must contain "the copyrightable content that is claimed in the application,"[33] and "the deposit should contain a copy of the content as it existed on the date of publication that is specified in the application."[34]

---

[25] 17 U.S.C. § 101 (definition of "publication").

[26] COMPENDIUM (THIRD) § 1905.1; see also H.R. REP. NO. 94-1476, at 138 (1976).

[27] 17 U.S.C. § 409(8).

[28] COMPENDIUM (THIRD) § 1009.4(A).

[29] COMPENDIUM (THIRD) § 1009.4(A)(2).

[30] 17 U.S.C. § 101 (definition of "derivative work").

[31] COMPENDIUM (THIRD) § 1008.5.

[32] 37 CFR § 202.20(c)(1)(iii). The term "best edition" means "the edition, published in the United States at any time before the date of deposit, that the Library of Congress determines to be most suitable for its purposes." 17 U.S.C. § 101; 37 C.F.R. §§ 202.19(b)(1), 202.20(b)(1).

[33] COMPENDIUM (THIRD) § 1010.1.

[34] COMPENDIUM (THIRD) § 1008.6(A).

To register material from the initial version of a published website, "the applicant must deposit an acceptable copy . . . of the specific version that the applicant intends to register and the applicant must provide the correct date of first publication for that version."[35] The word "acceptable" here means that the copy must contain the complete content of the website as it existed on the date of publication specified in the application. The deposit for an application to register "the initial version of a published website . . . should [include] the relevant webpages as they existed on the date that the initial version was first published."[36] To register material from a later version of a published website, "the applicant should submit the relevant webpages as they existed on the date that the subsequent version was first published."[37]

*E. Errors on registration applications*

The Copyright Office's regulations require applicants to make "[a] declaration that information provided within the application is correct to the best of [the applicant's] knowledge."[38] Generally, the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records."[39]

It is not unusual for the examiner to correspond with an applicant about factual assertions if the assertions appear to conflict with other information provided in the application materials.[40] Accordingly, if the Office becomes aware of an error at the time of application, such as whether the work was published, or has questions about facts asserted in the application, it provides the applicant an opportunity to correct the error or verify the facts within a specified period of time.[41] If the applicant responds in a timely fashion to the satisfaction of the Office, the Office can proceed with the registration.[42]

---

[35] COMPENDIUM (THIRD) § 1010.5.

[36] COMPENDIUM (THIRD) 1010.6(A).

[37] COMPENDIUM (THIRD) § 1010.6(B). Use of the word "should" in both instances acknowledges the possibility that applicants may request special relief from the deposit requirements for an earlier-published version of the website, if they are unable to submit a website as it existed at that time. Under the special relief mechanism, applicants who are unable to satisfy the deposit requirements for whatever reason may ask the Office to make an exception, thereby allowing them to provide an alternative deposit. *See* 37 C.F.R. 202.20(d)(1); COMPENDIUM (THIRD) § 1508.8(A); *see also* COMPENDIUM (THIRD) § 1010.5 (describing special relief for websites).

[38] 37 C.F.R. § 202.3(c)(2)(iii).

[39] COMPENDIUM (THIRD) §§ 602.4(D), 612.3 ("As a general rule, the Office will accept the applicant's representation that the work is published or unpublished, unless that statement is implausible or is contradicted by information provided elsewhere in the registration materials.").

[40] COMPENDIUM (THIRD) § 602.4(D).

[41] Generally, an applicant has 20 calendar days to respond via email, and 45 calendar days to respond via U.S. mail to questions concerning issues in the application materials. *See* COMPENDIUM (THIRD) §§ 605.6(B), 605.6(D).

[42] Additionally, where the Office later becomes aware of material errors in a registration, it has within its discretion the right to initiate procedures to cancel that registration. *See* 37 C.F.R. § 201.7(c)(1). In such instances the Office will give notice that a registration may be cancelled unless the applicant can "show cause in writing why the cancellation should not be made." 37 C.F.R. § 201.7(c)(1). The Office can cancel a registration if, for example, "information essential to registration has been omitted entirely from the application or is questionable, or correct deposit material has not been deposited." 37 C.F.R. § 201.7(c)(4). *See also* COMPENDIUM (THIRD) § 1806.

In responding to the Court's question, the Office applies the foregoing governing statutory and regulatory standards, and examining principles.

### II.     Acting Register's Assessment of the Alleged Inaccuracy's Materiality

Based on the foregoing governing statutory and regulatory standards, and its examining practices, had the Office been aware, prior to registration, that Plaintiff knowingly provided deposit material that did not depict the website's content as published on July 3, 2014, but instead provided a later version of the website that included new copyrightable material, the Acting Register would have refused registration because the later version of the work would not represent the work as published on July 3, 2014. Through correspondence, the Acting Register would have demanded a copy of the deposit as published on July 3, 2014, or she would have asked Plaintiff to limit its claim to the material published on August 26, 2015, and to revert back to the 2015 year of completion, and the August 26, 2015 date of publication, from the original application. Had Plaintiff refused to provide a copy of the work as published on July 3, 2014, or refused to limit the claim and revert back to the August 26, 2015 date of first publication and 2015 year of completion, the Acting Register would have refused registration.[43]

Dated: September 5, 2017

Karyn Temple Claggett
Acting Register of Copyrights

---

[43] The Acting Register assumes, based on the language of the Request, that the additional content added to the website after July 3, 2014, was copyrightable. If the Plaintiff had asserted during the examination process that the material added to the website after July 3, 2014 was not sufficiently creative to render the later website a derivative work, the Office would have inquired about the changes to assess for itself the creativity of the additions. The Office had no opportunity to do so in this instance, however, because Plaintiff filed an affidavit asserting that *no* changes were made to the website after July 3, 2014 and the date of the deposit.





**United States Copyright Office**
Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov

September 5, 2017

The Clerk of the Court
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street
Phoenix AZ 85003-2120

Dear Clerk of the Court,

Attached is the Acting Register of Copyrights' response to the Court's question regarding the validity of registration number TX 8-268-803 in *SellPoolSuppliesOnline.com, LLC, v. Ugly Pools Arizona Inc.*, No. CV-15-01856-PHX-BSB.

Sincerely,

Abioye Ella Mosheim
Attorney Advisor
U.S. Copyright Office,
Office of the General Counsel
P.O. Box 70400
Washington DC 20024
E: abmo@loc.gov
P: 202-707-8396