1
2
3
4

Jason M. Venditti (#022073)
**PETRIE & VENDITTI, PLC**
20860 N. Tatum Blvd. Suite 300
Phoenix, Arizona 85050
Ph: (480) 771-3986
Fax: (480) 771-7101
Email:  jvenditti@pvlawgroup.com

5

Attorneys for Defendants Ugly Pools Arizona, Inc. and Brian Morris

6

**THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9

10

11

12

13

14

15

| SELLPOOLSUPPLIESONLINE.COM, LLC, an Arizona limited liability company,<br><br>                        Plaintiff,<br><br>vs.<br><br><br>UGLY POOLS ARIZONA, INC. an Arizona corporation; and BRIAN MORRIS, an individual,<br><br>                        Defendants. | No.  CV-15-01856-PHX-BSB<br><br><br>**DEFENDANTS' 2ND MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S COPYRIGHT CLAIM** |
| --- | --- |

16

17

18

        Pursuant to the Court's September 7, 2017 Order (Doc. 73), Defendants hereby submit their second Motion for Summary Judgment on the copyright claim asserted by Plaintiff in its Amended Complaint.  (Doc. 39 at ¶¶ 26-31).

19

20

21

        Plaintiff's copyright claim should be dismissed because the registration precondition has not been met.  Even if it somehow has been met, the resulting registration is limited to copyright material that Defendants have not infringed.

22

23

## I.   BACKGROUND

Plaintiff's copyright registration application was based on an online work, the SPSO website www.poolandspapartsnow.com, and the Deposit was a "copy" of that website. DSSOF ¶ 30.   In its September 2015 copyright application, Plaintiff described its claim as "text, photograph(s), [and] computer program." DSSOF ¶ 31. The copyright application identified the date of first publication as August 26, 2015. DSSOF ¶ 32.

On October 6, 2016, the copyright office asked Plaintiff "[s]ince this application is to register the website as it appeared (published) on 8/26/2015, was any of the computer code or were any of the photographs from an earlier version of the website?" DSSOF ¶ 33. The copyright office explained that any photographs or code that appeared in earlier website versions "must be excluded from this claim since the extent of claim for a revised, or derivative, work is based only on the new and revised material contained in the later version of the work." DSSOF ¶ 33.   Plaintiff's counsel responded that some of the Deposit's content "may have been from an earlier version of the website BUT we need special dispensation because this is the first time registration of the website and no copy (i.e., mirror or backup) of the prior website exists." DSSOF ¶ 34.

On October 14, 2016, the copyright office denied Plaintiff's request for an exception. DSSOF ¶ 35. The copyright office stated that "[w]e can only register the website as it appeared on the date on which it was printed, not for any past or future versions." DSSOF ¶ 35. The copyright office also stated "if any of the content of the website ever appeared online or in any other form previous to the version submitted, please authorize me to exclude all of the preexisting material and to limit the claim to the new and revised material in this version of

the website."  DSSOF ¶ 35.  In response, Plaintiff's counsel inquired "[o]n what grounds is special dispensation denied? Websites aren't copyrighted usually until they are mature. Therefore, this policy excludes almost every conceivable website that is nontrivial from being copyrighted." DSSOF ¶ 36.

On November 9, 2016, while Plaintiff's copyright application was pending, Defendants filed a motion for summary judgment arguing that, based on the information in the copyright application, Plaintiff's copyright for the Work completed and published in 2015 could not be enforced against Defendants who allegedly downloaded a version of the Work on September 16, 2014. DSSOF ¶ 37.  On November 16, 2016, Plaintiff submitted to the copyright office an affidavit from Aaron Hagen stating that "SPSO first published the Platform on or about July 3, 2014. It was completed on or about June 25, 2014." DSSOF ¶ 38.  The Hagen affidavit further stated that "[t]he sample of the Platform provided to the United States Copyright Office with SPSO's Copyright application in 2015 is the same as the website first appeared when published on July 3, 2014." DSSOF ¶ 39. In an accompanying email, Plaintiff's counsel confirmed that "[t]he Deposit that was submitted correctly represents the copy that was first published on July 3, 2014. Counsel did not have sufficient facts at the time of application." DSSOF ¶ 40.

