**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SellPoolSuppliesOnline.com LLC, | No. CV-15-01856-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Ugly Pools Arizona Inc., et al., | |
| Defendants. | |

Plaintiff SellPoolSuppliesOnline.com LLC ("Plaintiff" or "SPSO") and Defendants Ugly Pools Arizona, Inc. and Brian Morris ("Defendants") have filed second cross-motions for summary judgment on Count One of the First Amended Complaint ("FAC"), in which Plaintiff asserted a claim for copyright infringement under the United States Copyright Act, 17 U.S.C. § 501(a) (the "Copyright Act"). (Docs. 78, 79.) For the reasons below, the Court grants Defendants' motion and denies Plaintiff's motion.

## I.    Factual and Procedural Background

Plaintiff asserted the following three counts in the FAC: (1) copyright infringement under the Copyright Act, 17 U.S.C. § 501(a) (Count One); (2) unfair competition under Arizona law (Count Two); and (3) violation of the Digital Millennium Copyright Act, integrity of copyright management information under 17 U.S.C. § 1202 (Count Three). (Doc. 39.) The parties previously filed cross-motions for summary judgment on all three counts of the FAC, including Count One. (Docs. 43, 45.) On June 9, 2017, the Court denied both motions for summary judgment on Count One without

prejudice.[1]  (Doc. 64 at 42.)  The Court granted summary judgment in favor of Defendants on Count Two.  (*Id.*)  The Court granted summary judgment in favor of Defendants on Plaintiff's removal claim under 17 U.S.C. § 1202(b), asserted in Count Three.  (Doc. 64 at 42.)  The Court denied both motions for summary judgment on Plaintiff's falsification claim under 17 U.S.C. § 1202(a), asserted in Count Three.  (*Id.*)  This order addresses only the parties' second cross-motions for summary judgment on Count One.  In a separate order the Court addresses Defendants' third motion for summary judgment on Plaintiff's falsification claim, asserted in Count Three.  (Doc. 86.)

### A.  General Background Regarding the Copyright Dispute

Plaintiff describes its business as licensing pre-made websites that it refers to as "the Platform."  (Doc. 78-1 ¶ 1.)[2]  Plaintiff alleges that the Platform consists of "a compilation of programs, representations, originally authored works, writings, hundreds of photos taken by the principals of SPSO, and computer architecture and design, which provide SPSO licensees the infrastructure to configure, implement, and maintain fully functional and attractive websites based on the Platform that are personalized to each customer's business."  (*Id.*, ¶ 2.)  As delivered to customers, the Platform incorporates and effectively uses search engine optimization ("SEO") and provides "drop-ship" delivery that dispenses with the need for customers to maintain inventory.  (*Id.*)  Plaintiff alleges that it spent three years and "hundreds of thousands of dollars developing the Platform."  (*Id.*, ¶ 3.)  However, Plaintiff has admitted that "much of the website code" is licensed from BigCommerce, a non-party entity that provides "backend electronic storefront" services.  (Doc. 53, Ex. Q.)

---

[1]  Defendants also filed a motion for an order directing Plaintiff to cancel or amend its copyright registration.  (Doc. 53.)  The Court denied that motion, but considered Defendants' arguments in its analysis of the parties' first cross-motions for summary judgment on Count One.  (Doc. 64 at 9, 13-14.)

[2]  Docket 78-1 is Plaintiff's Separate Statement of Facts in Support of Plaintiff's Second Motion for Summary Judgment.  Plaintiff cites to this document as "SSOF." (Doc. 78.)  Because there are multiple motions for summary judgment in this case, the Court cites to the CM/ECF docket and page numbers to avoid confusion.

In July 2014, SPSO employed Mark Kesler as a salesperson to sell licenses to use the Platform; the licenses sold for an average of $15,000. (Doc. 78-1 ¶¶ 5, 6.) Plaintiff alleges that it charged monthly maintenance fees and required licensees to host their websites on SPSO's servers. (*Id*., ¶ 7.) Plaintiff paid Kesler a commission for each license he sold, and Kesler purchased a license for use on his own site, "allpoolandspaparts.com" ("Kesler's site"). (*Id.*, ¶ 8.)

During 2014, Kesler introduced Defendant Brian Morris, owner of Defendant Ugly Pools Arizona, Inc., and the trade name "We Fix Ugly Pools" ("WFUP"), to Plaintiff as a potential licensee. (*Id.*, ¶ 13.) Defendants build and remodel swimming pools, and sell pool supplies and accessories in Maricopa County, Arizona and surrounding areas. (*Id.*, ¶ 14.) Defendants represented themselves to Plaintiff as prospective customers who were considering purchasing a license of SPSO's Platform to create a website for their business. (*Id*., 15.)

Plaintiff provided Defendants access to Kesler's copy of the Platform to assist them in making a purchasing decision. (*Id*., ¶ 16.) Plaintiff alleges that "Defendants were aware that they would have to purchase a license to be authorized to have further access to the Platform—that is, to use it commercially—and that the SPSO license governed the nature of their use of the Platform." (*Id*.) Unbeknownst to Plaintiff, Defendants and Kesler were working together and had formed a partnership for Morris to manage and redesign Kesler's site. (*Id.*, ¶ 18, Ex. 2 at 37.) Plaintiff alleges that Defendants downloaded "a complete copy of SPSO's Platform." (*Id.*, ¶ 20.) Plaintiff alleges that after the download, Defendants stopped communicating with Plaintiff. (*Id.*)

Plaintiff alleges that nearly one year later, Defendants published a website located at allpoolsupplies.com ("APS"), which was nearly identical to the Platform. (*Id.*, ¶ 22.) Plaintiff asserts that Defendants admitted to copying the Platform and creating APS, a derivative site. (*Id*.) The site was "launched live on the internet as a fully functioning site through which customers could, and did place orders." (*Id*., ¶ 24.) Plaintiff alleges that Defendants' site "wholly incorporated the original photos which are registered with

the U.S. Copyright Office under Registration Number TX 8-268-803 ("Registered Photos") and other content from the Platform into APS." (*Id.*, ¶¶ 28-29). Plaintiff alleges that Kesler's license was granted specifically for use on his site located at "allpoolandspaparts.com" and that the license strictly limited use of the Platform to that site. (*Id.*, ¶¶ 9, 30.) Plaintiff discovered Defendants' allegedly infringing website on July 15, 2015 and notified Defendants of the alleged infringement that same day. (*Id.*, ¶ 35.)

