**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SellPoolSuppliesOnline.com LLC, | No. CV-15-01856-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Ugly Pools Arizona, Inc., et al., | |
| Defendants. | |

Defendants Ugly Pools Arizona, Inc., and Brian Morris ("Defendants") have filed a third motion for summary judgment. (Doc. 86.) The motion seeks summary judgment on Plaintiff's claim for false copyright marking under 17 U.S.C. § 1202(a), asserted in Count Three of the First Amended Complaint ("FAC"). The motion is fully briefed. (Docs. 86, 87, 92, 93, 94.) For the reasons below the Court grants the motion.

## I. Background

### A. Procedural Background

In Count Three of the FAC, Plaintiff SellPoolSuppliesOnline.com ("Plaintiff" or "SPSO") alleged that Defendants violated the Digital Millennium Copyright Act, 17 U.S.C. § 1202 ("DMCA"). (Doc. 39 at ¶¶ 20, 48-50.) Plaintiff alleged falsification and removal claims under §§ 1202(a) and (b). The parties previously filed cross-motions for summary judgment on all of Plaintiff's claims in the FAC, including its claims under the DMCA. (Docs. 43, 45.) On June 9, 2017, the Court denied both motions for summary judgment on Plaintiff's falsification claim under 17 U.S.C. § 1202(a), and granted

Defendants' motion for summary judgment on Plaintiff's removal claim under § 1202(b).[1] (Doc. 64 at 35-41.) The Court denied the parties' cross-motions for summary judgment on Plaintiff's § 1202(a) falsification claim because it found that there were disputed issues of fact on an element of that claim, specifically Defendants' intent in placing their copyright notice on their website. (*Id*. at 38-41.)

As set forth below in Section I.B, and in the Court's June 2017 Order, Plaintiff has asserted various descriptions of its copyrighted material over the course of the litigation. (*Id*. at 11-12.) In its June 2017 Order, the Court concluded that for purposes of Plaintiff's infringement claim, Plaintiff's claims related to copyrighted material referred to copyrighted photographs on its website www.poolandspapartsnow.com. (Doc. 64 at 12.) Based on this limited description of Plaintiff's claimed copyrighted material, Defendants requested leave to file a third motion for summary judgment directed at Plaintiff's § 1202(a) falsification claim. (Doc. 75.) Defendants argued that the limitation on Plaintiff's claim of copyrighted material from Plaintiff's "website as a whole" to "photographs" on Plaintiff's website was significant. Defendants argued that they "did not change Plaintiff's copyright notice on any of its photos" and, therefore, could not be liable under § 1202(a). (*Id*. at 2-3.) The Court granted Defendants' motion for leave to file a third summary judgment motion on Plaintiff's § 1202(a) falsification claim. (Doc. 83.) This order addresses only that claim.

**B. Factual Background**

In the FAC and other filings in this matter, Plaintiff described its business as licensing pre-made websites that it refers to as "the Platform." (Doc. 78-1 ¶ 1.)[2] However, Plaintiff has admitted that "much of the website code" is licensed from

---

[1] The Court also denied without prejudice both parties' motions for summary judgment on Plaintiff's copyright infringement claim in Count One, granted Defendants' motion for summary judgment on Plaintiff's unfair competition claim in Count Two, and denied Defendants' motion for an order directing Plaintiff to cancel or amend its copyright registration. (Doc. 64.)

[2] To provide context for this Order, the Court cites several filings in this case. Because the parties have filed multiple motions for summary judgment, to avoid confusion, the Court refers to filings by the Court's CM/ECF docket and page numbers.