On November 17, 2016, a supervisor at the copyright office contacted Plaintiff's counsel, stating "[t]he signed affidavit that you provided states that the website was completed on June 25, 2014 and published on July 3, 2014. The original application lists the Year of Completion as 2015 and the date of first publication as August 36 [sic], 2015. Please confirm that we should update the information on your original application with that which is provided

in the [affidavit]. Please do note that the copyright notice on the bottom of each webpage submitted as deposit material bears the year 2015." DSSOF ¶ 41. Plaintiff's counsel responded, "[y]es the information should be updated as per the affidavit." DSSOF ¶ 41.  On November 17, 2016, Plaintiff also informed the copyright office that its copyright claim was for "the photographs and computer code related to the photographs that enabled the latter to present a 360 degree view of the product to a prospective customer. The Hagens also provided text descriptions of the products. That is the extent of the claim." DSSOF ¶ 42.  Plaintiff explained that "[m]uch of the website code is licensed from a third party (i.e. BigCommerce) and SPSO obviously makes no claims with respect to that." DSSOF ¶ 42.

A few days later, Plaintiff advised the copyright office that it was "no longer interested in registering the code . . . ." DSSOF ¶ 43. Plaintiff specified that it was "interested in registering the website as is with the current deposit and the modifications to the application already agreed to." DSSOF ¶ 43.

On November 29, 2016, the copyright office issued a certificate of registration. Doc. 50, Ex. 1. The certificate of registration identifies the work as "SPSO website www.poolandspapartsnow.com," the year of completion as 2014, and the date of first publication as July 3, 2014. DSSOF ¶ 44.  The copyright claim is limited to "text [and] photographs" in the Deposit, which is the SPSO website www.poolandspaparts.now.  DSSOF ¶ 44.

## II.   PLAINTIFF HAS NOT MET THE REGISTRATION PRECONDITION TO ITS COPYRIGHT CLAIM.

To prevail on an infringement action, a copyright holder must prove: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.  *Roberts*

4

*v. Gordy*, 181 F. Supp.3d 997, 1007 (S.D. Fla. 2016) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).    To establish the first element, a plaintiff must demonstrate that they have satisfied the requirements for registration set forth in the federal regulations promulgated by the Register of Copyrights.  *Id.* (quoting *Olander Enters., Inc. v. Spencer Gifts, LLC,* 812 F. Supp.2d 1070, 1075 (C.D. Cal. 2011)).  Copyright registration is a precondition to filing a copyright infringement action.  *Id.* (quoting *A. Printex Indus.*, *Inc. v. Aeropostale, Inc.,* 676 F.3d 841, 852-53 (9th Cir. 2012)).

The registration precondition is not met if

- inaccurate information was included on the application for copyright registration, with the knowledge it was inaccurate, and

- the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 USC § 411(b)(1)(A) and (B).

Plaintiff has not met the registration precondition because the Court and Copyright Office have collectively ruled against Plaintiff for the above elements.  The Court has found that Plaintiff included inaccurate information in its copyright application, namely, Plaintiff's false statement that no additional copyrightable content was added to the submitted website after the claimed July 3, 2014 first publication date. (Doc. 64 at 22-23); DSSOF ¶ 47.    And, the Court has found, and Plaintiff has never denied, that Plaintiff knew the submitted website included copyrightable content added after July 3, 2014. DSSOF ¶ 27. Finally, the Copyright Office confirmed that it would have refused registration of Plaintiff's copyright with a July 3, 2014 publication date if it had known that the submitted website included copyrightable content added after July 3, 2014. DSSOF ¶ 19.   Plaintiff's copyright claim should be

1  dismissed.  *Roberts*, 181 F. Supp.3d at 1014.

2         **A.**       **Plaintiff's Copyright Application Included Inaccurate Information.**

3         Plaintiff's copyright application includes inaccurate information because the July 3,

4  2014 publication date for the Deposit is incorrect.  Deposit material for a website must contain

5  "the copyrightable material that is claimed in the application," and "the deposit should contain

6  a copy of the content as it existed on the date of publication that is specified in the

7  application."  Register of Copyright response, p.6 (quoting Compendium (Third) 1010.1 and

8  1008.6(A)).  (Doc. 72-1 at 6).  For registration of websites that have been revised subsequent

9  to the date of first publication, the application should include the "month, day, and year that

10  the revised content was first posted on that site."  Register of Copyright response, p.6 (quoting

11  Compendium (Third) 1009.4(A)(2)).  (Doc. 72-1 at 6).  Registration of a revised version

12  covers only the new or revised material added.  (Doc. 53, Ex G. p.2).