## B. Background related to Plaintiff's Copyright Registration

On September 13, 2015, four days before filings its original complaint, Plaintiff filed a copyright registration application with the copyright office for a work titled "SPSO Website www.poolandspapartsnow.com" (the "Work").[3] (Doc. 53, Ex. A.) The registration application identified the Work's year of completion as 2015, and the date of first publication as August 26, 2015. (*Id.*) The application identified the copyright claim in the Work as including "new material" identified as "text, photograph(s), computer program" and excluding "text, photograph(s), computer program, artwork." (Doc. 50, Ex. 9; Doc. 80 ¶ 31.)[4]

On September 20, 2016, the copyright office contacted Plaintiff's counsel regarding "problems" with information in the application related to the identity of the original copyright owner. (Doc. 53, Ex. E; Doc. 53-5 at 2.) Plaintiff responded that SPSO was the owner of the text, photographs, and computer programs claimed in the application. (Doc. 53, Ex. E; Doc. 53-5 at 3-5.)

---

[3] "To register a claim to copyright, an applicant must submit the following items to the U.S. Copyright Office: [1] Completed application; [2] Full filing fee; and [3] The requisite deposit copy(ies) of the work." *Compendium of U.S. Copyright Office Practices* § 204 (3d ed. 2017) (cited as COMPENDIUM (THIRD).) The "deposit . . . refers to the copy or copies of a work that are submitted to the U.S. Copyright Office." *Id.* at § 204.3.

The COMPENDIUM (THIRD) is an "administrative manual" that "explains many of the practices and procedures concerning the [Copyright] Office's mandate and statutory duties under title 17 of the United States Code." (Doc. 72-1 at 3 (quoting 37 C.F.R. § 201.2(b)(7)).)

[4] Docket 80 is Defendants' Separate Statement of Facts in Support of their Second Motion for Summary Judgment. (Docs. 80, 80-1, 80-2, 80-3.)

On October 6, 2016, the copyright office again contacted Plaintiff and asked "[s]ince this application is to register the website as it appeared (published) on 8/26/2015, was any of the computer code or were any of the photographs from an earlier version of the website?" (Doc. 53, Ex. F; Doc. 80 ¶ 33.) The copyright office explained that any photographs or code that appeared in earlier website versions "must be excluded from this claim since the extent of claim for a revised, or derivative, work is based only on the new and revised material contained in the later version of the work." (Doc. 53, Ex. F.) Plaintiff's counsel responded that some of the deposit's content "may have been from an earlier version of the website BUT we need special dispensation because this is the first time registration of the website and no copy (i.e., mirror or backup) of the prior website exists." (Doc. 53, Ex. H; Doc. 80 ¶ 34.)

On October 14, 2016, the copyright office denied the requested exception. (Doc. 53, Ex. I; Doc. 80 ¶ 35.) The copyright office explained that "[w]e can only register the website as it appeared on the date on which it was printed, not for any past or future versions." (Doc. 53, Ex. I; Doc. 80 ¶ 35.) The copyright office also stated "if any of the content of the website ever appeared online or in any other form previous to the version submitted, please authorize me to exclude all of the preexisting material and to limit the claim to the new and revised material in this version of the website." (Doc. 53, Ex. I; Doc. 80 ¶ 35.) In response, Plaintiff's counsel inquired "[o]n what grounds is special dispensation denied? Websites aren't copyrighted usually until they are mature. Therefore, this policy excludes almost every conceivable website that is nontrivial from being copyrighted." (Doc. 53, Ex. J; Doc. 80 ¶ 36.)

On November 16, 2016, before the copyright office responded to Plaintiff's inquiry about the denial of its request for a special dispensation, Plaintiff submitted to the copyright office an affidavit from one of its principals, Aaron Hagen. (Doc. 53, Exs. K, L; Doc. 80 ¶ 38; Doc. 72, Ex. A at 4.) The Hagen affidavit stated that "SPSO first published the Platform on or about July 3, 2014. It was completed on or about June 25, 2014." (Doc. 53, Ex. K at ¶ 4; Doc. 80 ¶ 38.) The Hagen affidavit further stated that

"[t]he sample of the Platform provided to the United States Copyright Office with SPSO's Copyright application in 2015 is the same as the website first appeared when published on July 3, 2014." (Doc. 53, Ex. K at ¶ 5; Doc. 80 ¶ 39.) In an accompanying email, Plaintiff's counsel confirmed that "[t]he Deposit that was submitted correctly represents the copy that was first published on July 3, 2014. Counsel did not have sufficient facts at the time of application." (Doc. 53, Ex. L; Doc. 80 ¶ 40.)

On November 17, 2016, a supervisor at the copyright office contacted Plaintiff's counsel, stating "[t]he signed affidavit that you provided states that the website was completed on June 25, 2014 and published on July 3, 2014. The original application lists the Year of Completion as 2015 and the date of first publication as August 36 [sic], 2015. Please confirm that we should update the information on your original application with that which is provided in the [affidavit]. Please do note that the copyright notice on the bottom of each webpage submitted as deposit material bears the year 2015." (Doc. 53, Ex. Q at 1-2; Doc. 80 ¶ 41.) Plaintiff's counsel responded, "[y]es the information should be updated as per the affidavit." (Doc. 53, Ex. Q at 2; Doc. 80 ¶ 41.)

On November 17, 2016, Plaintiff also informed the copyright office that its copyright claim was for "the photographs and computer code related to the photographs that enabled the latter to present a 360 degree view of the product to a prospective customer. The Hagens also provided text descriptions of the products. That is the extent of the claim." (Doc. 53, Ex. Q; Doc. 80 ¶ 42.) Plaintiff explained that "[m]uch of the website code is licensed from a third party (i.e. BigCommerce) and SPSO obviously makes no claims with respect to that." (Doc. 53, Ex. Q; Doc. 80 ¶ 42.) A few days later, Plaintiff advised the copyright office that it was "no longer interested in registering the code . . . ." (Doc. 53, Ex. CC; Doc. 80 ¶ 43.) Plaintiff specified that it was "interested in registering the website as is with the current deposit and the modifications to the application already agreed to." (Doc. 53, Ex. CC; Doc. 80 ¶ 43.)