BigCommerce, a non-party entity that provides "backend electronic storefront" services. (Doc. 53, Ex. Q.) After Plaintiff commenced this matter, it sought to register a copyright in various aspects of the Platform. (*See* Doc. 64 at 5-7 (discussing the copyright registration process).) Plaintiff initially claimed a copyright in portions of computer code, code to provide for the 360-degree rotation of images, all images containing the letters CVP in the image, product descriptions, and the arrangement of text and images. (Docs. 87 at 1 ¶ 1; Doc. 96 ¶ 1.) Plaintiff later limited its copyright claim. (Doc. 87 ¶ 2; Doc. 93 ¶ 2.) On November 29, 2016, the copyright office issued Plaintiff a certificate of registration. (Doc. 50, Ex. 1; Doc. 80 ¶ 44.) The certificate of registration was for "text, photographs." (Doc. 87 at ¶ 4; Doc. 93 at ¶ 4.) After the copyright office issued the certificate of registration, Plaintiff's filings before this Court referred to Plaintiff's copyrighted material as "the collection of photos at issue in this case." (Doc. 87 at ¶ 5; Doc. 93 at ¶ 5.)

Plaintiff alleges that in July 2014, SPSO employed Mark Kesler as a salesperson to sell licenses to use the Platform. (Doc. 78-1 ¶¶ 5, 6.) During 2014, Kesler introduced Defendant Brian Morris, owner of Defendant Ugly Pools Arizona, Inc., to Plaintiff as a potential licensee. (*Id*. at ¶ 13.) Defendants represented themselves to Plaintiff as prospective customers who were considering purchasing a license of SPSO's Platform to create a website for their business. (*Id*. at ¶ 15.) Plaintiff provided Defendants access to Kesler's copy of the Platform to assist them in making a purchasing decision. (*Id*. at ¶ 16.) Plaintiff alleges that "Defendants were aware that they would have to purchase a license to be authorized to have further access to the Platform—that is, to use it commercially—and that the SPSO license governed the nature of their use of the Platform." (*Id*.)

Unbeknownst to Plaintiff, Defendants and Kesler were working together and had formed a partnership for Morris to manage and redesign Kesler's site. (*Id*. at ¶ 18, Ex. 2 at 37.) Plaintiff alleges that Defendants downloaded "a complete copy of SPSO's Platform." (Doc. 78-1 ¶ 20.) Plaintiff alleges that nearly a year later, Defendants

published a website located at allpoolsupplies.com ("APS"), which was nearly identical to the Platform. (Doc. 78-1 ¶ 22.) Plaintiff asserts that Defendants admitted to copying the Platform and creating APS. (*Id.*) Plaintiff alleges that Defendants' site "wholly incorporated the original photos which are registered with the U.S. Copyright Office under Registration Number TX 8-268-803 ('Registered Photos') and other content from the Platform into APS." (*Id.* at ¶¶ 28-29). Plaintiff alleges that Defendants provided false copyright management information on the website with the intent to induce, enable, facilitate, or conceal infringement. (Doc. 39 at ¶ 20.)

In its statement of facts in opposition to Defendants' third motion for summary judgment, Plaintiff does not dispute that Defendants' copyright notice is located only at the bottom of Defendants' website and is not placed next to any of Plaintiff's photographs.[3] (Doc. 87 at ¶ 7 (citing Doc. 39-6 at 7 (Ex. F to the FAC)); Doc. 93 at ¶ 7.) Plaintiff agrees that Defendants did not add their copyright notice to Plaintiff's photographs. (Doc. 87 at ¶ 7; Doc. 93 at ¶ 7.) Plaintiff has admitted that Defendants did not remove or change Plaintiff's copyright marking from any of Plaintiff's photographs. (Doc. 87 at ¶ 9 (citing Doc. 87, Ex. 1 at 54 line 5 to p. 55 line 8); Doc. 93 at ¶ 9.)

Defendants assert that their contributions to the APS website include (1) Defendants' brand design logo on the top of the webpage, and (2) Defendants' blog entries on the bottom of the webpage. (Doc. 87 at ¶ 10 (citing Doc. 39-6 at 7, Ex. F to the FAC).) Plaintiff disputes this assertion because Exhibit F to the FAC does not depict blog entries. (Doc. 93 at ¶ 10.) Although Exhibit F does not include specific blog entries, it depicts a navigational link to a blog. (Doc. 39-6 at 2, 7.) Defendants' copyright notice appears in a shaded block at the bottom of the webpage that includes a link to the blog. (*Id.* at 7.) Additionally, Plaintiff has provided evidence of a blog entry. (Doc. 93-1 at 3-4.)