13         Plaintiff's application violated these regulations because the Deposit submitted to the

14  Copyright Office included copyrightable content added after the claimed July 3, 2014

15  publication date. DSSOF ¶ 1.  The additional content includes photographs of Nemo products

16  added on October 14, 2014, including entire webpages displaying the Nemo products.  DSSOF

17  ¶¶ 1-5.  The additional content also includes a new Contact Us page, updated some time after

18  January 14, 2015.  DSSOF ¶ 6.   Even Plaintiff admits that the website submitted to the

19  Copyright Office included additional copyrightable content added beyond July 3, 2014.

20  DSSOF ¶ 18.

21         **B.**       **The Information Was Included With The Knowledge That It Was Inaccurate.**

22         As the Court notes, Plaintiff has not argued that it unknowingly provided false

23

1    information to the copyright office.[1]   DSSOF ¶ 27.   Plaintiff never claimed, and does not

2    argue even now in its pending Motion for Summary Judgment, that it was unaware of the

3    additional copyrightable material added after July 3, 2014 in the version of the website that

4    was submitted to the Copyright Office.  DSSOF ¶ 28; Doc. 78.

5         The false information that Plaintiff provided to the Copyright Office goes well beyond

6    the type of "clerical error" or "inadvertent mistakes" that might be forgiven under Section

7    411(b).  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017).[2]  Plaintiff

8    is the one who controlled the website, and Plaintiff has never argued that it was a third party

9    who added copyrightable content to the website after July 3, 2014.

10        Moreover, Plaintiff has testified that it knew specific copyrightable content was added

11   past July 3, 2014.  Specifically, Plaintiff testified that it was constantly updating past July 3,

12   2014 the computer code that it claimed as copyrightable content in the application.  Plaintiff's

13   original copyright application included "computer program."  SOF ¶ 31.  Plaintiff informed the

---

15   [1] Any such argument is inconsistent with Plaintiff's request for "special dispensation" because
16   its deposit "may" contain additional content added after the claimed publication date. DSSOF
     ¶ 34.   Plaintiff knew, or *at the very least* suspected, the deposit contained additional content
     (hence the reason for its request for special dispensation), and therefore its ***unequivocal***
17   statement to the USCO that the deposit was the "same" was knowingly false.

18   [2] The "knowledge" requirement in Section 411(b)(1)(A) does not require that Plaintiff knew
     its     application     violated     copyright     regulations.     To     show     Plaintiff
19   "knowingly" provided false information, Defendant does not need to prove that Plaintiff knew
     the act was unlawful. *US v. Davenport*, 515 Fed. Appx. 681 (9th Cir. 2013) (unpublished
20   opinion) (quoting *US v. Greer*, 640 F.3d 1011, 1017 (9th Cir. 2011)).   A mistake of law is not
     a defense against "knowingly" violating a federal civil statute, unless Congress explicitly
21   includes the mistake-of-law defense. *Jerman v. Carlisle, McNellie, Rini, Kramer*, 130 S. Ct.
     1605, 1608-1615 (2010) (giving example of mistake-of-law affirmative defense explicitly
22   included in DMCA statute 17 U.S.C. § 1203(c)(5)(A) that reduces damages where "the
     violator was not aware and had no reason to believe that its acts constituted a violation").

23

1   Copyright Office that its copyright claim included "the photographs and computer code related

2   to the photographs that enabled the latter to present a 360 degree view of the product to a

3   prospective customer."  SOF ¶ 42.

4   Plaintiff testified that the computer code was newer HTML6 code instead of HTML5

5   code.  In a lead-up question to Plaintiff as to why the copyright application had a completion

6   date of 2015, Plaintiff's counsel asked about "flash and something 6 as opposed to version 5,

7   was any of that kind of updating or content updating done prior to the application being filed

8   in 2015?  Plaintiff responded, "Absolutely.  That -- that -- code is embedded on the website

9   that that was copyrighted."  Plaintiff explained in reference to its 360 degree view code that

10  "all of the code being sent to outside servers, it's code that I have to constantly keep

11  maintaining and keeping up[.]" DSSOF ¶ 46.