On November 29, 2016, the copyright office issued a certificate of registration. (Doc. 50, Ex. 1; Doc. 80 ¶ 44.) The certificate of registration identifies the year of

completion as 2014, the date of first publication as July 3, 2014, and the authors of the text and photographs as Aaron Hagen and David Hagen. (Doc. 50, Ex. 1.) It identifies the title of the Work as the SPSO Website www.poolandspapartsnow.com. (*Id.*) Under the heading "limitation of copyright claim," the certificate of registration lists "new material included in the claim" as "text, photographs." (*Id.*)

### C. The Court's Inquiry to the Copyright Office

In their first cross-motions for summary judgment on Count One of the FAC, the parties disputed whether Plaintiff had properly registered its copyright and met the registration precondition for filing a copyright infringement suit. (Doc. 45 at 7; Doc. 49 at 2; Doc. 64 at 12-13; *see also* 17 U.S.C. § 411(a) ("no action for infringement of the copyright in any United States work may be instituted until registration of the copyright has been made in accordance with this title.").) The Court found that Plaintiff's copyright registration was effective September 16, 2015, one day before Plaintiff filed its original complaint on September 17, 2015. (Doc. 64 at 12-13.)

Defendants, however, argued that Plaintiff knowingly provided false information to the copyright office about the date of first publication and the contents of the deposit that it submitted to the copyright office. (*Id*. at 13; Doc. 53 at 2) Therefore, the Court also considered whether the registration should be considered invalid under 17 U.S.C. § 411(b). (Doc. 64 at 14-25.) The Court concluded that it was undisputed that the deposit did not match Plaintiff's copyright claim and that Plaintiff knew of the discrepancies, but nonetheless represented to the copyright office in the Hagen affidavit that the deposit (defined as the sample of the Platform provided to the copyright office in September 2015), was the same as the website appeared on July 3, 2014. (*Id*. at 18, 24.) The Court found that the statutory criteria for mandatory referral to the copyright office had been satisfied because the deposit did not match the material claimed in the application and Plaintiff did not argue that it unknowingly provided false information, but instead argued that the inclusion of additional material in the deposit was immaterial. The Court stated that:

It is undisputed that the [d]eposit material did not match the material claimed in [Plaintiff's] copyright application. The application was to register content (photographs and text) on the website as of the date of publication specified during the registration process, July 3, 2014, but Plaintiff deposited the content that appeared on the website on a later date. Plaintiff, however, represented to the copyright office that the [d]eposit was the same as the website appeared on July 3, 2014. Plaintiff does not argue that it unknowingly provided false information to the copyright office. Instead, Plaintiff argues that its inclusion of additional material in the [d]eposit is "of no moment."

(*Id*. at 24.) Although Plaintiff argued that the inaccuracies in the information it presented to the copyright officer were "of no moment," or in other words, immaterial, the Court found that the statutory referral procedures of 17 U.S.C. § 411(b)(2) applied and required the Court to ask the Register of Copyrights if it considered the inaccurate information material to its decision to register the copyright. (*Id*. at 24-25.)

Therefore, on June 27, 2017, the Court sent a request for the advice of the Register of Copyrights on the following question:

> 1. If the Register of Copyrights had known that the Deposit underlying Registration Number TX 8-268-803 does not depict the content that existed on the SPSO website www.poolandsparts.now on July 3, 2014, which is the date of publication identified on the certificate of registration, but instead depicts a version of the website that includes copyrightable content that was added to the website at a later date, would the Register of Copyrights have refused to issue a registration with a July 3, 2014 publication date?

(Doc. 67.)

On September 5, 2017, the Register of Copyrights responded to the Court's inquiry and stated that it would have refused registration of Plaintiff's copyright with a July 3, 2014 publication date had it known that the submitted website included copyrightable content that was added after July 3, 2014.[5] (Doc. 72-1 at 8.) The Register

---

[5] The Register assumed, based on the Court's question, that the content added to the website after July 3, 2014 was copyrightable. (Doc. 72-1 at 8, n.43; Doc. 67.) Plaintiff moved for reconsideration of the Court's question to the Register, but did not object to the reference to "copyrightable content." (Doc. 68.) The Register's assumption is correct because the content added to the website after July 3, 2014 included photographs, which Plaintiff admits are copyrightable. (Doc. 80 ¶¶ 5, 6, 20; Doc. 82 ¶¶ 5, 6, 20.) Furthermore, Plaintiff admits that the website submitted to the copyright office includes additional copyrightable content added after July 3, 2014. (Doc. 80 ¶ 18; Doc. 82 ¶ 18.)

- 8 -

of Copyrights further stated that it "would have demanded a copy of the deposit as published on July 3, 2014 . . . ."[6] (*Id*.) The Register of Copyrights stated that, alternatively, it would have "asked Plaintiff to limit its claim to material published on August 26, 2015, and to revert back to the 2015 year of completion, and the August 26, 2015 date of publication, for the original application." (*Id*.) If Plaintiff had "refused to limit the claim and revert back to the August 26, 2015 date of first publication and 2015 year of completion, the Acting Register would have refused registration."[7] (*Id*.)

After receiving the Register of Copyrights' response, the Court permitted the parties to file second motions for summary judgment on Plaintiff's copyright infringement claim asserted in Count One of the FAC. (Doc. 73.) The Court directed the parties to address how the Register of Copyrights' response to the Court's inquiry affected Plaintiff's copyright claim, including whether Plaintiff satisfied the registration precondition for bringing a civil action for copyright infringement. (*Id*. at 2.)

## II. Summary Judgment Standard

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a

---

[6] Plaintiff's prior correspondence with the copyright office indicated that it did not have a copy of the website as it existed in July 2014. (*See* Doc. 53, Ex. H (October 6, 2016 email to the copyright office from Plaintiff's counsel stating that some of the Deposit's content "may have been from an earlier version of the website BUT we need special dispensation because this is the first time registration of the website and no copy (i.e., mirror or backup) of the prior website exists.").) Based on this evidence, Plaintiff would have been unable to "provide a copy of the work as published on July 3, 2014." (Doc. 72-1 at 8.) Therefore, the Court concludes that the Register of Copyrights would have refused registration with the July 3, 2014 publication date.

[7] If Plaintiff had limited its claim to material published on August 26, 2015, a certificate of registration based on that date could not support Plaintiff's copyright infringement claim that is based on an alleged infringement that occurred in 2014. (*See* Doc. 79 at 13-14.)

matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmoving party may not rely on the mere allegations in the pleadings, but must set forth by affidavit, or other appropriate evidence, specific facts showing there is a genuine issue for trial. *Id.* at 249. The nonmoving party must produce at least some "significant probative evidence tending to support" its position. *Smolen v. Deloitte, Haskins, & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). The issue is not whether the "'evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented.'" *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 252). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). The Court considers the motion for summary judgment under this standard.