---

[3] In its response to the motion for summary judgment, Plaintiff asserts that "Defendants placed their copyright notice next to hundreds if not thousands, of Plaintiff's [p]hotos . . . ." (Doc. 92 at 13.) However, Plaintiff does not cite any evidence in the record to support this statement, which is contrary to its statement of facts. (*See* Doc. 87 at ¶ 7 (citing Doc. 39-6 at 7); Doc. 93 at ¶ 7.)

**II.     Summary Judgment Standard**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmoving party may not rely on the mere allegations in the pleadings, but must set forth by affidavit, or other appropriate evidence, specific facts showing there is a genuine issue for trial. *Id.* at 249. The nonmoving party must produce at least some "significant probative evidence tending to support" its position. *Smolen v. Deloitte, Haskins, & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). The issue is not whether the "'evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented.'" *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 252). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). The Court considers the motion for summary judgment under this standard.

**III.    Plaintiff's Falsification Claim**

Plaintiff asserts a falsification claim under § 1202(a), which requires Plaintiff to establish that Defendants "knowingly and with the intent to induce, enable, facilitate, or conceal infringement―(1) provide[d] copyright management information that is false, or

(2) distribute[d] or import[ed] for distribution copyright management information that is false." 17 U.S.C. § 1202(a). The DMCA defines "copyright management information" ("CMI"), in part, as follows:[4]

> As used in this section, the term "copyright management information" means any of the following information *conveyed in connection with* copies . . . of a work . . . , including in digital form . . . .
>
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

17 U.S.C. § 1202(c) (emphasis added).

Plaintiff alleges that Defendants violated § 1202(a)(1) by "providing false and misleading [CMI] with the intent to induce, enable, facilitate, or conceal infringement." (Doc. 39 at 20.) Plaintiff asserts that Defendants' website "wholly incorporated the original photos and content from the Platform into APS and then attached a [We Fix Ugly Pools] WFUP copyright notice." (Doc. 44 ¶ 28.) Plaintiff's claim is based on the inclusion of "Copyright 2015 We Fix Ugly Pools. All Rights Reserved" on the APS website. (*Id.*; Doc. 39-6 at 7.)

Defendants do not dispute that they placed the copyright notice "Copyright 2015 We Fix Ugly Pools. All Rights Reserved" on their website, but argue that doing so did not violate § 1202(a). (Doc. 86 at 5-8.) Defendants argue that they cannot be liable under § 1202(a), and the Court should enter summary judgment in their favor on this claim, because (1) the "generic footer" placed at the bottom of the APS website was not CMI because it was not "conveyed in connection with" Plaintiff's copyrighted photographs (Doc. 86 at 5), and (2) if their copyright notice was CMI, it was not false because Defendants properly placed the copyright notice on the APS website to identify

---

[4] This definition of CMI applies to claims under §§ 1202(a) and (b). *See* 17 U.S.C. § 1202(c). Therefore, the Court considers cases discussing the definition of CMI in the context of alleged violations of § 1202(a) or (b).

Defendants' contributions to the webpage.[5] (*Id*. at 6.) Therefore, to resolve Defendants' third motion for summary judgment, the Court must determine whether Defendants added information to the APS website that fits within the definition of CMI. If the information was CMI, then the Court determines if it was false.

### A. The WFUP Copyright Notice Was Not CMI

Defendants argue that they did violate § 1202(a) by placing the WFUP copyright notice at the bottom of the APS webpage, which included Plaintiff's copyrighted photographs, because the copyright notice was not "conveyed in connection with" Plaintiff's photographs and, therefore, was not false CMI. (Doc. 86 at 4-5.) Defendants contend that the placement of a "generic footer" at the bottom of the website was not "information conveyed in connection with" Plaintiff's photographs because it was "not near or next to any of Plaintiff's photographs." (*Id*. at 4, 6); *see* 17 U.S.C. § 1202(c).