12  Plaintiff's counsel initially admitted to the Copyright Office that some of the Deposit's

13  content "may have been from an earlier version of the website BUT we need special

14  dispensation because this is the first time registration of the website and no copy (i.e., mirror

15  or backup) of the prior website exists." DSSOF ¶ 34.  Giving Plaintiff the benefit of the doubt,

16  Plaintiff at the very least had awareness that there was a question as to the various dates that

17  content was last added to its website.  And, again giving Plaintiff the benefit of the doubt,

18  Plaintiff did not investigate further the dates that content were added to the website, despite

19  being aware of the potential problem.  Instead, Plaintiff later changed its mind, and submitted

20  an affidavit to the Copyright Office definitively declaring that "[t]he sample of the Platform

21  provided to the United States Copyright Office with SPSO's Copyright application in 2015 is

22  the same as the website first appeared when published on July 3, 2014."  DSSOF ¶ 39.

23

8

Plaintiff had knowledge the affidavit was false because Plaintiff either (1) knew the facts asserted were outright false, or (2) had uncertainty as to the facts, but submitted an affidavit stating the asserted facts with absolute certainty.   Willful blindness that information is incorrect is equal to "knowledge" that it is incorrect. *See Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2069 (2011).  Even defense counsel, who received the false affidavit on December 4, 2016, was able to review Plaintiff's Deposit and by December 9, 2016 send a detailed letter to Plaintiff's counsel explaining multiple reasons why the affidavit was false. (Doc. 53, Ex. U).   DSSOF ¶¶ 9, 45.

**C.     The Inaccuracy, If Known, Would Have Caused The Register Of Copyrights To Refuse Registration.**

The Copyright Office stated that had it been aware, prior to registration, that Plaintiff knowingly provided deposit material that did not depict the website's content as published on July 3, 2014, but instead provided a later version of the website that included new copyrightable material, the Copyright Office would have refused registration.   DSSOF ¶ 19.

The Copyright Office opinion included a caveat – it assumed, based on the language of the Request, that the additional content added to the website after July 3, 2014 was copyrightable.   DSSOF ¶ 19. The Copyright Office's assumption is correct - the additional content includes pictures, which even Plaintiff has acknowledged are inherently copyrightable. DSSOF ¶ 20.   Even Plaintiff admits that the website submitted to the Copyright Office includes additional copyrightable content added beyond July 3, 2014.  DSSOF ¶ 18.

**D.     Conclusion**

Plaintiff's copyright claim should be dismissed.  The failure to properly register a work will preclude an infringement action predicated on that work. *Roberts*, 181 F. Supp.3d at 1014

(dismissing copyright claim under 17 USC 411(b) after consulting with the Copyright Office). The Copyright Office and Court have concluded that Plaintiff's work was not properly registered and would have been refused had the Copyright Office known the truth about the underlying deposit.  Accordingly, no genuine issue exists.  The precondition for filing Plaintiff's claim for copyright infringement was not met.  Dismissal is required.

### III.   THE FALSE STATEMENTS IN PLAINTIFF'S COPYRIGHT REGISTRATION REQUIRE DISMISSAL.

The Court's September 7, 2017 Order states that any motion for summary judgment must address "if Plaintiff *has* satisfied the precondition to bringing suit [under 17 U.S.C. § 411(a)], how that finding affects Plaintiff's copyright claim."  (Doc. 73 at 2).

There are four ways to address a fiction where Plaintiff is somehow permitted to enforce a copyright registration with an official July 3, 2014 first publication date that contradicts the actual first publication date of the underlying deposit. One way is to take the underlying *deposit* at face value; another is to take the original copyright *application* at face value; and another is to take the *registration* at face value.  The fourth way is to *not* take the registration at face value pursuant to the Court's discretion under 17 U.S.C. § 410(c).Any of these approaches results in dismissal of Plaintiff's copyright claim.

### A.   <u>Enforcing the Underlying Deposit Results in Dismissal</u>.

Enforcing the underlying deposit results in dismissal. As the Copyright Office has confirmed, only the most recently added copyright material in the deposit is claimable. Defendants never copied the most recently added material in the deposit.  DSSOF ¶¶ 3, 21, 24.

The Copyright Office has stated that once a website contains a sufficient amount of new, copyrightable authorship different from a previous version of that website, that new

copyrightable authorship constitutes a derivative work and should be registered as a work separate from any previous version.   Register of Copyright response, p.6 (quoting Compendium (Third) 1008.5).  (Doc. 72-1 at 6).  If the deposit contains materials that existed in an earlier version of the website, they must be excluded from the claim since the extent of the claim for a revised, or derivative, work is based only on the new and revised material contained in the later version of the work.  Register of Copyright response, p.3 (Doc. 72-1 at 3).  The Copyright Office has no exceptions to this rule.  *Id.* pp. 3-4, n.12 (Doc. 72-1 at 3-4).