## III. Plaintiff's Copyright Infringement Claim

Plaintiff alleges that Defendants committed copyright infringement by "willfully and unlawfully reproduc[ing], publicly display[ing], and creat[ing] derivative versions of copyrighted elements of the Platform verbatim." (Doc. 39 at ¶ 38.) In its second motion for summary judgment, Plaintiff argues that it is entitled to summary judgment on this claim because it satisfied the procedural requirements of 17 U.S.C. § 411(a) and Defendants admitted to reproducing and distributing SPSO's Platform. (Doc. 78 at 8.) Defendants seek summary judgment on Plaintiff's copyright infringement claim on the ground that Plaintiff did not satisfy the copyright registration precondition to bringing a copyright infringement action. (Doc. 79 at 1.)

### A.    The Copyright Act

Copyright protection applies to "original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).  A copyright, as a right, "subsists from its creation . . . ."  *See* 17 U.S.C. § 302(a).   "Under the Copyright Act, copyright protection provides an owner with exclusive rights to reproduce the copyrighted work, to prepare derivative works from the copyrighted work, to distribute copies of the copyrighted work, and to perform or display the copyrighted work."  17 U.S.C. § 106.  Anyone who violates any of those exclusive rights is an infringer of the copyright of the author, and the legal or beneficial owner of the exclusive right is entitled to sue for infringement under 17 U.S.C. § 501(a)-(b).

To establish a prima facie case of copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) that the alleged infringer violated at least one of the exclusive rights granted under § 106.  *See A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  Copyright "registration [is also] an element of an infringement claim."  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017) (citing *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 615 (9th Cir. 2010)).

### 1.    Registration of Website Content

"A website in and of itself is not explicitly recognized as copyrightable subject matter."  COMPENDIUM (THIRD), Glossary, §1006.[8]  Rather "[a] website is merely a medium of fixation for works of original authorship . . . it is a vehicle for the dissemination of content, which may or may not be copyrightable."  *Id.*  "[I]t is the content of the website—not the medium of expression—that comprises the copyrightable authorship that may be registered with the U.S. Copyright Office."  *Id.* However, "[w]ebsites are somewhat unique as vehicles for the dissemination of content.  Unlike a tangible object, such as a printed magazine or a roll of film, websites are not static

---

[8]  When interpreting the Copyright Act, the Court defers to the copyright office's interpretations, such as the Compendium, in the appropriate circumstances. *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 684 (9th Cir. 2014).

containers for content. They are dynamic containers that may change over time as often and to the extent that the website owners wish." *Id*. "Although websites are dynamic, copyright protection in the United States extends only to fixed works of authorship that fall under the categories provided in . . . the Copyright Act." Thus, the copyright office "will register a claim in website content only as it exists at the time the application is received." *Id*.

Therefore, "a registration for website content does not extend to any unclaimable materials that may be contained within that content. . . . [and] unclaimable material includes material that . . . was previously published or registered." *Id*. at § 1008.2; *see also* § 1009.8 ("[a] registration for a website or website content does not cover any materials that has been previously published . . ."). "If the deposit contains an appreciable amount of previously published . . . material, the applicant must expressly exclude that material from the claim." *Id*. at § 1008.2 "Asserting a claim in previously published material is one of the most common mistakes that applicants make when completing an application to register website content." *Id*.

As the copyright office advised Plaintiff, if website "content has been published, the applicant may register all of the copyrightable material that was first published on the date of publication specified in the application. If the content contains copyrightable materials that was published before that date, the application must exclude that previously published material from the claim." *Id*. at § 1008.6(A). "[T]he deposit should contain a copy of the content as it existed on the date of publication that is specified in the application. *Id*.; *see also* § 1010.5 ("[t]o register material from the initial version or any subsequent version of a published website, the applicant must deposit an acceptable copy . . . of the specific version that the applicant intends to register and the applicant must provide the correct date of first publication for that version.").

### 2. Registration Precondition to Filing Infringement Action

Upon application, a copyright claim may be registered with the copyright office if it is determined that the work "constitutes copyrightable subject matter" under the Act.

17 U.S.C. §§ 408, 410. Copyright registration serves as a public record of the authorship and ownership of the claimed work. *Brownstein v. Lindsey*, 742 F.3d 55, 66 (3d Cir. 2014). Copyright registration is not required for copyright protection and is not jurisdictional. *See* 17 U.S.C. § 408(a); *Cosmetic Ideas*, 606 F.3d at 614-15 (citing *Reed Elsevier, Inc., v. Muchnick*, 559 U.S. 154 (2010)). However, "[c]opyright registration is a precondition to filing a copyright infringement action." *L.A. Printex Indus. Inc. v. Aeropostale, Inc.* 676 F.3d 841, 852-53 (9th Cir. 2012), *as amended* (June 13, 2012); *Cosmetic Ideas, Inc.,* 606 F.3d at 614-15 (stating that "registration is required for U.S. works prior to bringing any infringement action."); 17 U.S.C. § 411(a) (providing that "no action for infringement of the copyright in any United States work may be instituted until registration of the copyright has been made in accordance with this title.").[9]

The Ninth Circuit has held that the copyright office's receipt of a completed application is sufficient for purposes of initiating copyright infringement litigation, and that the processes of copyright registration and an infringement case can proceed concurrently. *Cosmetic Ideas, Inc.*, 606 F.3d at 619-21. After a copyright registration certificate is issued, it dates back to the date of the application and the certificate includes the effective date of the registration. 17 U.S.C. § 401(a), (d). Section 411(a) provides that rejection of a registration application does not bar a civil suit, if the copyright office

---

[9] The Ninth Circuit further explained why registration is a precondition to filing a copyright infringement action, even though registration is not required for copyright protection:

> Although registration was made optional [in the 1976 amendments to the copyright act], Congress still valued having a robust federal register of existing copyrights. To this end, it chose to encourage copyright holders to register with the Office of Copyright through various statutory incentives. For instances, if a copyright holder secures a registration certificate within five years after first publication, such certificate will constitute prima facie evidence of both the validity of the copyright and the facts stated in the certificate. Moreover certain remedies, such as statutory damages and attorney's fees, are available only after registration. Finally, registration is required for U.S. works prior to bringing an infringement action. Indeed, because registration is not mandatory under the Act, copyright holders frequently register specifically for the purpose of being able to bring suit.