Defendants rely on *Stevens v. Corelogic, Inc*., 194 F. Supp. 3d 1046, 1501-02 (S.D. Cal. 2016) (citing *Tomelleri v. Zazzle, Inc*., 2015 WL 8375083, at *12 (D. Kan., Dec. 9, 2015), and *Ward v. Nat'l Geographic Soc*., 208 F. Supp. 2d 429, 450 (S.D.N.Y. 2002)), and *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc*., 975 F. Supp. 2d 920 (N.D. Ill. 2013). Plaintiff argues that these cases do not support Defendants' argument. (Doc. 92 at 13-14.) However, Plaintiff does not directly address whether the WFUP copyright notice, as placed on the APS website, constituted false CMI, as defined in § 1202(c), and in violation of § 1202(a). (*Id*.) Rather, Plaintiff's response focuses on whether Defendants can claim derivative ownership of the work and, thus, whether any CMI was false. (Doc. 92.)

The Court concludes that *Personal Keepsakes* and other cases support Defendants' arguments. Several courts have interpreted the definition of CMI in § 1202(c). To constitute CMI, information must be "conveyed in connection with" copies of the work at

---

[5] Defendants also argue that they did not remove Plaintiff's copyright marking from its photographs. (Doc. 86 at 5.) The Court does not consider this issue because it already granted summary judgment in favor of Defendants on Plaintiff's removal claim under § 1202(b). (Doc. 64 at 36-38.)

issue.[6] *Id*. Thus, the Court first determines what constitutes the work at issue for purposes of the § 1202(a) claim.

### 1. The Work is Limited to Photographs on Plaintiff's Website

The text of the DMCA does not limit the protection of CMI to registered works. 17 U.S.C. § 1202; *see Pacific Studios, Inc. v. West Coast Backing*, 2012 WL 12887637, at *3 (C.D. Cal. Apr. 8, 2012) (noting that registration may be relevant to a copyright infringement action, but defendant provided no basis for its assertion that § 1202 only protected CMI when the relevant work had been registered). Therefore, Plaintiff's falsification claim is not necessarily limited to its copyright registration for "text, photos." Plaintiff suggests that the work at issue is the "Platform." (Doc. 78-1 ¶ 1; Doc. 92 at 15.) Plaintiff refers to its Platform and to the "code enabling rotating the Photos 360-degrees" (Doc. 92 at 10, 15), but has not offered any evidence to support any claim that it has a copyright in any particular website code. Additionally, Plaintiff has admitted that "much of the website code" is licensed from BigCommerce, a non-party entity that provides "backend electronic storefront" services. (Doc. 53, Ex. Q.)

---

[6] The Court does not rely on *Stevens* because that decision, and *Ward* and *Tomelleri*, did not depend on an interpretation of CMI as defined in § 1202(c). Defendants suggest that in *Ward* the court concluded that the placement of a copyright notice at the bottom of a webpage did not violate § 1202(a) because the physical location of the notice was not "conveyed in connection with" copies of a work. (Doc. 86 at 4-5.) However, *Ward* did not reach that conclusion. Rather, *Ward* determined that the plaintiff had not established a violation of § 1202(a) because the plaintiff had not offered sufficient evidence that the defendant knew it did not hold the copyright to the works at issue. *Ward*, 208 F. Supp. 2d at 450.

Similarly, in *Stevens*, the court granted summary judgment for defendant because the placement of defendant's copyright notice on the same page as plaintiff's photographs was insufficient to violate § 1202(a). *Stevens*, 194 F. Supp. 3d at 1052. However, the court relied on *Ward* and did not otherwise explain its decision. The other case *Stevens* cites in support of its decision, *Tomelleri*, 2015 WL 8375083, at *12, holds only that the "mere appearance" of an image on a website does not violate section 1202(a). *Id*. *Tomelleri* does not address the effect that a copyright notice would have on a claim under § 1202(a). *Tomelleri* involved the omission of the plaintiff's CMI from the defendants' website. The court did not resolve whether the phrase "Images Licensed to Zazzle, Inc.," was CMI or whether it was false CMI. *Id*. Rather, the court stated that because there was no evidence that the phrase was added to the website with the intent to aid infringement, defendant was entitled to summary judgment on the plaintiff's § 1202(a) claim. *Id*.