Plaintiff's most recent copyrightable material in the deposit includes Nemo product pictures that were added on or about October, 14, 2014, as well the Contact Us webpage, modified some time after January 14, 2015.  DSSOF ¶¶ 1-6.  Thus, Plaintiff can only enforce its copyright against infringement of the Nemo products.  Defendants never copied, nor has Plaintiff ever alleged, that Defendants copied Plaintiff's Nemo products or the Contact Us web page, DSSOF ¶ 21, because Defendants' alleged copying of Plaintiff's content was on September 16, 2014.  DSSOF ¶ 24.   Thus, Defendants cannot be liable for infringing the claimable material in the deposit.

**B.      Enforcing the Original Application Results in Dismissal.**

The Court should enforce the copyright application as filed because it radically differs from the eventual registration that issued after discovery was complete and dispositive motions were filed.  Plaintiff was corresponding with the Copyright Office on September 22, 2016, DSSOF ¶ 7, and amending its Application on September 23, 2016, DSSOF ¶ 8, well before any dispositive motions were filed.   But, Plaintiff did not disclose its Copyright Office correspondence and amendments to Defendants until December 4, 2016, after dispositive

11

motions were filed.  DSSOF ¶ 9.  Plaintiff's bad faith in withholding the correspondence is further illustrated by the fact that Plaintiff resisted disclosing the Copyright Office correspondence and only did so after being threatened with a motion to compel.  DSSOF ¶ 10.

The copyright claim in Plaintiff's Amended Complaint states Plaintiff "delivered a completed application, deposit and fee for copyright registration of the Platform on September 13, 2015." DSSOF ¶ 22.  Defendants relied upon the copyright application in conducting their discovery and filing their dispositive motion on the copyright issue.  Defendants' discovery and original Motion for Summary Judgment on the copyright claim was based upon the application's information for (1) the named Authors; (2) the means of ownership; (3) the Year of Completion; (4) the Date of 1st Publication; (5) the Material Excluded from Claim; and (6) the New Material Included in Claim.  DSSOF ¶ 23.

The registration certificate did not issue until after the dispositive motions were filed.  The majority of the information in the Copyright Registration is different from the application, including the Author(s); the means of Ownership; the Year of Completion; the Date of 1st Publication; the Material Excluded from Claim; and the New Material Included in Claim.  DSSOF ¶ 11.    In fact, Plaintiff requested that the Copyright Office change the Date of 1st Publication and Year of Completion within a week after Defendants' Motion's arguments about the publication and completion dates listed in the application.  (The sequence of events is outlined in the Court's June 9, 2017 Order (Doc. 64 at 18-19)).  Plaintiff should not be permitted to rely upon a registration issued at the last minute that claims material different from the material asserted just before the lawsuit had been filed.

The Ninth Circuit allows a just-filed application to satisfy the registration requirement

1  of Section 411(a) because registration is viewed as a mere formality and "[t]he two processes –

2  registration approval by the Copyright Office and an underlying infringement case in the

3  courts – can occur simultaneously with little or no prejudice to any involved parties." *Cosmetic*

4  *Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 621 (9th Cir. 2010).   That is not what

5  happened here.   Defendants were severely prejudiced by the simultaneous litigation and

6  registration processes. The content of Plaintiff's application – upon which Defendants based

7  their discovery and dispositive motion – was completely different from the content claimed in

8  Plaintiff's registration that was asserted *after* the parties had conducted discovery and filed

9  dispositive motions.   It would be equitable for the Court to enforce Plaintiff's copyright as

10  filed rather than as registered.   Filing a copyright application is a *precondition* to asserting a

11  copyright claim.   It is supposed to put Defendants on notice as to the nature of the claimed

12  subject matter of the lawsuit.   Plaintiff's application did not create notice, and in fact

13  misrepresented to Defendants what Plaintiff ended up claiming as its copyright.