*Cosmetic Ideas, Inc.,* 606 F.3d at 619 (internal citations omitted).

has been notified of the litigation and served with a copy of the complaint. 17 U.S.C. § 411(a) (permitting an applicant to bring an infringement action after the register has rejected the applicant's registration if the register is notified of the suit and served with the complaint)). The copyright office may become a party to the suit, but it is the court's responsibility to determine the validity of a plaintiff's copyright claim. 17 U.S.C. § 411(a).

### 3. Invalidation of Copyright Registration

"To prevent plaintiffs from abusing the registration process . . . , the Copyright Act allows for the invalidation of registrations obtained by knowing misrepresentations of material facts." *Delivermed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616 (7th Cir. 2013) (citing 17 U.S.C. § 411(b)(1)(A)-(B)). In 2008, as part of the Prioritizing Resources and Organization for Intellectual Property Act (the "2008 PRO IP Act"), Congress codified a court-made standard for invalidating a copyright registration. *See Lennar Homes of Texas Sales and Mktg. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, (S.D. Texas 2015) (discussing the Fifth Circuit's standard for finding a copyright registration invalid).

Under the amended statute, a certificate of registration is sufficient to bring a copyright infringement action "regardless of whether the certificate contains inaccurate information," unless the following conditions are met: (A) "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate," and (B) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(A) and (B); *see L.A. Printex*, 676 F.3d at 853.

The 2008 PRO IP Act amended § 411 to include § 411(b)(2), which requires courts to seek the advice of the Register of Copyrights before finding that a certificate of registration does not support an infringement action. *See DeliverMed Holdings*, 734 F.3d at 623 (stating that "[i]nstead of relying solely on the court's own assessment of the Register's response to an inaccuracy, the statute obligates courts to obtain an opinion

from the Register on the matter."); *Palmer/Kane LLC v. Rosen Book Works LLC*, 2016 WL 3042895, at *1 (S.D.N.Y. May 27, 2016) ("[C]ourts are in agreement that the provision is mandatory in nature . . . ."). In other words, before finding that knowingly inaccurate information would have caused the Register of Copyrights to refuse registration, a court must ask the Register whether that would have been the case.

## B. Sufficiency of Plaintiff's Copyright Registration

In its analysis of the parties' second cross-motions for summary judgment, the Court first considers whether Plaintiff's copyright registration supports its copyright infringement claim asserted in Count One. The Court has previously concluded that for purposes of its infringement claim, the relevant copyrighted content is the "text and photographs" that appear on Plaintiff's website www.poolandspapartsnow.com. (Doc. 64 at 11-12; Doc. 78 at 12.) Defendants argue that Plaintiff's copyright infringement claim fails because Plaintiff did not satisfy the registration precondition for filing a claim for copyright infringement (Doc. 79 at 4), and Plaintiff disputes that assertion. (Doc. 78.) As discussed below, the Court concludes that Plaintiff did not satisfy the registration precondition because the registration is invalid under § 411(b).

The record reflects that Plaintiff's application for registration of copyright was dated September 13, 2015, for a work titled "SPSO Website www.poolandspapartsnow.com," and that the copyright office received the application on September 15, 2015. (Doc. 50, Ex. 9; Doc. 53, Ex. B.) The copyright office eventually issued a certificate of registration for "text, photographs," with September 16, 2015 as the effective date of registration. (Doc. 50, Ex. 1.) After a certificate of registration of copyright is issued, the registration dates back to the date of application. *Cosmetic Ideas*, 606 F.3d at 616 (citing 17 U.S.C. § 410(d) (concluding that plaintiff satisfied the registration requirement when plaintiff submitted an application for registration of copyright before it filed suit and the copyright office subsequently issued a registration certificate)). Thus, the registration was effective September 16, 2015, before Plaintiff filed the original complaint. However, the Court finds that registration is not sufficient to

support Plaintiff's copyright infringement claim under the two-part test of 17 U.S.C. § 411(b), as set forth below.

### 1. The Copyright Application Included Inaccurate Information

As discussed in detail in the June 2017 Order, the copyright application, which includes the correspondence between Plaintiff and the copyright office, included inaccurate information that was incorporated into the copyright registration. (Doc. 64 at 17-25.) The inaccurate information is the July 3, 2014 publication date for the deposit, which included the text and photographs at issue in the copyright infringement claim. (*Id*. at 24; Doc. 78 at 10; 78-1 ¶ 39.) Deposit material for website content must contain "the copyrightable material that is claimed in the application," and "the deposit should contain a copy of the content as it existed on the date of publication that is specified in the application." (Doc. 72-1 at 6 (quoting COMPENDIUM (THIRD) §§ 1010.1 and 1008.6(A)).

For registration of website content that has been revised after the date of first publication, the copyright application should include the "month, day, and year that the revised content was first posted on that site." (Doc. 72-1 at 6 (quoting COMPENDIUM (THIRD) § 1009.4(A)(2)).) As the copyright office advised Plaintiff during the registration process, registration of a revised version of a website covers only the new or revised material added. (Doc. 53, Ex G. p.2.) "[I]t is the responsibility of the applicant to determine whether a work has been published prior to an application and to make this determination based on the applicable terms of the Copyright Act." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2017 WL 2903180, at *9 (C.D. Cal. Mar. 24, 2017).

As explained in the Court's June 2017 Order, the July 3, 2014 publication date is inaccurate because "[i]t is undisputed that the [d]eposit material did not match the material claimed in the application. The application was to register content (photographs and text) on the website as of the date of publication specified during the registration process, July 3, 2014, but Plaintiff deposited the content that appeared on the website on

a later date. Plaintiff, however, represented to the copyright office that the deposit was the same as the website appeared on July 3, 2014." (Doc. 64 at 24.) The additional content includes, in part, photographs of Nemo products added on October 14, 2014, including entire webpages displaying the Nemo products. (Doc. 80 at ¶¶ 1-5.)

Plaintiff admits that the website submitted to the Copyright Office included additional copyrightable content added after July 3, 2014. (*Id*. at ¶ 18 (citing Doc. 68 at 3, 5; Doc. 56 at 6).) Plaintiff does not dispute Defendants' assertion, and the Court's finding in the June 2017 Order, that photographs of Nemo products were added to Plaintiff's website after July 3, 2014, the date Plaintiff represented as the publication date for the deposit submitted to the copyright office. (*See* Doc. 64 at 20-24.)