During the copyright registration process Plaintiff limited its copyright claim to "text and photographs" and advised the copyright office that it was no longer interested in registering the computer code. (Doc. 55 at 14; Doc. 53, Ex. GG; Doc. 64 at 5-7 (discussing the copyright registration process).) Further, in briefing on its earlier-filed cross-motion for summary judgment and in response to Defendants' third motion for summary judgment, Plaintiff stated that its work is comprised of "over six hundred" and up to "thousands of Photos capable of supporting a 360-degree view." (Doc. 43 at 5, 10; Doc. 92 at 10.)

Plaintiff's response to Defendants' third motion for summary judgment also indicates that it does not claim a copyright in the code that enables the 360-degree rotation of the photographs, but rather claims a copyright in each photograph that was taken to create a 360-degree view. (Doc. 92 at 10 (stating that "[t]he fact that the code enabling rotating the Photos 360-degrees was not registered does not imply that the Photos were not painstakingly taken with the intention of displaying 360 degrees. . . . These Photos are all part of the Work.").) The Court, thus, concludes that the work at issue for purposes of Plaintiff's § 1202(a) claim is Plaintiff's photographs that appear on its website www.poolandspapartsnow.com.[7] (*See* Doc. 64 at 11-12; Doc. 83 at 3.)

### 2. The WFUP Copyright Notice was not Conveyed with the Work

The Court next considers whether the copyright notice, "Copyright 2015 We Fix Ugly Pools. All Rights Reserved," which appears on the APS website, constitutes CMI as defined in § 1202(c). The parties have not cited, and the Court has not found, a Ninth Circuit decision interpreting the definition of CMI in § 1202(c). However, other courts have concluded that to satisfy the statutory requirement that CMI is "conveyed in connection with" the copyrighted material, a copyright notice must be "close to" the work. *See Personal Keepsakes*, 975 F. Supp. 2d at 929.

---

[7] For purposes of this Order, the Court does not need to determine whether any of the photographs at issue are copyrighted or owned by an entity other than Plaintiff. (*See* Doc. 86 at 4; Doc. 94 at 4-5.)

In *Personal Keepsakes*, the court concluded that a copyright notice placed "at the bottom of every page of the website in the generic website footer" was not close to the copyright owner's poems. *Id*. Therefore, the copyright notice was not "'conveyed with' the poems and [was] not, therefore false CMI with respect to the poems." *Id*. (citing 17 U.S.C. § 1202(c)). The court concluded that when "the only CMI displayed by [defendant] appear[ed] in the website's footer, not on the works or images themselves, the only conclusion the Court [could] reach about the copyright notice at the bottom of [defendant's] website is that it has some intellectual property rights in its own website, not that it is claiming ownership of a copyright to all of its products." *Id*. The court noted that the plaintiff did not allege that its website was copied, but concluded that even if the defendant had copied the plaintiff's works, "it would not be liable for displaying false CMI for placing a generic copyright notice on the bottom of its webpage and not on each individual short phrase."[8] *Id*.

Plaintiff argues that *Personal Keepsakes* is factually distinguishable from this case because the court found the plaintiff's underlying copyright implausible. (Doc. 92 at 14.) In *Personal Keepsakes,* there were four claimed infringed works, poems, on the defendant's website, and the defendants moved to dismiss the infringement claim as to one poem. *Personal Keepsakes*, 975 F. Supp. 2d at 922. The court did not address the copyrights of the other poems. *Id*. Additionally, the court's analysis of the DMCA claim did not depend on the number of poems at issue or whether all of the poems were copyrightable. *Id*. at 929.