14       If the Court chooses to enforce the original copyright application, the claim should be

15  dismissed.   Plaintiff's application to register a work that was first published in 2015 cannot be

16  the basis for an alleged copyright infringement that occurred in 2014.   <u>IMS </u>*Inquiry Manag.*

17  *Sys., Ltd. v. Berkshire Inform. Sys., Inc.,* 307 F. Supp.2d 521, 527 (S.D.N.Y. 2005).   Plaintiff's

18  Platform was first made public in 2011 and was constantly revised up into 2015.   DSSOF ¶ 12.

19  Defendant allegedly copied some 2014 version of the Platform, but Plaintiff only applied to

20  register a 2015 version of the Platform that Defendants have not copied.

21       Plaintiff's copyright application for its work states "Year of Completion: 2015."   The

22  copyright application also states "Date of 1st Publication: August 26, 2015."     DSSOF ¶ 13.

23

1    Yet, according to the Amended Complaint, Defendants are alleged to have copied Plaintiff's

2    work a year earlier on September 16, 2014. DSSOF ¶ 24.

3          In order for a plaintiff to assert a claim against an infringer for an earlier unregistered

4    version of a registered work the original work needs to be identified in the derivative

5    application *with specificity*.   Notably, Courts have found registration of a derivative work

6    insufficient to encompass the original, preexisting work where the registration certificate failed

7    to properly identify the original work from which the subsequent work was derived (and upon

8    which the infringement claim was based).   *IMS*, 307 F. Supp.2d at 529; *Oskar Sys, LLC v.*

9    *Club Speed, Inc*., 745 F. Supp.2d 1155, 1163 (C.D. Cal. 2010).  Here, Plaintiff's claim fails

10   because Plaintiff's copyright application does not identify with specificity any original work,

11   from 2014 or any other year, upon which the 2015 work is based.  In fact, Plaintiff's copyright

12   application does not allude at all to any original work of which it is a derivative.  DSSOF ¶ 25.

13         The Answer to the Amended Complaint warned Plaintiff that its copyright application

14   identifies a work that was created ***after*** Defendants' alleged copying, first published ***after***

15   Defendants' alleged infringement, and refers to no work from which it was derived.  DSSOF ¶

16   29. During Plaintiff's deposition, Plaintiff was questioned twice why Plaintiff's copyright

17   application listed a publication and completion date that was ***after*** the date of Defendants'

18   copying.  DSSOF ¶ 14.  Despite Defendants' warning, Plaintiff never attempted to try to fix

19   this defect in its copyright application or Amended Complaint until after Defendants had filed

20   their original Motion for Summary Judgment.

21         **C.       Enforcing the Registration at Face Value Results in Dismissal.**

22         The registration states that the Date of First Publication for the claimed content is July

23

14

1 3, 2014.  DSSOF ¶ 12. As the Copyright Office has stated, for website registrations "the

2 application should only provide a date of first publication for the specific version that will be

3 submitted for registration."  Register of Copyright response, p.6 (quoting Compendium (Third)

4 1009.4(A)) (Doc. 72-1 at 3).  For registration of websites that have been revised subsequent to

5 the date of first publication, the application should include "the month, day, and year that the

6 revised content was first posted on that site."  *Id.* (quoting Compendium (Third) 1009.4(A)(2))

7 (doc. 72-1 at 3).

8       The question is, what material in the deposit was first published on July 3, 2014?  The

9 answer is: Nothing.  Plaintiff's copyright registration claims nothing.  Plaintiff's website has

10 been active since 2011 and was updated over time.  DSSOF ¶ 12. Consequently, even if the

11 Deposit actually had been last updated on July 3, 2014, it would *still* be a work derivative of

12 earlier versions of Plaintiff's website.   Thus, the resulting registration could *only* claim

13 whatever updates were added on July 3, 2014.

14       But in fact, there were no copyrightable updates on July 3, 2014, because Plaintiff

15 testified it completed the Platform in June 2014.  DSSOF ¶ 15.  Plaintiff also submitted an

16 affidavit stating the website was completed on or about June 25, 2014.   DSSOF ¶ 38.

17 Therefore, there is no content to claim for July 3, 2014.

18       Plaintiff argues it can claim any website content added before July 3, 2014 because July

19 3, 2014 was the first day Plaintiff offered the website for sale, and therefore the website was

20 first "published" on that date.   Plaintiff is incorrect about its date of first sale of the website.

21 Even by Plaintiff's own definition of "publication," the website actually had a first publication

22 date just before July 3, 2014, which means the July 3, 2014 version was merely a derivative.