Instead, Plaintiff previously argued that "the deposit copy submitted by SPSO . . . was the *best available copy* of the Work as it subsisted on the Publication Date, July 3, 2014," and stated that "[t]he fact that *there is additional information contained on the Deposit is of no moment*." (Doc. 56 at 6 (emphasis added).) Plaintiff also attempted to minimize any inaccurate statements in the Hagen affidavit by stating that when Hagen said the sample Platform submitted as the deposit with Plaintiff's copyright registration was the "'same as the website appeared when published on July 3, 2014,' he [was] referring to what is claimed on the registration, namely 'text, photographs.'" (*Id*. at 9.) "He is not referring to additional information that may have been contained in the medium (i.e. the website). As far as what is claimed in the Registration, the 'text and photographs' are the ***same or essentially the same*** as in the Deposit as they existed on July 3, 2014." (*Id*. (emphasis by italics and bold text in original).)

Plaintiff now asserts that the deposit is not required to match the "medium in which it is contained," and therefore Defendants' arguments that there is "other material in the medium is rendered moot." (Doc. 90 at 9; *see also* Doc. 81 at 7 (asserting that the medium and the Work are not required to match and stating "there may have been additional copyrightable subject matter on the medium that Plaintiff elected not to claim in its registration.").) Plaintiff specifically refers to "[N]emo products" in this argument.

(Doc. 90. at 9-10.) Thus, throughout the briefing on several motions in this case, Plaintiff has admitted that the photographs of Nemo products were added to the SPSO website after July 3, 2014, and were included in the deposit submitted to the copyright office in September 2015.

Plaintiff's argument that the SPSO website is only the medium for copyrightable material, and the copyrighted material is limited to certain content on that website, specifically photographs and text, does not establish that the photographs of Nemo products added to the website after the asserted July 3, 2014 publication date are "moot." Plaintiff does not explain how these photographs, and the text describing these products, are simply part of the website medium, and not part of its content and not part of the unspecified "photographs, text" listed on the registration.

Furthermore, Defendants submitted evidence indicating that they had identified photographs of the Nemo products that were added to Plaintiff's website after July 3, 2014 by using the Internet Archive to capture pages of Plaintiff's website as it existed in July 2014 and in the deposit. (Doc. 80 at §§ 1-5; Doc. 53, Exs. M-1, M-2, M3, N-1, N-2, N-3, N-4, FF.) Plaintiff does not dispute this evidence, but instead asserts that this evidence is "irrelevant" because it did not register a website and "the Nemo products are not part of what was registered with the USCO and not part of what Plaintiff claims was infringed." (Doc. 82 at ¶¶ 1-5.) Thus, it appears that Plaintiff may be arguing that although the deposit included photographs added to the SPSO website after July 3, 2014, the asserted publication date, it did not intend to register these photographs, or assert copyright infringement based on the copying of these photographs and, therefore, the additional content in the deposit is immaterial.

This argument, however, ignores the significance of the addition of new copyrightable content to the website. As previously discussed, the Register of Copyrights would have refused registration of Plaintiff's copyright with a July 3, 2014 publication date had it known that the submitted website included copyrightable content added after July 3, 2014. (Doc. 72-1 at 8.) Thus, the addition of new copyrightable content on the

website is significant in determining the publication date. (*See* Doc. 64 at 23 (citing COMPENDIUM (THIRD) at §§ 1008.5, 1008.6).) Because the registration includes inaccurate information, the Court considers whether "the inaccurate information was included on the application . . . with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A).

## 2. Plaintiff Knowingly Included the Inaccurate Information

Under § 411(b), a certificate of registration that contains inaccurate information is insufficient to bring a copyright infringement suit when the registrant knowingly included the inaccurate information, and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(A) and (B); *see Unicolors,* 853 F.3d at 991 (stating that a registration error bars an infringement action if "the inaccurate information was included on the application . . . with knowledge that it was inaccurate" and the inaccuracy, "if known, would have caused the Register of Copyrights to refuse registration.") (internal quotation marks and citation omitted); *Schenck v. Orosz*, 105 F. Supp. 3d 812, (M.D. Tenn. 2015) (stating that "a plaintiff cannot maintain a copyright infringement action premised on a registered copyright if the plaintiff both (1) included inaccurate information on a registration application and (2) the Copyright Office would have refused registration had the inaccurate information not been included.").

In its June 2017 Order, the Court found that Plaintiff had not "argue[d] that it unknowingly provided false information to the copyright office." (Doc. 64 at 24.) Plaintiff does not dispute that finding. (Doc. 80 ¶ 27; Doc. 82 ¶ 27.)[10] Rather, Plaintiff argues that § 411(b) does not apply because it did not make fraudulent statements to the copyright office. (Doc. 81 at 14-16; Doc. 90 at 3-5, 6-8.) Plaintiff argues that § 411(b)

---

[10] Plaintiff objects to this statement as irrelevant on the ground that "Plaintiff's communications with the USCO . . . [have] been fully litigated." (Doc. 82 ¶¶ 9, 27.) Plaintiff also asserts that this issue is beyond the scope of the Court's order permitting second motions for summary judgment. (*Id.* at ¶ 9.) The Court agrees that the issue of Plaintiff's communications with the copyright office was addressed in the June 2017 Order. (Doc. 64.) However, those communications continue to be relevant to the resolution of Plaintiff's copyright infringement claim. *See* § 411(b)(1).

requires a showing of fraudulent misrepresentation under state law.  (Doc. 90 at 2-3, n.1 (citing *Neilson v. Flashberg*, 419 P.2d 514, 517-18 (Ariz. 1966).)  Plaintiff further argues that § 411(b) requires that the party challenging whether the registration satisfies the registration precondition to filing suit must "meet the heightened pleading standards" for fraud in Rule 9(b) of the Federal Rules of Civil Procedure.  (Doc. 90 at 3-4.)  Plaintiff asserts that its counsel made only "inadvertent technical errors during the registration process."  (*Id*. at 5.)