In addition to *Personal Keepsakes*, other cases have relied on the close proximity of a copyright notice to copyrighted material to determine whether that notice was CMI. *See Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (finding that the plaintiff's name constituted CMI with regard to a copyrighted image when the

---

[8] In this case, Plaintiff alleges that Defendants copied its website. (Doc. 78-1 ¶¶ 28-29.) However, whether Defendants copied Plaintiff's website, and whether Defendants' copyright notice was false CMI conveyed in connection with Plaintiff's copyrighted material, are separate issues. *See Personal. Keepsakes, Inc. v. Personalizationmall.com, Inc*., 2012 WL 414803, at *7 (N.D. Ill. Feb. 8, 2012).

- 10 -

"name appeared in a printed gutter credit near the Image"); *see also Williams v. Cavalli*, 2015 WL 1247065, at *2 (C.D. Cal. Feb. 12, 2015) (stating that signatures that appeared within a mural "necessarily were conveyed in connection the display of the mural" and constituted CMI); *Pacific Studios v. West Coast Backing, Inc.*, 2012 WL 12887637, at *2-3 (C.D. Cal. Apr. 8, 2012) (citing *Murphy*, 650 F.3d at 302) (concluding that an alphanumeric designation on the border of an online image for purposes of identification was CMI); *Schiffer Publ'g, Ltd., v. Chronicle Books, LLC*, 2004 WL 2583817, at *14 (E.D. Pa. Nov. 12, 2004) (holding that "to be actionable under § 1202(b), a defendant must remove copyright management information from the 'body' of, or area around, plaintiff's work itself"). However, "if a general copyright notice appears on an entirely different webpage than the work at issue, then that CMI is not 'conveyed' with the work and no claim will lie under the DMCA." *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 2012 WL 414803, at *7 (N.D. Ill. Feb. 8, 2012); *see also Drauglis v. Kappa Map Group, LLC*, 128 F. Supp. 3d 46, 60 (D.C. Col. 2015) (holding that a copyright notice on the first inside page of a street atlas was not "conveyed in connection with" the cover photograph and therefore it could not form a valid basis for a § 1202(a) claim).

In this case, the only copyright notice on Defendants' APS website is located at the bottom of the webpages and does not appear next to Plaintiff's photographs.[9] (Doc. 39-6; Ex. F to the FAC; Doc. 93-1 at 3-4.) The WFUP copyright notice appears at the bottom of the webpages in a shaded block that separates the copyright notice from the content on the webpages, including the photographs. (Doc. 39-6 at 7.) The photographs are other contest are located outside of the shaded box. (*Id.*) The copyright notice is not in the body of, or the area around, the work at issue, the photographs, and so it was not

---

[9] From the submitted exhibits depicting webpages, the Court cannot determine whether the copyright notice appears at the bottom of each or whether it appears less frequently. (*See* Doc. 39-6 at 7; Doc. 93-1 at 3-4.) Nonetheless, the evidence before the Court indicates that the copyright notice is not near or next to the photographs at issue.

"conveyed in connection with" the work in a way that makes that information CMI. (*Id*. at 1-7); *see Personal Keepsakes,* 975 F. Supp. 2d at 929.

## IV. Conclusion

The Court finds that Defendants have established that the WFUP copyright notice to which Plaintiff objects did not constitute actionable CMI as defined in § 1202(c). Therefore, Plaintiff's claim that Defendants violated § 1202(a) necessarily fails and the Court need not consider whether Defendants knew its copyright notice was false CMI or whether Defendants intended to provide false CMI to enable or conceal copyright infringement. Accordingly, the Court does not reach Defendants' alternative argument that, if the copyright notice was CMI, it was not false, or Plaintiff's arguments in opposition. (Doc. 86 at 6-8; Doc. 92.) The Court grants Defendants' motion for summary judgment.

Accordingly,

**IT IS ORDERED** the Defendants' third motion for summary judgment (Doc. 86) is **GRANTED** and that the Clerk of Court shall enter judgment for Defendants.

Dated this 24th day of September, 2018.

*Bridget S. Bade*
Bridget S. Bade
United States Magistrate Judge