23

1   Plaintiff argues "publication" of an online work occurs when the "owner clearly authorized the

2   reproduction or distribution of that work," or "first offered for sale to the public" DSSOF ¶ 26.

3   Publication includes the distribution of a copy of a work by sale, rental or lease, or an offer to

4   distribute copies to a group of persons for purposes of further public display.  Compendium

5   1008.3(B)(i) and (ii).  **Plaintiff sold a license for a copy of the Platform on June 12, 2014.**

6   DSSOF ¶ 16.  **Thus, even under a stricter definition, Plaintiff first "published" its**

7   **Platform at least as early as June 12, 2014.**  Its registration with a date of first publication of

8   July 3, 2014 therefore only covers any new content published since that date, of which there

9   was none. DSSOF ¶¶ 15, 38.

10   Plaintiff also made an authorized copy of the Platform on June 24, 2014, at the mirror

11   website www.poolandspapartstoday.com.  DSSOF ¶ 17.  Thus, by Plaintiff's own definition,

12   Plaintiff "published" its Platform on June 24, 2014, which, again, is before the July 3, 2014

13   publication date listed in the registration, and again, makes the July 3, 2014 version not the

14   first-published version of the website, even by Plaintiff's definition.

15   **D.      The Court Has Discretion to Disregard the Copyright Registration.**

16   Even if Plaintiff has met the Section 411(a) preconditions to filing suit, and even if the

17   Court cannot cancel or amend the registration, the Court should exercise its discretion to treat

18   the registration as fraudulent.   "[T]he Register's decision of whether or not to grant a

19   registration certificate is large perfunctory, and is ultimately reviewable by the courts."

20   *Cosmetic Ideas*, 606 F.3d at 621.  Approval by the Register gives an application only prima

21   facie evidence of copyright, leaving the courts to make the ultimate determination.  *Id.* at 621

22   n.13 (citing 17 U.S.C. § 410(c)).  In the present case, the prima facie presumption that the

23

1   registration is accurate has been proven false and should be disregarded.

2        Specifically, the Court is not obligated to believe that the Date of First Publication for

3   the underlying deposit is July 3, 2014.  The registration only gives *prima facie* evidence of the

4   date of first publication, and is not binding on the Court.  In any judicial proceedings the

5   certificate of a registration shall constitute prima facie evidence "of the facts stated in the

6   certificate."  17 U.S.C. § 410(c).  However, the evidentiary weight to be accorded of the Date

7   of First Publication in the certificate "shall be within the discretion of the court." *Id.*

8        In any judicial proceedings the certificate of **a registration** made before or within
     five years after first publication of the work **shall constitute prima facie evidence**
9        of the validity of the copyright and **of the facts stated in the certificate**. The
     evidentiary weight to be accorded the certificate of a registration made thereafter
10       **shall be within the discretion of the court**.

11  17 U.S.C. § 410(c) (emphasis added).  In the present case, the evidence has proven, by

12  documents and Plaintiff's own admissions, that the claimed July 3, 2014 date of first

13  publication is false because copyrightable material in the Deposit, namely the Nemo products,

14  were added in October 2014.  DSSOF ¶ 3.  The Copyright Office has weighed in as well,

15  stating that had it known what was really going on, it would have gone even further and

16  demanded that the date of first publication revert back to August 26, 2015.  Register of

17  Copyright response, p.8 (Doc. 72-1 at 8).

18       The most recent copyrightable content in the deposit is actually from October 2014 or

19  later.  That is the real date of first publication for the claimed content.  Defendants never

20  copied this content, and therefore Plaintiff's claim should be dismissed.

21

22

23

RESPECTFULLY SUBMITTED this 28th day of September, 2017.

**PETRIE & VENDITTI, PLC**

By:

*/s/ Jason M. Venditti*

_____

Jason M. Venditti
20860 N. Tatum Blvd., Suite 300
Phoenix, Arizona 85050
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2017, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

A courtesy copy of the Notice of Electronic Filing was also mailed on this same date to the following address:

Carlos Leyva
Digital Business Law Group PA
1001 Starkey Rd., Ste. 18
Largo FL 51017
cleyva@digitialbusinesslawgroup.com
Attorney for Plaintiff

Linda S. McAleer
Digital Business Law Group
530 B St., Ste. 1550
San Diego CA 92101
lsmnotices@gmail.com
Attorney for Plaintiff

*/s/ Jason M. Venditti*

By:   _____

Jason M. Venditti, Esq.