"[I]nadvertent mistakes on a registration certificate do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake or the claimant intended to defraud the Copyright Office by making the misstatement."  *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997).  However, the Ninth Circuit has found that "a showing of fraud is not required when the inaccurate information was knowingly included on the application, as opposed to being an inadvertent mistake."  *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2017 WL 2903180, at *10 ) (C.D. Cal. Mar. 24, 2017) (citing *L.A. Printex Indus., Inc.*, 676 F.3d at 854; *see also Palmer/Kane LLC v. Gareth Stevens Pub'g*, 2016 WL 6238612, at *4 (S.D.N.Y. Oct. 24, 2016) ("To the extent that Plaintiff argues that the statute requires a showing of 'fraudulent intent' separate and apart from a showing of knowing inaccuracy, the Court agrees with Judge Rakoff and declines to graft this additional requirement onto the plain statutory text.").  The Court, therefore, concludes that it is not necessary to show fraud on the copyright office for § 411(b)(1)(A) and (B) to apply, and rejects Plaintiff's contrary argument.  *See L.A. Printex*, 673 F.3d at 852-53.

Plaintiff also now argues that it has "never wavered" in its assertion of July 3, 2014 as the first publication date because it alleged in its complaint, filed September 17, 2015, that the Platform was first published in July 2014, and it submitted the Hagen affidavit to the copyright office on November 14, 2016 and stated that the Platform was first published on July 3, 2014.  (Doc. 78 at 6; Doc. 81 at 3.)  Plaintiff asserts that "[t]he fact that Plaintiff's counsel made a mistake as to the publication date in the registration

process in neither material, relevant, nor dispositive." (Doc. 81 at 3-4.) Thus, Plaintiff attempts to minimize the significance of its registration application, which listed the first publication date as August 26, 2015.

This argument, however, ignores the record of Plaintiff's communications with the copyright office in which counsel stated, in response to the copyright office's inquiry whether the content of the deposit included material from an earlier version of the website, that some of the deposit "may have been from an earlier version of the website BUT we need special dispensation because this is the first time registration of the website and no copy (i.e. mirror or backup) of the prior website exists." (Doc. 53, Ex. H, Doc. 80 ¶ 4.) Plaintiff has never contradicted those statements or claimed that it has a copy of the website content as it was published in July 2014.

Furthermore, the declarations Plaintiff submitted with the briefing on the various motions for summary judgment further establish that Plaintiff did not have a copy of the website as it was published in July 2014. Plaintiff's counsel submitted a declaration stating that the "'mirror copy' of the SPSO website was created on or about August 26, 2015." (Doc. 56, Ex. D at ¶ 2.) The director of operations for the law firm of Plaintiff's counsel, Martin Gwynn, also submitted a declaration stating that he made the deposit copy of the SPSO website to be sent to the copyright office for copyright registration on or about September 13, 2015. (Doc. 78-1, Ex. 9.) Mr. Gwynn also states that on September 7, 2017, he began using Internet Archives to capture screen shots of the SPSO website as it appeared on or before July 3, 2014.[11] (*Id.* at ¶ 6.)

_____

[11] Importantly, Plaintiff did not obtain screen shots of the SPSO website as it appeared in July 2014 as part of its copyright registration application in September 2015. Instead, Plaintiff waited for two years and until after the Court entered its June 2017 Order, and until after the Register of Copyrights responded to the Court's inquiry, before it began to search for this information. Plaintiff now apparently suggests that these screen shots establish that the SPSO website, as it was published on July 3, 2014, was the same as the copy of the website submitted as the deposit with the copyright application. (Doc. 78 at 7.) However, Mr. Gwynn's declaration discusses comparisons of representative categories of photographs and text on the SPSO website in 2014 and 2015, and the WFUP website, but he does not state that the SPSO website in 2014 was the same as the SPSO website in 2015, as submitted to the copyright office. (Doc. 78-1, Ex. 9.)

Additionally, Plaintiff submitted the Hagen affidavit to the copyright office on November 14, 2016, which was after Defendants had filed their first motion for summary judgment and their motion for an order for Plaintiff to cancel or amend its copyright registration. (Doc. 53, Ex. K.) In that declaration, Hagen states that "[t]he sample of *the Platform* provided to the United States Copyright Office with SPSO's Copyright application in 2015 is the same as the website first appeared when published on July 3, 2014. (*Id.* at ¶ 4)(emphasis added). In the same declaration, Hagen described *the Platform* as "a compilation of programs, representations, originally authored works, writings, hundreds of photographs taken by myself and my brother, as well as computer architecture and design." (*Id.* at ¶ 3.) The Hagen declaration did *not* state that certain photographs and text in the deposit were the same as photographs and text published on the website in July 2014. Instead, he represented that the copy of the Platform submitted as the deposit, which he defined to include programs, photographs, and computer architecture and design, was the same as the website appeared in July 2014. However, in his deposition taken a few months earlier on August 8, 2016, he testified that the website content was the same, but he had updated the copyrighted code on the website. (Doc. 80, Ex. 3 at 203-04.)

Therefore, as discussed in the June 2017 Order, and as confirmed in this Order, the record reflects that Plaintiff knowingly included inaccurate information in the copyright application. (Doc. 64 at 21-24.) As noted in the June 2017 Order, the timing of Hagen's affidavit indicates that Plaintiff knowingly provided inaccurate information to the copyright office because it was submitted (1) after the copyright office advised Plaintiff that material published on the website before the August 26, 2015 date of first publication would be excluded from the claim, and (2) after Defendants filed a motion for summary judgment arguing that if the copyrightable material was completed and published on August 26, 2015, then Plaintiff's infringement claim would fail because Defendants' allegedly infringing conduct occurred in 2014. (Doc. 64 at 21-24 (citing Doc. 53 at 4-7).)

The record indicates that after this defect was raised in this litigation, Plaintiff submitted Hagen's affidavit to the copyright office to support its claim that the date of first publication was July 3, 2014, and inaccurately stated that the deposit submitted to the copyright office was the same as the website appeared on July 3, 2014. (Doc. 51, Ex. K at ¶ 5; Doc. 53, Ex. L; Doc. 56 at 6 (SPSO admits that the sample platform provided to the copyright office was not the same as the website appeared on July 3, 2014.).) Evidence in the record shows that Plaintiff changed the content of its website after July 3, 2014. (Doc. 53, Exs. M-1, M-2, M-3, N-1, N-2, N-3; Doc. 53, Ex. O.) Further, Plaintiff does not argue that it was unaware that after July 3, 2014 additional copyrightable material was added to the website and was included in the version of the website that Plaintiff submitted to the copyright office. (Doc. 51, Ex. K; Doc. 54, Ex. D; Doc. 80 ¶ 28; Doc. 82 ¶ 28.)

Plaintiff admitted to the copyright office that some of the deposit's content "may have been from an earlier version of the website BUT we need special dispensation because this is the first time registration of the website and no copy (i.e., mirror or backup) of the prior website exists." (Doc. 80 ¶ 34; Doc. 82 ¶ 34.) This undisputed statement indicates that Plaintiff knew that some content in the deposit "may have been from an earlier version of the website," but there is no evidence that, during the registration process, Plaintiff investigated to determine the dates on which copyrightable content was added. Rather, Plaintiff requested a "special dispensation," and, when that was denied, it submitted Hagen's affidavit to the copyright office declaring that "[t]he sample of the Platform provided to the United States Copyright Office with SPSO's Copyright application in 2015 is the same as the website first appeared when published on July 3, 2014." (Doc. 80 at ¶ 39; Doc. 82 at ¶ 39.)

Plaintiff had knowledge that the Hagen affidavit, which was part of the copyright application, was inaccurate because Plaintiff either knew that the statement in the affidavit was inaccurate or, had uncertainty regarding the facts, but submitted an affidavit stating those facts with certainty. Therefore, consistent with the June 2017 Order, the

Court concludes that Plaintiff knowingly included inaccurate information in the application to the copyright office. (Doc. 64 at 17-25); *see* 17 U.S.C. § 411(b)(1)(A).

### 3. The Copyright Office Would Have Refused Registration

After concluding that Plaintiff knowingly provided false information to the copyright office, the Court submitted a request to the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration. (Doc. 64 at 24-25; Doc. 67.) In response, the copyright office informed the Court that had it known of the inaccuracy, it would have refused the registration with a July 3, 2014 publication date.[12] (Doc. 72-1 at 8.)

Pursuant to § 411(b)(1), a plaintiff cannot maintain a copyright infringement claim based on a registered copyright if (1) the plaintiff knowingly included inaccurate information on the copyright registration application, and (2) the Register of Copyrights would have refused the registration had it known of the inaccuracy of the information. *Schenck*, 105 F. Supp. 3d at 816 (citing 17 U.S.C. § 411(b)(1)). "The knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid and thus incapable of supporting an infringement action." *Russ Berrie & Co. v. Jerry Elsner Co*., 482 F. Supp. 980, 988 (S.D.N.Y. 1980); s*ee also Unicolors,* 853 F.3d at 991 (stating that a registration error bars an infringement action if "the inaccurate information was included on the application . . . with knowledge that it was inaccurate" and the inaccuracy, "if known, would have caused the Register of Copyrights to refuse registration."); *Roberts v. Gordy*, 181 F. Supp. 3d 997, 1010, 1014 (S.D. Fla. Apr. 8, 2016) (concluding that registration

---

[12] Plaintiff argues that the copyright office "refused" to change the status of the registration. (Doc. 78 at 11; Doc. 81 at 16.) The Court, however, asked the copyright office a specific question under § 411(b)(1), and did not ask the copyright office to cancel the registration. (*See* Doc. 67.) Under § 411(b)(1), the issue is whether "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). Nonetheless, whether the copyright office changed the status of the registration is irrelevant to the Court's determination of the validity of the registration to satisfy the registration precondition to filing suit. Therefore, the Court rejects Plaintiff's argument that because its registration "remains valid . . . the threshold procedural requirement of § 411(a) of the Act is met." (Doc. 78 at 5.)

was invalid and incapable of supporting an infringement action after receiving response from the Register of Copyrights that it would have refused registration had it known of inaccuracies on the application).[13]

Therefore, the Court concludes that, pursuant to § 411(b)(1), Plaintiff's certificate of registration is not sufficient to bring a copyright infringement claim because the registration application includes inaccurate information, Plaintiff included the inaccurate information "with knowledge that it was inaccurate," and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration" with a July 2014 publication date. *See* 17 U.S.C. § 411(b)(1). "[T]he failure to properly register a work will preclude an infringement action predicated on that work." *Roberts*, 181 F. Supp. 3d 997 at 1014; *see Olander Enters., Inc. v. Spencer Gifts, LLC*, 812 F. Supp. 2d 1070, 1078 (C.D. Cal. 2011) (copyright registration was invalid when it did not properly identify publication date of belt buckles in a "single unit of publication," and therefore, the plaintiff could not prove an essential element of its copyright infringement claim). The Court's ruling does not cancel the copyright registration.[14] However, it bars Plaintiff from bringing an infringement action because there is no valid registration. *See id.*

---

[13] *See also Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 667-68 (3d Cir. 1990) ("It has been consistently held that a plaintiff's knowing failure to advise the Copyright Office of facts which might have led to the rejection of a registration application constitutes grounds for holding the registration invalid and incapable of supporting an infringement action."); *Raquel v. Educ. Mgmt. Corp.*, 196 F.3d 171, 176 (3d Cir. 1999) *vacated on other grounds*, 531 U.S. 952 (2000) ("Although a failure properly to register a work does not invalidate the copyright itself, it does preclude the maintenance of an infringement action until such time as the purported copyright holder obtains a valid registration."); *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 691 (S.D. Tex. 2000) (Under copyright law, "the knowing failure to advise the Copyright Office of material facts constitutes grounds for holding the registration invalid and incapable of supporting an infringement action."); *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 776 (W.D.N.Y. 1991) (declining to enforce a copyright because the registration contained inaccurate information).

[14] The Register of Copyrights has primary jurisdiction to cancel a copyright registration. *See Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780-82 (9th Cir. 2002).

**IV.     Conclusion**

Because Plaintiff did not properly register the work at issue in this case, the copyright registration is insufficient to support a copyright infringement claim and the Court grants summary judgment in favor of Defendants on Count One on that basis.  *See Cosmetic Ideas, Inc.,* 606 F.3d at 615 (stating that § 411(a)'s registration precondition is an element of an infringement claim); *Roberts*, 181 F. Supp. 3d at 1014 (dismissing a copyright claim under § 411(b) after consulting the copyright office).  The Court, therefore, does not consider the parties' alternative arguments in support of their motions for summary judgment.  (Doc. 78 at 11-17; Doc. 79 at 10-17.)

Accordingly,

**IT IS ORDERED** that Defendants' Second Motion for Summary Judgment on Plaintiff's Copyright Claim (Doc. 79) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Summary Judgment (Doc. 78) is **DENIED**.

Dated this 24th day of September, 2018.


Bridget S. Bade
United States Magistrate Judge